**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRUE RETURN SYSTEMS LLC,<br><br>                Plaintiff,<br><br>  vs.<br><br>MAKERDAO,<br><br>                Defendant. | Case No. 1-22-cv-8478-VSB-JLC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**EX PARTE MOTION FOR LEAVE TO SERVE**
**DEFENDANT MAKERDAO BY ELECTRONIC MEANS**

# TABLE OF AUTHORITIES

*Cases*

*Commodity Futures Trading Commission v. Ooki DAO*,
  Order on Admin. Mot. (N.D. Cal. Oct. 3, 2022) (No. 22-cv-05416-WHO) ........... 7, 8, 11, 12

*Dama S.P.A. v. Does*,
  2015 WL 10846737 (S.D.N.Y. June 12, 2015) ...................................................................... 10

*FTC v. PCCare247 Inc.*,
  2013 WL 841037 (S.D.N.Y. March 7, 2013) ............................................................. 10, 11, 12

*Philip Morris USA Inc. v. Veles Ltd., et al.*,
  2007 WL 725412 (S.D.N.Y. March 12, 2007) ................................................................. 10, 11

*Restoration Hardware, Inc. v. Lighting Design Wholesales, Inc.*,
  2020 WL 4497160 (S.D.N.Y. Aug. 5, 2020) ....................................................................... 7, 8

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2007) ................................................................................................ 11

*Sirius XM Radio Inc. v. Aura Multimedia Corp.*,
  339 F.R.D. 592 (S.D.N.Y. 2021) .............................................................................................. 9

*St. Francis Assisi v. Kuwait Fin. House*,
  2016 WL 5725002 (N.D. Cal. Sept. 30, 2016) ................................................................. 10, 11

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
  312 F.R.D. 329 (S.D.N.Y. 2015) ......................................................................................... 10, *

*Vega v. Hastens Beds, Inc.*,
  339 F.R.D. 210 (S.D.N.Y. 2021) ........................................................................................ 9, 19

*Statutes*

NY CPLR § 310 ............................................................................................................................. 6

NY CPLR § 310(e) ............................................................................................................... 9, 12, 13

NY CPLR § 1025 ......................................................................................................................... 8

Federal Rule of Civil Procedure 4(e)(1) ............................................................................. 5, 8, 12, 13

Federal Rule of Civil Procedure 4(h)(1) ....................................................................................... 5

Federal Rule of Civil Procedure 4(h)(1)(A) .................................................................................. 8

Federal Rule of Civil Procedure 4(h)(1)(B) .................................................................................. 8

## PRELIMINARY STATEMENT

Plaintiff True Return Systems, LLC ("TRS" or "Plaintiff") hereby moves the Court, *ex parte*, for entry of an order permitting Plaintiff to serve the Summons, Complaint, and all other pleadings and papers in this action upon Defendant MakerDAO by the electronic means described below. This motion is supported by the record in this case and by the points and authorities set forth below.

This is an action for patent infringement based upon Defendant's use of Plaintiff's patented technology. Defendant MakerDAO maintains no known physical office, has no known officers or directors, has no known mailing address, and has no identifiable means for receiving mail or service. Plaintiff thus seeks an order permitting it to serve the Summons, Complaint, and all other pleadings and papers in this action upon Defendant MakerDAO by electronic means as described below. These electronic means are the same communication channels that MakerDAO has created to enable communication with the public, its owners, and its administrators, and there is a reasonable basis upon which to believe that service by these electronic means has already provided notice of this action to Defendant.

## STATEMENT OF FACTS

Defendant MakerDAO is a decentralized autonomous organization ("DAO") that operates a cryptocurrency banking business on the Ethereum blockchain. Declaration of David A. Boag, ¶ 4, Exh. A. MakerDAO is owned and operated by anonymous and pseudo-anonymous cryptocurrency investors through MakerDAO's "MKR" token. Boag Decl., ¶ 5, Exh. B. The MKR token represents a divisible interest of ownership, giving holders of the token a proportional interest in MakerDAO assets and profits, as well as rights to propose, direct, and vote on MakerDAO governance. *Id*.

Defendant is not legally organized in New York or any other state, and the organization maintains no known physical office, no known mailing address, and has no identifiable means for receiving mail or service. Declaration of Jack Fonss, ¶¶ 4-7. MakerDAO does not have executives or corporate officers and does not have an agent for service of process or identifiable legal counsel. *Id*.

