

Positive
As of: February 14, 2023 2:53 PM Z

# Sola Franchise Corp. v. Solo Salon Studios, Inc.

United States District Court for the Eastern District of New York

February 9, 2015, Decided; February 9, 2015, Filed

CV 14-946 (JS) (AKT)

**Reporter**
2015 U.S. Dist. LEXIS 38490 *

SOLA FRANCHISE CORPORATION and SOLA SALON STUDIOS, LLC, Plaintiffs, - against - SOLO SALON STUDIOS, INC., Defendant.

**Subsequent History:** Adopted by, Motion granted by, Injunction granted at *Sola Franchise Corp. v. Solo Salon Studios, LLC, 2015 U.S. Dist. LEXIS 35901 (E.D.N.Y., Mar. 23, 2015)*

## Core Terms

salon, Studios, infringing, Solo, marks, allegations, trademark infringement, dilution, advertising, trademark, quotation, Lanham Act, website, beauty, default judgment, default, consumers, franchises, user, trade name, registered, likelihood of confusion, alterations, injunction, famous, registration, similarity, commerce, products, permanent injunction

**Counsel:** [*1] For Sola Franchise Corporation, Sola Salon Studios, LLC, Plaintiffs: William Davis Foley, LEAD ATTORNEY, Joseph N. Froehlich, Locke Lord LLP, New York, NY.

**Judges:** A. KATHLEEN TOMLINSON, Magistrate Judge.

**Opinion by:** A. KATHLEEN TOMLINSON

## Opinion

### REPORT AND RECOMMENDATION

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

### I. Preliminary Statement

Plaintiffs Sola Franchise Corporation ("Sola Corp.") and Sola Salon Studios, LLC ("Sola") (collectively, "Plaintiffs") bring this trademark infringement action against Defendant Solo Salon Studios, Inc. ("Defendant" or "Solo") based on Defendant's use of the name "Solo Salon Studios" in connection with its beauty salon business. Plaintiffs assert claims for (1) trademark infringement and false designation of origin, pursuant to *Sections 32* and *34* of the Lanham Trademark Act of 1946 ("Lanham Act"), *15 U.S.C. § 1114(1)*, *1125(a)*; (2) dilution pursuant to *Section 43(a)* of the Lanham Act and *N.Y. Gen. Bus. Law ("NYGBL") § 360-l*; (3) unfair competition and trademark infringement under New York common law; and (4) unfair and deceptive business practices pursuant to *NYGBL § 349*. *See generally* Compl. [DE 1].

Plaintiffs served Defendant with the Summons and Complaint through the Secretary of State on February 14, 2014, *see* DE 4, but Defendant failed to respond. On [*2] April 1, 2014, the Clerk of Court entered a notation of default against Defendant, *see* DE 8, and on May 20, 2014, Plaintiffs moved for entry of default judgment pursuant to *Rule 55 of the Federal Rules of Civil Procedure*. *See* DE 9. Judge Seybert referred the motion to this Court for a Report and Recommendation as to whether Plaintiffs' motion should be granted, and, if so, to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded to the Plaintiffs. *See* DE 10.

Thereafter, this Court issued an Order directing Plaintiffs to confirm that, as indicated in their motion papers, Plaintiffs are not requesting monetary damages, attorneys' fees or costs, and are seeking only injunctive relief. Elec. Order, June 3, 2014. Plaintiffs' counsel responded that Plaintiffs' motion "solely seeks a permanent injunction enjoining [D]efendant . . . from using the name 'Solo Salon Studios' and otherwise infringing on [Plaintiffs'] federally registered trademark." DE 13.

Based upon the information submitted by Plaintiffs, and

for the reasons set forth below, the Court respectfully recommends to Judge Seybert that (1) default judgment be entered against Defendant; (2) a permanent injunction be issued preventing Defendant from using the [*3] "Solo Salon Studios" name and engaging or participating in any other infringing activity; (3) Defendant be directed to deactivate its website and any social media profile(s) or account(s) Defendant has established which bear the name "Solo Salon Studios"; and (4) Defendant be ordered to deliver for destruction any infringing advertising, provided that Plaintiffs give the Court details as to where this delivery should be made and to whom.

## II. BACKGROUND

The following facts are taken from the Complaint and the motion for default judgment. Plaintiff Sola is a Colorado-based limited liability company with its principal place of business in Denver. Compl. P 3. Sola is the owner of United States Service Mark Registration No. 3,139,111 for the trademark "SOLA SALON STUDIOS" ("the Mark"). *Id.* P 7. The Mark was registered on September 5, 2006 for the following services: "beauty salons, hairdressing salons, skin care salons in Class 44, and building leasing and leasing of real estate in Class 36." *Id.; see* Cert. of Reg. and U.S. Patent and Trademark Office ("USPTO") Reg. No. 3,139,111, attached as Ex. A to the Complaint. According to the Complaint, Sola's registration is valid and subsisting, has not [*4] been cancelled or revoked, and has become incontestable pursuant to Section 15 of the Lanham Act, *15 U.S.C. § 1065*. Compl. PP 7-8.

Since approximately May 2004, Sola has used the Mark continuously "in connection with and to identify its salon services, and to distinguish said services from similar services offered by other companies, by, and without limitation, prominently displaying the Mark at its business locations and on advertising and promotional materials." *Id.* P 9. The Complaint asserts that the name "Sola" was chosen "in part, because it is Latin for 'alone' or 'only.'" *Id., see* Reg. No. 3,139,111, Compl., Ex. A. According to the Complaint, both of these terms are "similes for 'solo.'" Compl. P 9.

Plaintiffs' "unique business model" involves granting franchises to salons to operate under the name "Sola Salon Studios" ("Sola franchises"). *Id.* P 10. The Sola franchises "consist of beautifully designed, highly plush suites that are individually rented by salon professionals, including hair stylists and skin care stylists." *Id.* Plaintiff Sola Corp. is authorized to enter into franchise agreements with and license the Mark "to qualified persons or businesses to establish and operate salon studios under a standard, unique [*5] and uniform system developed by Plaintiffs." *Id.* PP 10-11. Sola franchisees receive certain support from Plaintiffs, "including assistance with initial site selection, design and construction of the salon, marketing and operation of the salon." *Id.* P 10.

Sola franchises are currently operating in 32 states, including New York. *See id.* P 12. There is a Sola franchise located in White Plains and additional franchises are planned for Garden City and Huntington. *Id.* At the time Plaintiffs' filed their Complaint in February 2014, "significant steps" had been taken toward opening a Sola franchise in Port Jefferson. *Id.* P 13. Plaintiffs assert that, at the time of the filing of this motion, the Port Jefferson franchise is now "open and operating." *See* Declaration of Ben Jones, Executive Vice President and General Counsel for Sola, in Support of Plaintiffs' Motion for a Default Judgment and Permanent Injunction ("Jones Decl.") P 4.

Defendant Solo is a New York limited liability company with its principal place of business on Route 25A in Mount Sinai, New York. Compl. P 4; *see* Pls.' Mem. at 3. Like Plaintiffs, "Defendant is in the business of providing services by beauty professionals, including stylists, estheticians, nail technicians, [*6] and massage therapists." Compl. P 14. Defendant's business is "intend[ed] to rent space to individual salon professionals" similar to Plaintiffs. *Id.* P 15.