While MakerDAO's physical presence is difficult to discern, it has a robust online presence. It operates an official MakerDAO forum at forum.makerdao.com (the "MakerDAO Forum") where communication with stakeholders is conducted. Boag Decl., ¶ 10-11, Exh. G. Defendant also keeps an active presence on Twitter, using the handle, @MakerDAO (the "MakerDAO Twitter Account"). Boag Decl., ¶ 7, Exh. D. As of October 12, 2022, the Defendant's account on Twitter shows more than 232,000 followers and seven-plus years of activity (*Id*.); the MakerDAO Twitter account regularly posts many times in a day (*Id*.). MakerDAO uses its Twitter account for many corporate purposes including governance notices and updates (Boag Decl., ¶ 8, Exh. E), MakerDAO ownership changes (Boag Decl., ¶ 9, Exh. F), and other material notifications.

Its nontraditional and decentralized structure notwithstanding, MakerDAO is able to summon consensus for the benefit of MKR holders. As one example, on October 10, 2022, Defendant used the MakerDAO Forum to record votes by holders of the MKR token on whether to approve a proposal to post approximately $1.6B of its positions with the centralized cryptocurrency company Coinbase, which would enhance MakerDAO's treasury operation profitability. Boag Decl., ¶ 20, Exh. P. The vote reporting shows a concentration of voting, with the top four voting addresses accounting for more than 57% of the total votes. Boag Decl., ¶ 6, Exh. C.

The official MakerDAO website contains no location addresses and no identification of management, personnel, or conventional points of contact. Fonss Decl., ¶ 7. However, the website does provide links to MakerDAO's @MakerDAO Twitter Account, the MakerDAO Forum, and a support email address, support@makerdao.com ("the MakerDAO Support Email") among other electronic points of contact. Fonss Decl., ¶ 7.

**<u>Attempts at Service and Awareness</u>**

In the months leading up to the commencement of this action, Plaintiff took extensive steps to identify individuals authorized to accept service of process on MakerDAO's behalf or a physical location to which a summons and complaint could be mailed. *See* Fonss Decl., ¶ 7. For example, Plaintiff searched the MakerDAO website and the internet for any information regarding identifiable members associated with MakerDAO or a physical address, and searched state business registration directories and MakerDAO's disclosed "real world" transaction records for any registration information and associated identification of authorized agents for service of process. Fonss Decl., ¶4. However, True Return did not identify any such relevant information. Fonss Decl., ¶ 10.

On October 12, 2022, counsel for Plaintiff provided copies of the Summons, Complaint, and supporting materials, and a letter requesting waiver of service to MakerDAO via the MakerDAO Forum. Boag Decl., ¶ 10, Exh. G. The MakerDAO forum posting "Infringement complaint filed against MakerDAO" has since been viewed more than 225 times. Boag Decl., ¶ 11, Exh. G.

Also on October 12, 2022, counsel for Plaintiff provided copies of the summons, complaint, supporting materials and a letter requesting waiver of service via both Twitter (sent

directly to @MakerDAO via Twitter direct message) and email (sent directly to the MakerDAO at support@makerdao.com). Boag Decl., ¶¶ 12-13, Exhs. H-I.

The public and MakerDAO's customers, owners, and operators utilize the MakerDAO Forum to communicate on all MakerDAO matters including system status and MakerDAO regulatory and legal risks. Boag Decl., ¶¶ 16-17, Exhs. L-M. Financial proposals to MKR owners and voting outcomes and proxy activities relating to the MKR owner voting are similarly communicated via the MakerDAO Forum. (Boag Decl., ¶ 16, Exh. L). On a typical day, the MakerDAO Forum adds many contributions and posts, and all historical posts are readily searchable. Fonss Decl., ¶ 10.

In an earlier attempt to resolve the dispute without litigation, Plaintiff on July 13, 2022, posted a letter and pre-filing copy of a complaint to the MakerDAO Forum. Boag Decl., ¶ 12, Exh. H. The post, titled "Infringement of TRS's U.S. Patent No. 10,025,797 by MakerDAO," has more than 1,000 views and 11 replies as of this filing. Boag Decl., ¶ 14.

In addition to the direct views and responses to the July 2022 postings, on August 9, 2022, Core Unit Facilitator "sorenpeter" published a public document on the MakerDAO Forum titled "Dai Foundation position on Patent infringement complaints against MakerDAO" in which he specifically references Plaintiff's U.S. Patent No. 10,025,797. Boag Decl., ¶ 14, Exh. J.