Plaintiffs assert that Defendant intends to operate a beauty and hairdressing salon under the name "Solo Salon Studios" at its location in Mount Sinai, which is "only about two (2) miles down the road from the Port Jefferson SOLA SALON STUDIOS location." *Id.* P 15. While the Solo salon "is not yet complete, Defendant has placed a sign in front of the . . . [Solo salon] that states 'Solo Salon Studios: RESERVE YOUR STUDIO TODAY: Be a charter member in the newest and most exciting phase in the beauty industry: 631-473-SOLO www.solosalonstudios.com." *Id.*[1] In addition, through its website, www.solosalonstudios.com, "Defendant promotes and advertises its business as providing 'beautifully equipped and independently operated salon studios at no expense to the salon professional.'" *Id.*

---

[1] Plaintiffs submitted photographs of Defendant's sign as an exhibit to their Complaint. *See* Compl., Ex. B.

The website states that Defendant's services "include fully furnished studios for salon professionals that include 'stylists, estheticians, nail technicians, massage therapists and other beauty professionals.'" *Id.* P 16; *see* Declaration of Joseph N. Froehlich, Counsel for Plaintiffs, in Support [*7] of Plaintiffs' Motion for a Default Judgment and Permanent Injunction ("Froehlich Decl."), Ex. A (screenshot of www.solosalonstudios.com taken May 12, 2014). "[V]isitors to Defendant's website are presented with a menu option to book an online appointment." Compl. P 16. Defendant also advertises on the "Craigslist" website, making the same representations as on its own website, *id*, and has established a Facebook page. Froehlich Decl. P 3, Ex. B (screenshot of Defendant's Facebook page taken May 13, 2014).

Plaintiffs contend that "Defendant's infringing activities have been deliberate and willful." Compl. P 17. According to the Complaint, "Defendant was expressly placed on notice and verbally warned by Plaintiff's that use of the 'Solo Salon Studios' designation infringed on the SOLA SALON STUDIOS mark, but chose to disregard Plaintiffs' warnings and engage in illegal and infringing activities nonetheless." *Id*. Plaintiffs have submitted documentary support for these claims through the declarations of Ben Jones and their attorney Joseph M. Froehlich. According to these declarations, Jones spoke [*8] by telephone with John Cusano, an individual who identified himself as Solo's owner, around August 26, 2013. Jones Decl. P 5; *see* Froehlich Decl. P 4. During that conversation, Jones explained to Cusano that "Plaintiffs had established[] national brand equity in the name 'Sola Salon Studios,'" and that Defendant was infringing on the Mark by seeking to use the "Solo Salon Studios" trade name "at a beauty and hairdressing salon in Mt. Sinai New York . . . that utilized the same unique concept employed by Sola franchises." Jones Decl. P 5. Jones asked Cusano "to voluntarily change the name" of the Solo salon," which Jones asserted "would not be difficult" because the salon "was not yet open," but Cusano "refused." *Id*. P 6. Thereafter, Froehlich called Cusano around October 29, 2013 to obtain an address for Plaintiffs to send a formal "cease and desist" letter, as prior correspondence mailed to the address listed for Defendant on the New York Secretary of State's website had been returned as undeliverable. Froehlich Decl. P 4. Cusano did not provide this information, and Froelich called him again on November 8, 2013, this time "rais[ing] the issue of Defendant's infringement on the Mark." *Id*. P 6. Froehlich [*9] suggested that, "to abate this infringement and to avoid formal litigation," Defendant could "change its name." *Id*. In response, Cusano "indicated that Plaintiffs would have to initiate suit to have Defendant change its name," and "declined to give [Froelich] an address or name of an attorney to whom [he] could send a letter formally explaining Sola's position." *Id*.

### III. STANDARD OF REVIEW

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. 55(a). Entry of a default judgment is a two-step process and requires first that the clerk of the court "enter the party's default" indicating that a party has "failed to plead or otherwise defend." Fed. R. Civ. 55(a). After the clerk has issued a certificate of default, the moving party may then make an application for entry of a default judgment, pursuant to Rule 55 (b)(2), as Plaintiffs have done here. "Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." Philip Morris USA Inc. v. 5 Bros. Grocery Corp., No. 13-CV-2451, 2014 U.S. Dist. LEXIS 112274, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied 506 U.S. 1080, 113 S. Ct. 1049, 122 L. Ed. 2d 357 (1993)); Krevat v. Burgers to Go, Inc., No. 13-CV-6258, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) ("A default [*10] constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See* Deckers Outdoor Corp. v. TKM Forest Hills, LLC, No. 12-CV-5986, 2014 U.S. Dist. LEXIS 127605, 2014 WL 4536715, at *4 (E.D.N.Y. Sept. 11, 2014); Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *5.

"The decision to grant a motion for a default judgment lies in the sound discretion of the trial court." Perez v. Sajovic, No. 14-CV-01922, 2014 U.S. Dist. LEXIS 171185, 2014 WL 6983445, at *3 (E.D.N.Y. Dec. 10, 2014); *see* Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999). "As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default." Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *5

(citing *Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001)*; *Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993))*. "These factors are: (1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Id*. (quoting *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc., No. CV 12-6317, 2013 U.S. Dist. LEXIS 112301, 2013 WL 4042357, at \*2 (E.D.N.Y. Aug. 8, 2013))*.

## IV. DISCUSSION

The Court now analyzes the three factors set forth in *Flooring Experts* as applied to the facts and circumstances of this case.

### A. Willfulness

As to the first factor, "Defendant's [*11] failure to appear, failure to respond to the Complaint, and failure to respond to the instant motion sufficiently demonstrate willfulness." *2014 U.S. Dist. LEXIS 131256, [WL] at \*6* (citing *e.g. S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998)* (unexplained failure to respond to complaint indicates willfulness); *Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at \*1 (S.D.N.Y. Dec. 20, 2007)* (finding defendants' failure to appear, failure to respond to the complaint and failure to respond to a motion for default judgment indicates willful conduct)).

Plaintiffs have submitted a proof of service to the Clerk of the Court demonstrating that the Summons and Complaint were served upon Defendant through the New York Secretary of State. DE 4. As noted above, Defendant has not answered or otherwise moved with respect to the Complaint, nor has Defendant requested an extension of time to respond. Plaintiffs' motion for default judgment was served upon Defendant, via mail, to its last known address and principal place of business: Solo Salon Studios Inc., 165-8 Rt 25A Mount Sinai, New York 11766. DE 9-9. Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient [*12] to establish willfulness.

See *Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at \*6*; *McNulty, 137 F.3d at 738*; see also *United States v. DiPaolo, 466 F.Supp.2d 476, 482 (S.D.N.Y.2006)*.

### B. Meritorious Defense

The Court now considers whether Defendant has a meritorious defense. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.1996)* (quoting *Anilina Fabrique de Cloroants v. Aakash Chems. & Dyestaffs, Inc., 856 F.2d 873, 879 (7th Cir. 1988))* (internal quotation marks omitted). "While a defendant need not establish his defense conclusively, he must 'present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at \*6* (quoting *McNulty, 137 F.3d at 740*).