More recently, members and leaders in MakerDAO's legal and governance teams have expressed concern that, contrary to the consensus opinion of MKR owners, "[M]aker does not exist on an island exempt from the broader legal and regulatory paradigm . . . ." Boag Decl., ¶ 17, Exh. M.

## LEGAL STANDARDS

Rule 4 of the Federal Rules of Civil Procedure establishes the procedure for effecting service of process, with Rule 4(h) governing service of process over "a domestic or foreign

corporation, or a partnership or other unincorporated association."[1] Rule 4(h) provides that such a corporation, partnership, or "other unincorporated association" may be served: (1) by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process; or (2) "in the manner prescribed by Rule 4(e)(1) for serving an individual . . . ."

Rule 4(h)(1) provides:

> (h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
>> (1) in a judicial district of the United States:
>>
>>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>>
>>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or
>>
>> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Rule 4(e)(1) provides:

> (e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

---

[1] The remaining sections of Rule 4 are inapplicable. For example, Rule 4(e) addresses service upon an individual in the United States; Rule 4(f) upon an individual in a foreign country; and Rule (i) upon the United States itself.

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Under Rule 4(e)(1) service may be effected by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. The relevant state law for serving a summons in an action brought in the State of New York is NY CPLR § 310 governing personal service upon a partnership, which provides:

> (a) Personal service upon persons conducting a business as a partnership may be made by personally serving the summons upon any one of them.
>
> (b) Personal service upon said partnership may also be made within the state by delivering the summons to the managing or general agent of the partnership or the person in charge of the office of the partnership within the state at such office and by either mailing the summons to the partner thereof intended to be served by first class mail to his last known residence or to the place of business of the partnership. Proof of such service shall be filed within twenty days with the clerk of the court designated in the summons; service shall be complete ten days after such filing; proof of service shall identify the person to whom the summons was so delivered and state the date, time of day and place of service.
>
> (c) Where service under subdivisions (a) and (b) of this section cannot be made with due diligence, it may be made by affixing a copy of the summons to the door of the actual place of business of the partnership within the state and by either mailing the summons by first class mail to the partner intended to be so served to such person to his last known residence or to said person at the office of said partnership within the state. Proof of such service shall be filed within twenty days thereafter with the clerk of the court designated in the summons; service shall be complete ten days after filing.

(d) Personal service on such partnership may also be made by delivering the summons to any other agent or employee of the partnership authorized by appointment to receive service; or to any other person designated by the partnership to receive process in writing, filed in the office of the clerk of the county wherein such partnership is located.

(e) If service is impracticable under subdivisions (a), (b) and (c) of this section, it may be made in such manner as the court, upon motion without notice directs.

## ARGUMENT

For the reasons detailed above, service via Rule 4(h) is impracticable in this case, and the Court may order service of process via an alternate method, in such manner as the Court directs under NY CPLR § 310(e).

Courts in New York and elsewhere have authorized alternative electronic service of process on organizations that operate primarily online where, as here, service by traditional methods was impracticable, and notice was likely to reach the parties. *See, e.g., Restoration Hardware, Inc. v. Lighting Design Wholesales, Inc.*, 2020 WL 4497160 (S.D.N.Y. Aug. 5, 2020) (authorizing email service under Rule 4(f)(3) on an individual where the e-mail address was listed as a contact on the website where the accused goods were sold). In *Restoration Hardware*, e-mail service was allowed after the plaintiff made unsuccessful attempts at service on incorrect or outdated addresses listed on the website where the accused goods were sold.[2] *Id*. At *19-20. *See also Order on Admin. Mot., Commodity Futures Trading Commission v. Ooki DAO*, (N.D. Cal. Oct. 3, 2022) (No. 22-cv-05416-WHO) (authorizing service on a DAO through the DAO's Help Chat Box, with contemporaneous notice by posting in the DAO's online forum).

---

[2] Service in *Restoration Hardware* was made through Rule 4(f)(3), analogous to C.P.L.R. § 310(e), and allows service "as the court orders" when the enumerated categories cannot be met.