Moreover, "where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *2014 U.S. Dist. LEXIS 131256, [WL] at \*6* (citing *Empire State Carpenters Welfare v. Darken Architectural Wood, No. 11—CV—46, 2012 U.S. Dist. LEXIS 5275, 2012 WL 194075, at \*3 (E.D.N.Y. Jan. 17, 2012))*; *Mack Fin. Servs. v. Poczatek, No. CV—10—3799, 2011 U.S. Dist. LEXIS 117948, 2011 WL 4628695, at \*4 (E.D.N.Y. Aug. 30, 2011)*. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted. *Id*. (citing *Indymac Bank, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at \*1)*; *see, e.g., Flanagan v. N. Star Concrete Constr., Inc., No. 13-CV-2300, 2014 U.S. Dist. LEXIS 131632, 2014 WL 4954615, at \*5 (E.D.N.Y. Oct. 2, 2014)*; *Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013)*. Here, Defendant has not interposed an answer, nor has it otherwise presented any defense to the Court. These factors weigh in favor of granting a default judgment, and the allegations in Plaintiffs' Complaint are deemed admitted. [*13] See *Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at \*6*.[2]

---

[2] The Court notes that some of the allegations in the Complaint are pled on information and belief. See Compl PP 16, 20, 26, 37, 46. "In general, 'conclusory allegations based on information and belief' are insufficient to support a finding of

However, "[a] plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." [*14] *Deckers Outdoor Corp., 2014 U.S. Dist. LEXIS 127605, 2014 WL 4536715, at \*4*; *see Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009)*. "'[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Balady, Inc. v. Elhindi, No. 14 CV 855, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at \*3 (E.D.N.Y. Dec. 23, 2014)* (quoting *La Barbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010))*; *see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)* (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action); *Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at \*6* ("Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims.").

Plaintiffs' Complaint alleges six causes of action against Defendant: (1) trademark infringement under the Lanham Act, *15 U.S.C. § 1114(1)(a)*; (2) false designation of origin under the Lanham Act, *id. § 1125(a)(1)(A)*; (3) dilution under the Lanham Act, *id. § 1125(c)*, and *NYGBL § 360-l*; (4) trademark infringement and unfair competition under New York common law; (5) unfair and deceptive business practices under *NYGBL § 349*; and (6) an injunction. *See* Compl. PP 18-50. The Court will examine the first five causes of action to determine if the allegations set forth in the Complaint state valid claims before addressing Plaintiffs' request for injunctive relief.

### 1. Trademark Infringement and False Designation of Origin under the Lanham Act

The Lanham Act seeks to "regulate commerce within the control [*15] of Congress by making actionable the deceptive and misleading use of marks in . . . commerce." *15 U.S.C. § 1127*. Specifically, the statute "protects the rights of the first user of a trademark, particularly where that mark is a strong one." *Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 742 (2d Cir. 1998)*. This is achieved "by barring a later user from employing a confusingly similar work, likely to deceive purchasers as to the origin of the later user's product, and one that would exploit the reputation of the first user." *Id.* (citation omitted).

"The standards for false designation of origin claims under *Section 43(a)* of the Lanham Act (*15 U.S.C. § 1125*) are the same as for trademark infringement claims under *Section 32* (*15 U.S.C. § 1114*)." *Van Praagh v. Gratton, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014)* (internal quotation marks and alterations omitted); *see also Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 129 (2d Cir. 2004)* (analyzing the plaintiff's claims of imitation of registered mark, *15 U.S.C. §§ 1114*, and false designation of origin, *id § 1125(a)*, under the same legal standard); *Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)* (same). In order to prevail on both of these claims, "a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, 360 F.3d at 129-130* (citing *Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993)*; *see, e.g., Virgin, 335 F.3d at 146* (noting that the *Gruner* test applies to claims brought under *§§ 1114* and *1125(a)*).

#### a. Entitlement to Protection

As to the first factor, the registration [*16] of a mark constitutes prima facie evidence that the mark is protected and that the registrant has "[the] exclusive right to use the mark in commerce on the product." *Gruner, 991 F.2d at 1076*; *see 15 U.S.C. § 1115(b)* ("[R]egistration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered

default-based liability." *Flanagan, 2014 U.S. Dist. LEXIS 131632, 2014 WL 4954615, at \*6* (quoting *J & J Sports Prods., Inc. v. Daley, No. CV—06—0238, 2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707, at \*3-4 (E.D.N.Y. Feb. 15, 2007))*. "However, allegations on information and belief may be sufficient to hold defendant individually liable on default judgment where they state facts primarily within the defendant's knowledge." *Id.* (citing *e.g. Sexy Hair Concepts, LLC v. Sexy Hair Inc., No. 12—CV—3937, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at \*4 (E.D.N.Y. Sept. 30, 2013)* (deeming admitted allegation on information and belief that the defendant owned corporate entity and directed and controlled the activity of the business in default judgment context); *Joe Hand Promotions, Inc. v. Blais, No. 11—CV—1214, 2013 U.S. Dist. LEXIS 142427, 2013 WL 5447391, at \*3 (E.D.N.Y. Sept. 10, 2013)* (deeming admitted allegations pled on information and belief in default judgment context)). Accordingly, where the facts pled on information and belief state facts primarily within Defendant's knowledge, such facts will be deemed admitted.

mark in commerce."). Here, Plaintiffs' Complaint alleges that Sola owns a valid, registered service mark for SOLA SALON STUDIOS which has become incontestable pursuant to 15 U.S.C. § 1065. *See* Compl. PP 7-8. In support of these allegations, Plaintiffs have included the registration for the Mark issued by the USPTO to Sola on September 5, 2015. *See id.*, Ex. A. This evidence creates a presumption that Plaintiffs' mark is valid and entitled to protection under the Lanham Act, and Defendant has failed to make any showing to the contrary. Accordingly, the Court concludes that Plaintiffs have sufficiently set forth the first factor of their trademark infringement and false designation of origin claims. *See, e.g.* Deckers, 2014 U.S. Dist. LEXIS 127605, 2014 WL 4536715, at *5; Philip Morris, 2014 U.S. Dist. LEXIS 112274, 2014 WL 3887515, at *2.

### b. Likelihood of Confusion

In determining whether a defendant's use of a mark will likely cause confusion, courts [*17] "apply the eight-factor balancing test introduced in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961)." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009).

> The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Id. (citing Star Indus. v. Bacardi & Co., Ltd., 412 F.3d 373, 384 (2d Cir. 2005)). "No single factor is dispositive," though "'each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product.'" Brennan's, 360 F.3d at 130 (quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 872 (2d Cir. 1986)); *see also* Starbucks, 588 F.3d at 115 ("The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." (internal quotation marks omitted)).

### i. Strength of the Trademark

As to the first *Polaroid* factor, Plaintiffs' mark is "presumed to be strong by virtue of being registered." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 282 (E.D.N.Y. 2009) (citing Rolex Watch U.S.A., Inc. v. Jones, 2000 U.S. Dist. LEXIS 15082, 2000 WL 1528263, at *2 (S.D.N.Y. Oct.13, 2000)); *see* AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 07-CV-3969, 2009 U.S. Dist. LEXIS 123343, 2009 WL 485186, at *8 (E.D.N.Y. Feb. 26, 2009) ("[T]rademarks registered with the United States [*18] Patent and Trademark office are 'presumed to be distinctive and should be afforded the utmost protection.'" (quoting Lois Sportswear, 799 F.2d at 871)). Plaintiffs assert in the Complaint that they have established rights in SOLA SALON STUDIOS® as a registered service mark, *see* Compl. P 1, and they have provided a copy of the service mark registration from the USPTO as Ex. A to the Complaint. Accordingly, Plaintiffs have sufficiently set for the first element, namely, the strength of the mark.