Defendant has no formal legal structure. Fonss Decl., ¶¶ 4-7. In the absence of legal entity status, MakerDAO is properly treated as a general partnership. *See* NY CPLR § 1025 (providing that "[t]wo or more persons conducting a business as a partnership may sue or be sued in the partnership name, and actions may be brought by or against the president or treasurer of an unincorporated association on behalf of the association"). As such, Rule 4(h) governing service of process on "a partnership or other unincorporated association" controls.[3]

Plaintiff is unable to serve Defendant by any of the methods set forth in Rule 4(h)(1)(B). MakerDAO operates throughout the U.S. and internationally without any disclosed headquarters or office locations. Fonss Decl., ¶¶ 4-7. Administrative and governance teams operate anonymously from undisclosed locations. *Id*. The MakerDAO organization does not appear to be registered as any type of entity or association in any jurisdiction; and does not have a listed president, secretary, treasurer, or agent appointed to accept service. *Id*. Instead, it is a completely decentralized enterprise of anonymous and pseudo anonymous operators and owners engaged in billions of dollars of cryptocurrency lending. Boag Decl., ¶¶ 18-19, Exhs. N-O. Thus, the service provisions described above are not viable avenues for service.

Despite operating as a self-proclaimed multi-billion-dollar cryptocurrency bank (Boag Decl., ¶ 4, Exh. A), MakerDAO has carefully arranged its operations to preclude service or delivery of legal notice. As described above, none of the predicates to satisfy FRCP 4(h)(1)(B) exist—no officer and no managing, general, or authorized agent to receive service. Rule 4(h)(1)(A) is thus invoked, and Plaintiff must serve MakerDAO in a manner prescribed by FRCP 4(e)(1),

---

[3] The Court need not reach the question of whether Defendant is properly classified as a general partnership since Rule 4(h)(1)(B) applies also to an "unincorporated association."

permitting service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

The relevant state law for serving a summons in this district is NY CPLR § 310(e), which permits service "in such manner as the court, upon motion without notice directs." Section 310 of the New York Civil Practice Law and Rules describes the mechanism for effecting personal service on "persons conducting a business as a partnership." As with Rule 4(h), effecting service under this section requires the identification of individuals in the partnership, an identifiable officer, director, managing agent, which is not possible due to Defendant's decentralized, anonymized structure.

Section 310(e) of the New York Civil Practice Law and provides a fallback provision permitting service to be "made in such manner as the court, upon motion without notice directs" where subdivisions (a), (b) and (c) are unavailable. Courts have found that email service alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant. *See Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 339 F.R.D. 592, 593 (S.D.N.Y. 2021) (quoting *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021).

After conducting a diligent search for traditional points of contact for Defendant—a physical address, business registration, or executive leadership—Plaintiff served the summons and complaint on Defendant via: (1) the MakerDAO Support Email provided on Defendant's website (Boag Decl., ¶ 13, Exh. I); (2) the MakerDAO Forum where the post has been viewed more than 225 times (Boag Decl. ¶¶ 10-11, Exh. G); and (3) Defendant's @MakerDAO handle (Boag Decl., ¶ 12, Exh. H). Any one of these methods was reasonably calculated to apprise Defendant of the litigation.

Service via email to the MakerDAO Support Email listed on its website is sufficient on its own to effect service on Defendant. MakerDAO has an almost entirely virtual presence and courts in similar circumstances have found email service to be permissible where the service was reasonably calculated to apprise a defendant of the litigation, particularly where the party had more of a virtual than physical presence. *See Dama S.P.A. v. Does*, No. 15-CV-4528 (VM), 2015 WL 10846737, at *2 (S.D.N.Y. June 12, 2015) (authorizing email service under Rule 4(f)(3) where the defendant had a strong virtual presence and a "functioning email address," but "otherwise remained anonymous"); *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240-LB, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (allowing service via Twitter where it was the "method of service most likely to reach" the defendant); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (holding that service via email was reasonably calculated to inform the defendant of the litigation because the defendant conducted some business over email, and it was therefore likely that the defendant would read the email serving the complaint); *FTC v. PCCare247 Inc.*, No. 12-cv-7189 (PAE), 2013 WL 841037, at *2-6 (S.D.N.Y. March 7, 2013) (holding that service via email and Facebook was reasonably calculated to inform the defendant of the litigation because the email addresses and Facebook accounts were registered under the defendants' names and frequently used); *Philip Morris USA Inc. v. Veles Ltd., et al.*, No. 06-cv-2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. March 12, 2007) (holding that service via email was reasonably calculated to inform the defendant of the litigation because the defendant "conduct[ed] business extensively, if not exclusively, through [its] Internet websites and correspond[ed] regularly with customers via email").

Service via the MakerDAO Support Email is reasonably calculated to inform Defendant of the summons and complaint sent there by Plaintiff because it is the sole point of contact listed on

Defendant's website, Fonss Decl., ¶¶ 4-7, suggesting that Defendant receives and reads messages send through that link. The virtual nature of Defendant's organization further suggests that emails to this address will be received. *Sulzer Mixpac AG*, 312 F.R.D. at 332.