### ii. Similarity of the Two Marks

When analyzing whether two marks are similar, "courts look to the overall impression created by the logos and the context in which they are found and consider the totality of the factors that could cause confusion among prospective purchasers." Star Indus., 412 F.3d at 386 (citations omitted). "'The crux of the issue is whether the similarity is likely to cause confusion among numerous customers who are ordinarily prudent.'" Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *7 (quoting Swatch Grp., Inc. v. Movado Corp., No. 01-CV-0286, 2003 U.S. Dist. LEXIS 6015, 2003 WL 1872656, at *3 (S.D.N.Y. Apr. 10, 2003)) (internal alteration omitted).

"There is a strong indication of similarity when the marks at issue share a word." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *7 (citing Virgin, 335 F.3d at 149 (noting that the plaintiff's and the defendants' marks were "identical to the extent that both consisted of the same word, 'virgin,'" and concluding that "[i]n view of the [*19] fact that defendants used the same name as plaintiff, . . . the defendants' mark was sufficiently similar to plaintiff's to increase the likelihood of confusion.")). Moreover, similarity will often be found where marks that share a word are presented to consumers "in similar contexts." Balady, 2014 U.S. Dist.

LEXIS 177166, 2014 WL 7342867, at *7 (holding that "[t]he similarity of the marks and their presentation to consumers will likely cause confusion" where both marks contained the term "Balady" and were associated with "stores [that] hold themselves out as purveyors of halal services and importers of specialty Middle Eastern foods."); Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *9 (finding that similarity factor weighed in favor of the plaintiff where one of the plaintiff's marks and the name of defendant's restaurant "both share the word 'Burgers,'" defendant's restaurant was "operat[ing] out of the former space of [the p]laintiff's 'Burger Bar,'" and the defendant's continuing use of plaintiff's trademarks for food items was "not just similar . . . but identical").

Plaintiffs allege that Defendant's use of the "Solo Salon Studios" name "is likely to cause confusion" with Plaintiffs' mark "and to deceive as to the affiliation, connection or association of Defendant with Plaintiffs." Compl. P 24. The [*20] Mark and Defendant's trade name share two identical terms — "Salon Studios" — while their respective third words — "Sola" and "Solo" — are "substantially similar in sound and appearance and substantially identical in meaning and connotation." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *7 (internal quotation marks omitted). Specifically, Plaintiffs allege in their Complaint that the word "Solo" is a simile for "Sola," which is Latin for "alone" or "only." Compl. P 9. In addition, Plaintiffs and Defendant both "provid[e] service by beauty professionals," and Defendant intends to follow a similar business model as Plaintiffs by "rent[ing] space to individual salon professionals." Id. P 15; see id. P10. Accordingly, the Court finds that Plaintiffs have sufficiently stated the similarity between Plaintiff's mark and Defendant's trade name, and that the presentation to ordinary consumers will likely cause confusion. See Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *7; Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *9 ("[G]iven the identical products and services provided, the similarity of the marks is more likely than not to cause consumer confusion."). Thus, Plaintiffs have adequately set forth this *Polaroid* element.

### iii. Competitive Proximity

"The proximity inquiry asks to what extent the two products compete with each other." Brennan's, 360 F.3d at 134 (citation omitted). This factor has [*21] two elements: "market proximity and geographic proximity.

Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products. Both elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion." Id.

According to the allegations in the Complaint, Defendant plans to offer salon services at the Solo salon that are similar to those available at Sola franchises. See Compl. PP 10, 15. Moreover, Defendant and Plaintiffs both seek to attract beauty professionals to lease space at their respective salons. See id. Although Defendant's salon has not yet opened, Defendant has begun advertising its prospective salon services and studios available for lease through a sign posted at its business location in Mount Sinai, its website, and on other Internet outlets. See id. PP 15-16; see also Froehlich Decl. P 3. Plaintiffs also allege that the Mount Sinai salon is just two miles away from Plaintiffs' Port Jefferson Sola franchise. Id. P 14. Accordingly, the Court finds that Plaintiffs have sufficiently set forth the element of competitive proximity.

### iv. Actual Confusion

Actual [*22] confusion occurs where consumers "ha[ve] actually been confused by the two marks." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *8 (quoting Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1227 (2d Cir.1987), *superseded by statute on other grounds as recognized in* Paddington Corp. v. Attiki Imp. & Distribs., 996 F.2d 577 (2d Cir. 1993)) (internal quotation marks omitted). To satisfy this factor, a plaintiff may present "direct evidence" of actual confusion, "such as anecdotal evidence by consumers[] or market research surveys." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *8 (quoting Sunenblick v. Harrell, 895 F.Supp. 616, 630 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996)) (internal quotation marks omitted).

While Plaintiffs allege that confusion will result from Defendant's use of the "Solo Salon Studios" name, they do not allege that consumer confusion has actually occurred, nor have they presented evidence of actual confusion. Accordingly, the Court finds that Plaintiffs have not adequately set forth the element of actual confusion. See Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *8 (finding on motion for default judgment that the "actual confusion" *Polaroid* factor "weigh[ed] in favor of [the] Defendants" where the

Plaintiff "ha[d] not shown any instances of actual confusion"); Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *10 (finding on a motion for default judgment that "[t]he absence of specific information regarding customer confusion. . . weigh[ed] in [the] Defendant's favor" on the actual confusion element). However, "this determination is not fatal" to Plaintiffs' Lanham Act claims, as Plaintiffs may still [*23] state a basis for their claim of likelihood of confusion without showing actual confusion. Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *8 ("'[A]ctual confusion need not be shown . . . since actual confusion is very difficult to prove and the Lanham Act requires only a likelihood of confusion as to source.'") (quoting Lois Sportswear, 799 F.2d at 875) (alteration omitted).

### v. Bridging the Gap

"'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." Star Indus., 412 F.3d at 387 (citing The Sports Auth. Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963 (2d Cir. 1996)). Where, as here, the senior and junior user's "products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis in this case." Id.

### vi. Bad Faith

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Id. "Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." Id. at 389. However, while "[a] finding that a party acted in bad faith can affect the court's choice of remedy or can tip the balance where questions are close[, [*24] i]t does not bear directly on whether consumers are likely to be confused." Virgin, 335 F.3d at 151 (citing TCPIP Holding Co. v. Haar Communications Inc., 244 F.3d 88, 101 (2d Cir. 2001)).

Plaintiffs allege that "Defendant's infringing activities have been deliberate and willful," and have continued despite Plaintiffs' "verbal warn[ings]" to Defendant that its use of the Solo Salon Studios name infringes on Plaintiffs' mark. Compl. P 17. According to the declarations submitted with Plaintiffs' motion, Plaintiffs' representatives spoke to Defendant's owner twice prior to this litigation, warning him that Defendant was infringing on Plaintiffs' mark and suggesting that Defendant change the name of its salon to avoid further infringement. See Jones Decl. PP 5-6; Froelich Decl. PP 5-7. Defendant refused to change the name of the salon or to provide Plaintiffs with an address to mail a cease and desist letter. See id. Further, now that Defendant has defaulted, the Court "may infer that [D]efendant is willing to, or may continue its infringement." Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, *4 (internal quotation marks and alterations omitted); see Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *8. Accordingly, the Court finds that Plaintiffs have adequately set forth the element of bad faith.