Posting the Summons and Complaint to the MakerDAO Forum—which Defendant uses to conduct organizational governance—is similarly sufficient to provide notice. In one recent example, Defendant evaluated the propriety of maintaining a $250M surplus buffer a proposal to increase the financial resiliency of Defendant and act as "the primary insurance pool for MakerDAO." (Boag Decl., ¶ 16, Exh. L). This proposal was evaluated by the organization on the same forum where Plaintiff posted the Summons and Complaint. It is reasonable to assume that Plaintiff may be reached by the very same Forum. *See* Order on Admin. Mot., Commodity Futures Trading Commission (No. 22-cv-05416-WHO) (authorizing alternative service via "the sole mechanisms the . . . DAO has chosen for the public to contact it directly"). The post containing the summons and complaint was viewed more than 200 times, confirming the reasonableness of this approach. Boag Decl., ¶ 11.

Service by Twitter to the MakerDAO Twitter Account is also "reasonably calculated, under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2007). MakerDAO has a strong and continued Twitter presence and active MakerDAO Forum: MakerDAO generally tweets and posts daily. *See St. Francis Assisi,* 2016 WL 5725002, at *2 (authorizing service via Twitter were a diligent search did not could not locate the defendant who "ha[d] an active Twitter account and continue[d] to use it to communicate with his audience."); *see also Philip Morris USA Inc.*, 2007 WL 725412, at *3 (allowing electronic service because the defendant "correspond[ed] regularly" on electronic platforms); *PCCare247 Inc.*, 2013

WL 841037, at *5 ("Particularly where defendants have zealously embraced a comparatively new means of communication, it comports with due process to serve them by those means" (internal quotation marks omitted)). Service by Twitter is "all the more reasonable" because MakerDAO "demonstrably already ha[s] knowledge of the lawsuit." *Id*. at *18 (citing *SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987)). As noted above, MakerDAO members have commented and tweeted relating to the Plaintiff's lawsuit and other matters. Boag Decl., ¶ 14, Exh. J.

In the specific context of a DAO, a Northern District of California court recently ruled that service upon a DAO by alternative electronic means was appropriate.[4] *See Order on Admin. Mot., Commodity Futures Trading Comm'n*, (No. 22-cv-05416-WHO). There, the Court ordered that service was effective where the plaintiff had submitted the summons and complaint through Defendant Ooki DAO's Help Chat Box, with contemporaneous notice by posting in the Ooki DAO's Online Forum. The facts in *Commodity Future Trading Comm'n* are strikingly similar to the instant action, i.e., service upon a decentralized autonomous organization "made up of certain anonymous users of the trading platform it operates and which has no physical office address or any publicly identifiable persons associated with its business . . . ." (*Id*. at ¶¶ 6-10). The Court there found that alternative service via "the sole mechanisms the Ooki DAO has chosen for the public to contact it directly" was warranted. *Id*. The facts here compel the same conclusion— service upon a DAO via the very electronic mechanisms it uses for communication and governance is permissible under Rule 4(e)(1) and NY CPLR § 310(e).

Because of Defendant's strong virtual presence, lack of physical presence, and evidence that this service has already been effective, the Court should exercise its authority under Rule

---

[4] Service of process on a decentralized autonomous organization appears to be an issue of first impression in this district.

4(e)(1) and NY CPLR § 310(e) to authorize service by a combination of the MakerDAO Forum, MakerDAO Twitter, and MakerDAO support email, the same mechanisms that it relies upon for the functioning of the organization.

## CONCLUSION

Based on the foregoing, Plaintiff requests that the Court direct that service of process on MakerDAO be made on this action by providing a copy of the Summons and Complaint by (1) direct message to the @MakerDAO Twitter account; (2) posting to the official MakerDAO Forum at forum.makerdao.com; and (3) e-mail message to support@makerdao.com, and since Plaintiff provided the documents in this manner on October 12, 2022, the holds that Plaintiff effectively served Defendant on that date.

Dated: November 11, 2022               Respectfully submitted,

                                       BOAG LAW, PLLC

                                       By: _____
                                       David A. Boag (DB9899)
                                       447 Broadway, Suite 2-270
                                       New York, NY 10013
                                       (212) 203-6651
                                       dab@boagip.com

                                       *Attorneys for Plaintiff True Return Systems LLC*