### vii. Quality of Defendant's Products

Like bad faith, "[t]he issue of the quality of the secondary user's product goes [*25] more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion." Virgin, 335 F.3d at 152 (citing Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 398 (2d Cir.1995)). Although Plaintiffs have not addressed the quality of Defendant's services or products, Plaintiffs have emphasized the Defendant is in the identical business of providing services by beauty professionals and similarly intends to rent space to individual salon professionals. Compl. ¶ 15. As such, the Court finds that the totality of the allegations in the Complaint sufficiently state this *Polaroid* factor, at least indirectly, to make out a cause of action based on likelihood of confusion.

### viii. Sophistication of the Consumers

"The degree of sophistication of consumers can have an important bearing on likelihood of confusion." Id. at 151. However, where "neither side ha[s] submitted evidence on the sophistication of consumers," it may be appropriate for a court to find that "the sophistication factor is neutral." Id. Here, Plaintiffs have not addressed the sophistication of customers catered to by their salon businesses. However, Plaintiffs do assert that their mark has been in use since May 2004 and has become incontestable. Compl. ¶¶ 8-9. Plaintiffs add that the mark distinguishes [*26] Plaintiffs' services from similar services offered by other companies and that its salons consist of "beautifully designed, highly plush suites that are individually rented by salon professionals . . . ." Id. ¶¶ 9-10. The Court therefore finds that to the degree

necessary in a default setting, Plaintiffs have adequately addressed this element.

### ix. Combining the Factors

Based on the aforementioned *Polaroid* factors, Plaintiffs have adequately stated the basis for their claim of likelihood of confusion. Plaintiffs maintain that ordinary consumers would likely be confused about the relation between Plaintiffs' salons bearing the valid service trademark SOLA SALON STUDIOS and Defendant's salon named "Solo Salon Studios," particularly since Defendant's salon is located so close to one of Plaintiffs' franchises.

For these reasons, the Court concludes that Plaintiffs have sufficiently set forth a claim of trademark infringement and false designation of origin under the Lanham Act.

### 2. Trademark Dilution under the Lanham Act and New York Law

"Federal law allows the owner of a 'famous mark' to enjoin a person from using 'a mark or trade name in commerce that is likely to cause dilution . . . of the [*27] famous mark.'" *Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 111 (2d Cir. 2010)*, cert. denied, 562 U.S. 1082, 131 S. Ct. 647, 178 L. Ed. 2d 513 (2010) (quoting *15 U.S.C. § 1125(c)(1)*). "To prevail on a federal trademark dilution claim, a plaintiff must prove that (1) its mark is famous and distinctive, (2) its mark is used in commerce by the defendant, and (3) the defendant's use is likely to cause dilution." *Van Praagh, 993 F. Supp. 2d at 304* (internal quotation marks omitted) (quoting *Boarding School Review, LLC v. Delta Career Educ. Corp., No. 11 Civ. 8921, 2013 U.S. Dist. LEXIS 48513, 2013 WL 6670584, at *6 (S.D.N.Y. Mar. 29, 2013))*.

*NYGBL § 360-l* provides a plaintiff with injunctive relief in cases where there is a "[l]ikelihood . . . of dilution of the distinctive quality of a mark or trade name. . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." *NYGBL § 360—l*. To prevail on a dilution claim under the statute, "a plaintiff must prove that (1) its mark possesses a 'distinctive quality capable of dilution' and (2) there is a likelihood of such dilution." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 116 (E.D.N.Y. 2010)* (quoting *Johnson & Johnson Consumer Cos., Inc. v. Aini, 540 F.Supp.2d 374, 394 (E.D.N.Y. 2008))*. Distinctiveness, in this context, is measured by the strength of a mark for infringement purposes." *Id.* (internal quotation marks omitted). Moreover, unlike federal trademark dilution law, *NYGBL § 360—l* does not require that the mark be famous and "requires only a mere likelihood of dilution." *Van Praagh, 993 F. Supp. 2d at 304*; see *Tiffany (NJ) Inc., 600 F.3d at 111*.

"'Dilution by blurring' is an 'association arising from the similarity between [*28] a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.'" *Tiffany (NJ) Inc., 600 F.3d at 111* (quoting *15 U.S.C. § 1125(c)(2)(B)*). "Whether a mark or trade name is likely to cause dilution by blurring depends on factors including the similarity between the mark and the famous mark, the distinctiveness and degree of recognition of the famous mark, and whether the user of the mark or trade name intended to create an association with the famous mark." *Van Praagh, 993 F. Supp. 2d at 304* (internal quotation marks omitted); see *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F. Supp. 2d 186, 194 (E.D.N.Y. 2011)*.

Here, the Complaint alleges that Plaintiff's registered service mark has been used in commerce, that the Mark is famous and distinctive, and that Defendant's use of a similar trade name is or will likely cause dilution. *See* Compl. ¶¶ 28-33. According to the Complaint, Plaintiffs have used the Mark "[c]ontinuously since about May 2004" to identify their salon services and to distinguish themselves from their competitors "by . . . prominently displaying the Mark at its business locations and on advertising and promotional materials." *Id.* ¶ 9. Plaintiffs have "salons operating under the name SOLA SALON STUDIOS in thirty-two states," and they allege that the Mark "has become famous" through their "extensive and exclusive use of the Mark" [*29] in commerce. *Id.* ¶¶ 12, 28. Plaintiffs further allege that Defendant began using the Solo Salon Studios name in commerce "after the Mark had already become famous" and "without permission or authority of the Plaintiffs." *Id.* ¶¶ 19, 30. As discussed above, the Court has already determined that the Solo Salon Studios name is substantially similar to Plaintiff's mark. According to Plaintiffs, Defendant's continued use of the Solo Salon Studios "is diluting and/or [is] likely to dilute the Mark," and is causing damage to "Plaintiffs' business, reputation, and good will in the Mark." *Id.* ¶¶ 26, 31. The Court finds that these well-pleaded allegations show that Defendant's continued unauthorized use of the Solo trade name "creates a risk of . . . dilution by blurring." *Estate of Ellington, 812 F. Supp. 2d at 194*. Accordingly, the Court

concludes that Plaintiffs have set forth the elements necessary to state a claim of trademark dilution under both federal and New York State law.

### 3. Claims for Trademark Infringement and Unfair Competition Under New York Common Law

#### a. Common Law Trademark Infringement

To prevail on a common law claim of trademark infringement, a plaintiff "need only present evidence sufficient to establish a violation [*30] of *section 32(1)* of the Lanham Act." *Philip Morris, 2014 U.S. Dist. LEXIS 112274, 2014 WL 3887515, at *4* (quoting *Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 526 (S.D.N.Y. 2009))* (internal quotation marks omitted); *see, e.g. Lyons*, 702 F. Supp. 2d at 116 ("A common law trademark infringement claim is similar to the corresponding Lanham Act claim. Thus, proof of a trademark infringement claim under the Lanham Act will entitle one to relief under its state law analogue.") (citing *Nike, Inc. v. Top Brand Co. Ltd., 2005 U.S. Dist. LEXIS 42374, 2005 WL 1654859, at *7 (S.D.N.Y. Jul. 13, 2005))*. Accordingly, for the reasons discussed above with respect to infringement under the Lanham Act, Plaintiffs have sufficiently stated a cause of action for common law infringement.

#### b. Common Law Unfair Competition

"The Second Circuit has held that 'the essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Philip Morris, 2014 U.S. Dist. LEXIS 112274, 2014 WL 3887515, at *4* (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-35 (2d Cir. 1995))* (alteration omitted). Thus, "[t]o prevail on an unfair competition claim under New York law, a 'plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief' as well as make a showing of 'bad faith.'" *Lyons*, 702 F. Supp. 2d at 115 (quoting *Jeffrey Milstein, 58 F.3d at 35*). "Unfair practices that are covered by the claim include those involving the misappropriation of the skill, expenditures, and labor of another." [*31] *Id*. (internal quotation marks omitted).

The Court already determined in its discussion of Plaintiffs' federal infringement claims that Plaintiffs have adequately stated that there is a likelihood of confusion between Plaintiffs' mark and Defendant's Solo Salon Studios name. Moreover, as discussed above, Plaintiffs allege in their Complaint that Defendant's infringing conduct "has been willful and deliberate," and has continued despite Plaintiffs' verbal warnings. Compl. ¶ 17; *see generally* Jones Decl.; Froehlich Decl. These allegations, accepted as true, are enough to assert bad faith on Defendant's for he purposes of a common law unfair competition cause of action. *Philip Morris, 2014 U.S. Dist. LEXIS 112274, 2014 WL 3887515, at *4*.

### 4. Claim for Unfair and Deceptive Acts Under NYGBL § 349

*NYGBL § 349(a)* provides that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in New York are unlawful. The purpose of the statute "is to 'empower customers, especially the disadvantaged' and to 'even the playing field of their disputes with better funded and superiorly situated fraudulent businesses.'" *Van Praagh*, 993 F. Supp. 2d at 305 (quoting *Watts v. Jackson Hewitt Tax Service Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008))* (internal quotation marks omitted). "'To make out a *prima facie* case under *Section 349*, a plaintiff must demonstrate that (1) defendant's [*32] deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id*. (quoting *Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)* (per curiam)).

However, "'it is well-established that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under *NYGBL § 349*." *Id. at 306* (quoting *Perkins School for the Blind v. Maxi—Aids, Inc., 274 F. Supp. 2d 319, 327 (E.D.N.Y. 2003))* (alterations omitted). "'[T]he prevailing view in the Second Circuit is that trademark infringement claims are not cognizable under *NYGBL § 349* unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.'" *Id. at 305* (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012))* (internal quotation marks and alteration omitted); *see MyPlayCity, Inc. v. Conduit Ltd., No. 10 Civ. 1615, 2012 U.S. Dist. LEXIS 47313, 2012 WL 1107648, at *15 (S.D.N.Y. Mar. 30, 2012)*. In other words, "commercial claimants under *NYGBL § 349* must allege conduct that

has significant ramifications for the public at large in order to properly state a claim." *Id. at 306* (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003))* (internal quotation marks and alterations omitted).

Here, Plaintiffs make the conclusory allegation that Defendant's infringing conduct "has caused harm to the general public interest." Compl ¶ 42. However, "the Complaint alleges no facts suggesting anything beyond the general consumer [*33] confusion normally found in a trademark infringement case." *Van Praagh, 993 F. Supp. 2d at 306*. Accordingly, "the Court finds that Plaintiffs have not met the threshold requirement of alleging that the matter affects the public interest in the State of New York." *Id.* As such, Plaintiffs have failed to state a valid cause of action under *NYGBL § 349*.

In sum, the Court concludes that, accepting the allegations in the Complaint as true, Plaintiffs have asserted viable claims for trademark infringement and false designation of origin under the Lanham Act; dilution under federal and New York State law; and common law trademark infringement and unfair competition. However, Plaintiffs failed to state a viable cause of action for unfair and deceptive acts pursuant to *NYGBL § 349*.

### C. Prejudice

The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default judgment were to be denied. Here, denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06—CV—14226, 2008 U.S. Dist. LEXIS 107062, 2008 WL 5560868, at * 2 (S.D.N.Y. Oct. 27, 2008)* (citing *Mason Tenders, 2003 U.S. Dist. LEXIS 6881, 2003 WL 1960584, at * 3)*. Without the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately [*34] set forth in the Complaint. Since all three factors have been met with respect to Plaintiffs' trademark infringement, false designation of origin, dilution, and unfair competition claims, a default judgment is warranted on these claims. However, as explained above, a default judgment is not warranted as to Plaintiffs' unfair and deceptive business practices claim because the allegations in the Complaint do not state a valid cause of action under *NYGBL § 349*. The Court therefore recommends to Judge Seybert that default judgment be entered against Defendant on the first, second, third, and fourth causes of action set forth in the Complaint.

### D. Damages

Although a default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability, the burden is on the plaintiff to establish its entitlement to the relief sought in the complaint, including injunctive relief. *See Deckers, 2014 U.S. Dist. LEXIS 127605, 2014 WL 4536715, at *6, *10*; *Gen. Nutrition Inv. Co. v. Gen. Vitamin Centers, Inc., 817 F. Supp. 2d 66, 72 (E.D.N.Y. 2011)*. As explained above, although Plaintiff's Complaint requests money damages, attorneys' fees, and costs in addition to injunctive relief, Plaintiffs have since expressed both in their motion and correspondence with the Court that they are only seeking a permanent injunction, enjoining Defendant from [*35] using the "Solo Salon Studios" trade name and otherwise infringing on Plaintiff's mark. *See* Pls.' Mem. at 9. In conjunction with this request, Plaintiffs seek an order directing Defendant to (1) deactivate its website, *www.solosalonstudios.com*, as well as social media accounts bearing the Solo Salon Studios name, as well as cease all online advertising; and (2) deliver any remaining advertisements to Plaintiffs for destruction. *See* [Proposed] Order for Entry of Default Judgment, attached as Ex. C to Pls.' Mem. The Court will address each of these requests for relief in turn.

#### *1. Permanent Injunction*

"A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Lyons, 702 F. Supp. 2d at 118* (internal quotation marks omitted); *see, e.g., Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *11*; *Rolex Watch, U.S.A., Inc. v. Pharel, No. 09 CV 4810, 2011 U.S. Dist. LEXIS 32249, 2011 WL 1131401, at *6 (E.D.N.Y. Mar. 11, 2011) report and recommendation adopted*, *No. 09-CV-4810, 2011 U.S. Dist. LEXIS 32246, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011)*. Plaintiffs have satisfied both of these conditions.

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the

violation of any right of the registrant of a mark [*36] registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d). . . ." 15 U.S.C. § 1116(a). In this case, Sola, as the registrant of the Mark, seeks injunctive relief to redress violations of the Lanham Act. Thus, Plaintiffs have demonstrated that they are entitled to injunctive relief under the applicable statute.

The second condition requires Plaintiffs to meet the elements set forth in Salinger v. Colting (607 F.3d 68 (2d Cir. 2010)) for the issuance of an injunction. See Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *11 ("While Salinger was originally limited to copyright cases, 'this Court agrees with other courts in this Circuit to have considered Salinger's applicability to trademark actions . . . that there appears to be no principled reason not to adopt the newly announced standard in the trademark context.'") (quoting U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F.Supp.2d 515, 539 (S.D.N.Y.2011), aff'd, 511 F. App'x 81 (2d Cir.2013)) (internal alterations omitted); Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *12. Pursuant to Salinger, "a plaintiff must first demonstrate 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor.'" Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *12 (quoting Salinger, 607 F.3d at 79) (internal quotation marks and alterations omitted). Second, a plaintiff must demonstrate

> (1) that it has suffered irreparable [*37] injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Salinger, 607 F.3d at 77 (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)); see, e.g., Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *11; Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *12; Hilton v. International Perfume Palace, Inc., No. 12—CV—5074, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *12 (E.D.N.Y. Oct. 17, 2013).

Here, Plaintiffs have demonstrated success on the merits by establishing their entitlement to a default judgment on their trademark infringement, false designation of origin, dilution, and unfair competition claims. See Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *12; Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4. The Court therefore turns to an examination of the four remaining elements to determine whether Plaintiff is entitled to injunctive relief.

### a. Irreparable Injury

"Although the law once recognized a presumption of irreparable harm upon a showing of a likelihood of consumer confusion, following Salinger, courts have found that "this presumption of irreparable injury in trademark cases is no longer appropriate.'" Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *12 (quoting U.S. Polo Ass'n, Inc., 800 F. Supp. 2d at 540) (alteration omitted); see Salinger, 607 F.3d at 82 ("After eBay . . . courts must not simply presume irreparable harm. Rather, plaintiffs must show that, on the facts of their case, the [*38] failure to issue an injunction would actually cause irreparable harm."). Thus, "the court must actually consider the injury the plaintiff [has] suffer[ed] . . . , paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" Salinger, 607 F.3d at 80 (quoting eBay, 547 U.S. at 391). "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." Id. at 68. "In the intellectual property context, where confusion about the origin of goods . . . leads to damage to reputation or loss of a potential relationship with a client that 'would produce an indeterminate amount of business in years to come[,]' monetary damages are difficult to establish and are unlikely to present an adequate remedy at law." Mamiya Am. Corp., No. 09—CV—5501, 2011 U.S. Dist. LEXIS 34991, 2011 WL 1322383, at *26 (E.D.N.Y. Mar. 11, 2011) (quoting Register.com v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004)).

The well-pleaded allegations in the Complaint support an independent finding of irreparable injury. Under the circumstances here, where there are no assurances in the record against Defendant's continued infringement, monetary damages are unlikely to present an adequate remedy. *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 158 (E.D.N.Y. 2013)*; see also Hilton, 2013 U.S. Dist. LEXIS 150278,

2013 WL 5676582, at *12 [*39] ("Absent a Court directive to cease the infringing activities, plaintiffs would be forced to remedy each new infringement through a separate, fullblown lawsuit for monetary damages . . . [and] defendant may well presume that plaintiffs cannot afford to effectively police the distribution of the infringing product. This would encourage continued infringement.").

"Moreover, Plaintiff[s] will likely suffer irreparable injury absent an injunction." Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *13. The Complaint alleges that Plaintiffs have established "good will in the Mark," Compl. ¶ 26, by using it since May 2004 to identify and distinguish their salon services and "unique business model" from "similar services offered by other companies." Id. ¶¶ 9-10. Plaintiffs' business has been successful enough that they have franchises operating in 32 states, including one very close to Defendant's prospective salon. Id. ¶¶ 12-13; see also Jones Decl. ¶ 5 ("Plaintiffs ha[ve] established[] national brand equity in the name 'Sola Salon Studios[.]'"). "The fact that the damage to Plaintiff[s'] goodwill is 'difficult to measure' weighs in favor of a showing of irreparable injury." Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *13 (quoting Salinger, 607 F.3d at 81). Further, the Court finds a likelihood that customers will draw an erroneous [*40] connection between the Mark and Defendant's trade name and mistakenly believe that the parties' respective salon businesses are somehow affiliated. "Given this likelihood of confusion, the reputation and goodwill that the [Plaintiffs'] mark has amassed over the last decade will be out of Plaintiff[s'] control." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *12. Thus, the irreparable injury prong has been satisfied.

### b. Inadequate Remedy at Law

"In the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate plaintiff for [its] injuries." Stark Carpet Corp., 954 F. Supp. 2d at 158 (citations omitted); see Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 ("The second factor of inadequate remedies at law is satisfied 'where the record contains no assurance against defendant's continued violation' of plaintiff's trademark." (quoting Montblanc-Simplo GmbH v. Colibri Corp., 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010)). To that end, "[w]here the defendant defaults, a court may infer that defendant is willing to, or may continue its infringement.'" Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 (quoting Pearson Educ., Inc. v. Vergara, 2010 U.S. Dist. LEXIS 101597, 2010 WL 3744033, at *4 (S.D.N.Y. 2010) (internal quotation marks and alterations omitted); see AW Indus., 2011 U.S. Dist. LEXIS 111889, 2011 WL 4404029, at *11; Montblanc—Simplo, 692 F. Supp. 2d at 259. Here, the default gives rise to the inference that the Defendant is willing to continue to infringe upon Plaintiffs' mark. Defendant's alleged owner has also ignored repeated requests [*41] from Plaintiffs that Defendant change the name of its salon or otherwise remedy its infringing behavior. See Compl. ¶17; Jones Decl. ¶ 5; Froehlich Decl. ¶ 6. Accordingly, "Defendant['s] past actions and their default in this action leads to the conclusion that there is no adequate remedy at law." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *12.

### c. Balance of Hardships

The balance of hardships will generally tip in the plaintiff's favor where "it has established irreparable harm and that the infringing conduct is likely to continue absent injunctive relief." AW Indus., 2011 U.S. Dist. LEXIS 111889, 2011 WL 4404029, at *11; see, e.g., Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *12. As discussed above, Plaintiffs have established both of these criteria. Moreover, the fact that Defendant only began using the Solo Salon Studios trade name in May 2013 — nine years after Plaintiffs began using the Mark and nearly seven years after Sola registered the Mark with the USPTO, Compl ¶¶ 9, 45, 46 — further tips the balance in favor of the Plaintiffs. See Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *5. While Defendant "would likely suffer some harm from changing [its] salon's name, . . . Defendan[]s can continue to operate their salon under a different name." Id. Thus, the balance of hardships favors issuance of an injunction.

### d. Public Interest

Finally, the public interest will likely be served by [*42] issuing an injunction. "The trademark laws are intended, in part, to protect the public from confusion[,]" and "[c]learly, it is in the public interest to avoid deceit and confusion in consumer transactions." AW Indus., 2011 U.S. Dist. LEXIS 111889, 2011 WL 4404029, at *11 (internal citations and quotation marks omitted); see also Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL

7342867, at *12 ("'[T]he public has an interest in not being deceived-in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.'") (quoting *NYC Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010))*; Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *13 (same). Since Defendant's use of the Solo Salon Studios name is likely to lead to customer confusion with Plaintiff's mark, "enjoining [Defendant] from further infringement prevents such confusion, and thereby does not disserve the public interest." AW Indus., 2011 U.S. Dist. LEXIS 111889, 2011 WL 4404029, at *11.

Based on the foregoing analysis, the Court concludes that Plaintiffs have established their entitlement to a permanent injunction.

### 2. Deactivation of Defendant's Website

As part of their request for a permanent injunction, Plaintiffs seek an order directing Defendant to

> cease using 'Solo Salon Studios,' or any other mark or designation confusingly similar to Plaintiffs' federally-registered trademark in SOLA SALON STUDIOS, in connection with any advertising and/or internet or social media presence for any [*43] beauty, hairdressing or skin care salon, as well as for any salon which intends to lease space to hair and/or beauty professionals, including, but not limited to:
>
>> i. de-activating the website www.solosalonstudios.com;
>> ii. de-activating any Facebook, Twitter, or Instagram profile or account for Solo Salon Studios; and
>> iii. ceasing to advertise on Craigslist.com or any other online advertising medium.

[Proposed] Order for Entry of Default Judgment, Pls.' Mem., Ex. C. Plaintiffs allege in their Complaint that Defendant "promotes and advertises its business" through www.solosalonstudios.com and by advertising on the Craigslist website. Compl. ¶ 16. Plaintiffs further contend on this motion that Defendant "has established a Facebook page providing visitors with contact information for Defendant and updates on the construction of the Mt. Sinai [salon]." Pls.' Mem. at 4 (citing Froehlich Decl. ¶ 3 and Ex. B).

The Court takes judicial notice that, as of the filing of this Report and Recommendation, www.solosalonstudios.com continues to be a functioning, publicly-available website. *See generally* 23-34 94th St. Grocery Corp. v. N.Y. City Bd. of Health, 685 F.3d 174, 183 (2d Cir. 2012) (taking "judicial notice of a poster recently published on TobaccoFreeNYS.org") (citing United States v. Akinrosotu, 637 F.3d 165, 168 (2d Cir. 2011) (taking [*44] judicial notice of a website)); DeMarco v. Ben Krupinski Gen. Contractor, Inc., No. 12-CV-0573, 2014 U.S. Dist. LEXIS 100793, 2014 WL 3696020, at *5 (E.D.N.Y. July 22, 2014) ("A court may take judicial notice of a website.") (quotation marks omitted). And in light of Defendant's default, the Court accepts as true Plaintiffs' allegations and supporting evidence that Defendant established a Facebook page and advertises on the Craigslist website. *See* Defendant's Facebook page annexed as Ex. B to the Froehlich Decl.; *see also* Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 (accepting as true the plaintiff's allegation that "more than eight months after the cease and desist letter, defendants continued to maintain a Facebook page.").

Accordingly, the Court recommends that (1) Defendant be permanently enjoined from using "Solo Salon Studios," or any other mark or designation confusingly similar to Plaintiffs' mark in connection with any advertising and/or internet or social media presence for any beauty, hairdressing or skin care salon, as well as for any salon which intends to lease space to hair and/or beauty professionals; and (2) Defendant be directed to deactivate the website, www.solosalonstudios.com, and any Facebook or other social media profile(s) or account(s) Defendant has established which bear the name "Solo Salon Studios."

### 3. Delivery and Destruction of Infringing [*45] Materials

Plaintiffs also request that Defendant "deliver up for destruction any and all advertisements (and the like) . . . that use the term 'Solo Salon Studios.'" [Proposed] Order for Entry of Default Judgment, Pls.' Mem., Ex. C. Section 36 of the Lanham Act permits courts to order the delivery and destruction of infringing articles upon a violation of 15 U.S.C. § 1125(a) or a willful violation of § 1125(c). 15 U.S.C. § 1118; *see* Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *14. The provision covers "all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of

the defendant, bearing the registered mark or . . . the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation." 15 U.S.C. § 1118. "The decision whether to order Defendant to 'deliver up and destroy' all [infringing articles] bearing Plaintiff's trademark is committed to the Court's discretion." Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582 (quoting Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc., 589 F.Supp.2d 25, 33 (D.D.C. 2008)); see Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *12.

"Where a permanent injunction against any further infringement is ordered, courts are sometimes reluctant to take the additional step of ordering existing infringing merchandise destroyed." Hilton v. Int'l Perfume Palace, Inc., No. 12—CV—5074, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *14 (E.D.N.Y. Oct. 17, 2013) (citations omitted). "However, on default judgment, the court cannot adequately [*46] determine the extent to which destruction may be necessary, or that the defendant will comply with the injunction." Balady, 2014 U.S. Dist. LEXIS 177166, 2014 WL 7342867, at *12 (citing S & S Brands, Inc. v. Seaford Stop & Shop Inc., No. 13-CV-5383, 2014 U.S. Dist. LEXIS 108934, 2014 WL 3871396, at *4 (E.D.N.Y. Aug. 5, 2014) (recommending the destruction of infringing articles where the defendant defaulted); see Krevat, 2014 U.S. Dist. LEXIS 131256, 2014 WL 4638844, at *14 (recommending the destruction of infringing articles where the defendant "may possess a vast store of infringing goods" and "the Court is unable to obtain representations from Defendant that it will comply with the injunction.").

Accordingly, the Court recommends that Defendant be ordered to destroy the infringing advertising. However, although the proposed injunction would require Defendant to "deliver up" the infringing advertising, it does not specify to whom or where the delivery should be made. Thus, the Court recommends that Plaintiffs provide those details to Judge Seybert so as "to avoid confusion to . . . [D]efendant." S & S Brands, 2014 U.S. Dist. LEXIS 108934, 2014 WL 3871396, at *4.

## V. CONCLUSION

Based upon the foregoing information, the Court respectfully recommends to Judge Seybert that (1) a default judgment is warranted and should be entered against Defendant as to count one, count two, count three, count four, and count six of Plaintiffs' Complaint; (2) Defendant's officers, agents, servants, employees, and representatives be permanently [*47] enjoined from (a) using the name "Solo Salon Studios" in connection with (i) Defendant's business located at 165-8 Route 25A, Mt. Sinai, New York, 11766, and (ii) any beauty, hairdressing or skin care salon, as well as for any salon which intends to lease space to hair and/beauty professionals; (b) using "Solo Salon Studios," or any other mark or designation confusingly similar to Plaintiffs' SOLA SALON STUDIOS mark, in connection with any advertising, internet, and social media presence for any beauty, hairdressing or skin care salon, as well as for any salon which intends to lease space to hair and/or beauty professionals; and (c) engaging in any other conduct which causes, or is likely to cause, confusion, mistake or misunderstanding as to the affiliation, connection, association, origin, sponsorship or approval of their services with Plaintiffs' services or business, or their SOLA SALON STUDIOS mark; (3) Defendant be directed to deactivate the website, www.solosalonstudios.com, and any Facebook or other social media profile(s) or account(s) Defendant has established that bears the name "Solo Salon Studios"; (4) Defendant be ordered to deliver for destruction any infringing advertising, [*48] provided that Plaintiffs give the Court details as to whom and where this delivery shall be made.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Beverly v. Walker, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); Savoie v. Merchants Bank, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation upon the Defendant**

**forthwith by overnight mail and first class mail and to file proof of such service on ECF**.

**SO ORDERED**.

Dated: Central Islip, New York

February 9, 2015

/s/ A. Kathleen Tomlinson

A. KATHLEEN TOMLINSON

**End of Document**