Positive
As of: February 14, 2023 2:54 PM Z

# *Krevat v. Burgers to Go, Inc.*

United States District Court for the Eastern District of New York

August 5, 2014, Decided; August 5, 2014, Filed

13-CV-6258 (JS) (AKT)

**Reporter**
2014 U.S. Dist. LEXIS 131256 *

MITCHELL KREVAT, Plaintiff, - against - BURGERS TO GO, INC. and SAMMY SULTAN, Defendants.

**Subsequent History:** Adopted by, Motion granted by, Injunction granted at *Krevat v. Burgers To Go, Inc., 2014 U.S. Dist. LEXIS 130628 (E.D.N.Y., Sept. 16, 2014)*

Motion denied by, Motion denied by, Without prejudice, Motion granted by *Krevat v. Burgers To Go, Inc., 2015 U.S. Dist. LEXIS 35946 (E.D.N.Y., Mar. 23, 2015)*

## Core Terms

Burgers, infringing, allegations, trademarks, default, Lanham Act, marks, products, damages, trademark infringement, default judgment, Recommendation, hamburgers, injunction, unfair competition, destruction, consumer, sauces, Defendants', restaurant, selling, kosher, weighs, plaintiff's claim, bad faith, merchandise, permanent injunction, consumer confusion, motion for default, false designation

**Counsel:** [*1] For Mitchell Krevat, Plaintiff: Robert David Katz, LEAD ATTORNEY, Eaton & Van Winkle LLP, New York, NY.

Sammy Sultan, Defendant, Pro se, Hewlett, NY.

**Judges:** A. KATHLEEN TOMLINSON, United States Magistrate Judge.

**Opinion by:** A. KATHLEEN TOMLINSON

## Opinion

**REPORT AND RECOMMENDATION**

**A. KATHLEEN TOMLINSON, Magistrate Judge**:

**I. PRELIMINARY STATEMENT**

Plaintiff Mitchell Krevat ("Plaintiff" or "Krevat"),[1] brings this action against Defendants Burgers To Go, Inc. ("Burgers To Go"), and Sammy Sultan ("Sultan") (collectively, "Defendants") seeking redress for violations of the Lanham Act, *15 U.S.C. § 1051, et seq.* and New York State law. *See generally* Compl. [DE 1]. On January 23, 2014, Plaintiff moved for a default judgment solely against Defendant Burgers To Go. DE 26. By Order dated February 21, 2014, Judge Seybert referred Plaintiff's motion for a default judgment to this Court for a Report and Recommendation on whether the pending motion should be granted and, if necessary, to determine the appropriate amount of damages, costs and/or fees to be awarded. DE 29. Based upon the information submitted by Plaintiff, and for the reasons set forth below, the Court respectfully recommends to Judge Seybert that: (1) a default judgment be entered against Burgers [*2] To Go; (2) an injunction be issued preventing Burgers To Go from engaging in or participating in any infringing activity; (3) Burgers To Go be directed to turn over to Plaintiff for destruction any infringing merchandise in its possession, custody or control; and (4) that the calculation of damages against Burgers To Go be postponed until the case is resolved as to both Defendants.

**II. PERTINENT FACTS**

The following facts are taken from the Complaint and the motion for default judgment. Between June 2006 and November 2011, Plaintiff ran and operated Burgers Bar, a kosher food restaurant chain in New York and New Jersey. Compl. ¶ 10. Plaintiff began manufacturing

---

[1] Plaintiff initiated this action and filed the instant motion as a *pro se* litigant. He has recently obtained counsel. DE 52.

and selling hamburgers and related food items under the trade name Burgers Bar in 2006. *Id.* ¶ 12. Plaintiff began selling sauces and salad dressings under the names CHIPAYO MAYO and MUSTAENGO in January 2007. *Id.* For the past seven years, Plaintiff invested heavily in branding, advertising. marketing and otherwise developing the reputation and good will of the "BURGERS BAR, CHIPAYO MAYO and MUSTAENGO" brands. [*3]  *Id.* ¶ 13. Plaintiff's Burgers Bar restaurants were meticulously designed in a unique and special format to provide unique kosher food for customers made from high quality raw materials with strict adherence to a high standard of service. *Id.* ¶ 14. In addition, the CHIPAYO MAYO and MUSTAENGO sauces and salad dressings were uniquely formulated using only the finest ingredients to provide a unique taste experience. *Id.* Plaintiff continues to manufacture, distribute, and provide these goods under the BURGERS BAR, CHIPAYO MAYO, and MUSTAENGO brands today, *id.* ¶ 15, and he continues to invest substantial resources in marketing and advertising these brands, *id.* ¶ 16. As a result, these brands have become well-known in the local Jewish community as well as the broader Jewish communities throughout the United States, and have come to be associated with kosher restaurants, hamburgers, and unique sauces. *Id.* ¶ 23. Plaintiff has five trademarks registered with the U.S. Trademark Office under registration numbers 3,912,193; 3,978,926; 3,912,194; 86,036,207; and 86,037,659. *Id.* ¶ 11.

Defendants Burgers To Go and Sammy Sultan leased the former space of Burgers Bar and opened "BURGERS," a kosher hamburger [*4]  restaurant. Compl. ¶¶ 18-19. According to Plaintiff, Defendants made no revisions or alterations to the previous space with regards to decor, layout, menu, food preparation or delivery systems. *Id.* ¶ 18. In addition, Defendants frequently referred in print and online advertising to BURGERS as being "Formerly Burgers Bar." *Id.* ¶ 20.

In 2013, Plaintiff became aware of Defendants' alleged unauthorized use of his trademarks in connection with the Defendants' hamburger restaurant. *Id.* ¶ 26. Despite Plaintiff's ownership and well-known use of his trademarks, Defendants never contacted Plaintiff to request his consent to the use of the marks. *Id.* ¶ 27. Specifically, the Complaint alleges that "Defendants are in the business of offering for sale and selling hamburgers and sauces under the Krevat trademarks." *Id.* ¶ 28. The Complaint further alleges that Defendants' use of the trademarks is identical to Plaintiff's use of the trademarks -- the selling of hamburgers and sauces --

and that both Plaintiff and Defendants are engaged in the business of selling the same types of goods and services to the same class of customers through the same channels of trade. *Id.* ¶¶ 20-30. Finally, Plaintiff maintains [*5]  that Defendants' use of Plaintiff's trademarks is likely to cause confusion among customers, including Defendants' use of the term "Burgers, the place to meat." *Id.* ¶¶ 32-33.

Based on the foregoing allegations, on October 11, 2013, Plaintiff commenced this action against Defendants asserting four causes of action: (1) unfair competition in violation of *section 43(a)* of the Lanham Act, *15 U.S.C. § 1125(a)*; (2) trademark infringement in violation of *section 43(a)* of the Lanham Act, *15 U.S.C. § 1125(a)*; (3) unfair competition under the common law; and (4) trademark infringement under the common law. The Complaint seeks an order preliminarily and permanently enjoining Defendants from using Plaintiff's trademarks and directing Defendants to deliver for destruction all infringing materials. *Id.* at 10-11. The Complaint also seeks an award of profits and damages arising from Defendants' alleged infringing activity, including pre-judgment and post-judgment interest and attorneys' fees. *Id.* at 11

The Court has jurisdiction over Plaintiff's claims pursuant to *28 U.S.C. §§ 1331*, *1338* and *1367*. *Id.* ¶ 5. Defendants were served with the Complaint on October 16, 2013. DE 9. On November 14, 2013, a request for a Certificate of Default was filed with the Clerk of the Court. DE 10. On November 19, 2013, the Clerk [*6]  of the Court issued a Certificate of Default as to both Defendants. DE 12.

On December 6, 2013, Plaintiff and Defendant Sultan appeared before this Court for an Initial Conference. DE 21. At the Initial Conference, Plaintiff consented to relieve Sultan individually of his default, and the Court directed the Clerk's Office to void the Certificate of Default as to Sultan. *Id.* ¶ 3. However, the Court reminded Sultan, who is the principal of Burgers To Go, that under the law, a corporation cannot proceed on a *pro se* basis. *Id.* Burgers To Go was given 45 days to obtain counsel. *Id.*

Burgers To Go did not retain counsel and did not interpose an Answer or otherwise respond to the Complaint. Thereafter, on January 23, 2014, Plaintiff served and filed the instant motion, seeking a default judgment as to Defendant Burgers To Go only. DE 26. On February 18, 2014, the Court conducted a Status Conference at which time Sultan advised the Court that

Burgers To Go had not been able to retain counsel and would not be represented by counsel moving forward. DE 28 ¶ 2. By Order dated February 21, 2014, Judge Seybert referred Plaintiff's motion for default judgment to this Court for a Report and Recommendation. [*7] DE 29. Burgers To Go has not opposed the motion for default judgment nor responded to the motion in any way.

## III. Discussion

### A. Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Fed. R. Civ. P. 55(a)*. Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to *Rule 55(b)*, as Plaintiff has done here. *See Fed. R. Civ. P. 55(b)*; *Kiewit Constructors, Inc. v. Franbuilt, Inc., No. 07-CV-121A, 2007 U.S. Dist. LEXIS 92069, 2007 WL 4405029, at *2 (W.D.N.Y. Dec. 14, 2007)*; *FashionTV.com v. Hew, No. 06 cv 3200, 2007 U.S. Dist. LEXIS 60817, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007)*. A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp., No. 06-CV-1878, 2007 U.S. Dist. LEXIS 99935, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)* (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992))*. A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See, e.g., Garden City Boxing Club, Inc. v. Morales, No. 05-CV-0064, 2005 U.S. Dist. LEXIS 22989, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005)* (citing *Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995))*.

The determination of a motion for default judgment is left to the sound discretion of the district court. *Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999)*; *Merrill Lynch Bus. Fin. Servs., Inc. v. Brook Island, No. 06 CV 5912, 2010 U.S. Dist. LEXIS 70824, 2010 WL 2787553, at *3 (E.D.N.Y. July 14, 2010)*. As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com,*

*Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001)*; *Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)*. These factors are: (1) [*8] "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Flooring Experts, Inc., No. CV 12-6317, 2013 U.S. Dist. LEXIS 112301, 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013)* (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02 Civ. 9044, 2003 U.S. Dist. LEXIS 6881, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)*). The Court now analyzes these three factors as applied to the facts and circumstances of this case.

### 1. Willfulness

As to the first factor, Defendant's failure to appear, failure to respond to the Complaint, and failure to respond to the instant motion sufficiently demonstrate willfulness. *See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998)* (unexplained failure to respond to complaint indicates willfulness); *Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)* (finding defendants' failure to appear, failure to respond to the complaint and failure to respond to a motion for default judgment indicates willful conduct); *United States v. DiPaolo, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006)* (grounds for default judgment were established by defendant's failure to answer the complaint, particularly in light of the fact that the defendant had expressed no intention to do so at a later time).

Plaintiff has submitted an affidavit of service to the Clerk of the [*9] Court demonstrating that the Summons and Complaint were personally served upon Defendant Burgers To Go. DE 9. As noted above, Burgers To Go has not answered or otherwise moved with respect to the Complaint, nor has Defendant requested an extension of time to respond. Plaintiff's motion for default judgment was served upon Burgers To Go, via mail, to Defendant's last known address and principal place of business: Burgers, 531 Central Avenue, Cedarhurst, New York 11516. DE 26. Burgers To Go has not responded to Plaintiff's motion for default judgment or appeared in any way in this action. Burger to Go's failure to answer the Complaint and to respond to the instant motion demonstrates willfulness under

existing case law. *See McNulty, 137 F.3d at 738*; *see also Indymac Bank, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at *1*; *U.S. v. DiPaolo, 466 F. Supp. 2d at 482*. This conclusion is further supported by the fact that the principal of Burgers To Go, individual Sammy Sultan, has appeared in this action and advised the Court that the corporate defendant would not be defending this action going forward. *See* DE 28.

### 2. Meritorious Defense

Next, the Court must consider whether Burgers To Go has a meritorious defense. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." [*10] *Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996)* (quoting *Anilina Fabrique de Cloroants v. Aakash Chems. & Dyestaffs, Inc., 856 F.2d 873, 879 (7th Cir. 1988))* (internal quotation marks omitted). While a defendant need not establish his defense conclusively, he must "present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty, 137 F.3d at 740* (citations omitted) (internal quotation marks omitted).

Further, where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. *See Empire State Carpenters Welfare v. Darken Architectural Wood, No. 11-CV-46, 2012 U.S. Dist. LEXIS 5275, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012)*; *Mack Fin. Servs. v. Poczatek, No. CV-10-3799, 2011 U.S. Dist. LEXIS 117948, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011)*. Where a defendant has presented no defense to the court, the allegations in a plaintiff's complaint are deemed admitted. *See Indymac Bank, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at *1*; *Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998)* ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal citations omitted). Burgers To Go has not interposed an answer, nor has it otherwise presented any defense to the Court. These factors weigh in favor of granting a default judgment, and the allegations in Plaintiff's Complaint are deemed admitted. *See Empire State Carpenters, 2012 U.S. Dist. LEXIS 5275, 2012 WL 194075, at *3*; *Mack Fin. Servs., 2011 U.S. Dist. LEXIS 117948, 2011 WL 4628695, at *4*; *Indymac Bank, 2007 U.S. Dist. LEXIS*

*93420, 2007 WL 4468652, at *1*; *Chen, 30 F. Supp. 2d at 623*. The Court notes, however, that Plaintiff's allegations are deemed [*11] admitted only for purposes of this default motion and only as to Defendant Burgers To Go. Plaintiff is still required to prove any underlying facts with regard to the individual Defendant Sultan.

Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims. *See Said v. SBS Elecs., Inc., No. CV-08-3067, 2010 U.S. Dist. LEXIS 31744, 2010 WL 1265186, at *2 (E.D.N.Y. Mar. 31, 2010)* ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."); *J&J Sports Prods., Inc. v. Daley, No. CV-06-0238, 2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007)* ("[C]onclusory allegations based on information and belief" are insufficient to support a finding of default-based liability). Thus, the Court examines each of Plaintiff's claims in turn, to determine if the allegations set forth in the Complaint state valid claims.

### a. Lanham Act Claims

Plaintiff's first two causes of action assert violations of *§ 43(a)* of the Lanham Act, *15 U.S.C. § 1125(a)*. Although the first cause of action is entitled "LANHAM ACT VIOLATION-UNFAIR COMPETITION," Compl. at 6, under *Section 43* of the Lanham Act, there is no specific federal cause of action for unfair competition, *Sussman-Automatic Corp. v. Spa World Cup, No. 13-cv-7352, 15 F. Supp. 3d 258, 2014 U.S. Dist. LEXIS 57958, 2014 WL 1651953, at *12 (E.D.N.Y. Apr. 25, 2014)*. [*12] Instead unfair competition under the Lanham Act consists primarily of causes of action for false designation of origin and false advertising. *Id*. Here, the first cause of action appears to assert a claim of false designation of origin. Compl. ¶ 39 ("The Defendants use of the Krevat trademarks constitute a false designation of origin, description or representation, which is likely to cause confusion . . . ."). A claim of false designation of origin under the Lanham Act may be brought against any person who "uses in commerce . . . any false designation of origin . . . which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods." *15 U.S.C. § 1125(a)(1)(A)*. "A plaintiff asserting a claim under this provision 'must establish that it has a valid

mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" *Johnson & Johnson v. Azam Int'l Trading, No. 07-cv-4302, 2013 U.S. Dist. LEXIS 112755, 2013 WL 4048295, at *9 (E.D.N.Y. Aug. 9, 2013)* (quoting *Microsoft Corp. v. AGA Solutions, Inc., 589 F. Supp. 2d 195, 202 (E.D.N.Y. 2008)* (internal quotation marks and citations omitted)).

The second cause of action is also entitled "LANHAM ACT VIOLATION-UNFAIR COMPETITION." Compl. at 7. This cause of action appears to assert a claim for trademark infringement. *Id.* ¶ 43 ("Through [*13] their acts alleged herein, the Defendants have infringed, and continue to infringe Krevat's trademarks in violation of *§[]43(a)* of the Lanham Act and *15 U.S.C. §[]1125(a)*."). To succeed on a claim for trademark infringement and unfair competition under the Lanham Act, a plaintiff must demonstrate that (1) its marks merit protection and (2) the defendant's use of the same or a sufficiently similar mark is likely to cause consumer confusion. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc., 696 F.3d 206, 216 (2d Cir. 2012)*. Generally, the same facts that support a claim of trademark infringement will also state a valid claim for false designation of origin. *Johnson & Johnson, 2013 U.S. Dist. LEXIS 112755, 2013 WL 4048295, at *9*.

With regard to the first requirement -- that the mark merits protection -- a certificate of registration with the United States Patent and Trademark Office gives rise to a statutory presumption that the mark is valid. *See 15 U.S.C. § 1057(a)*; *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999)*. Here, the Complaint alleges that Plaintiff has five registered trademarks, Compl. ¶ 11; *id.* at 10A, although only three are identified in the Complaint: BURGERS BAR, CHIPAYO MAYO, AND MUSTAENGO, *id.* ¶¶ 12-25. Because Burgers To Go has not answered or otherwise appeared in this action, there is no evidence to rebut this presumption. Accordingly, the Court finds that Plaintiff has sufficiently alleged [*14] that these three marks merit protection.

In determining whether there is a likelihood of confusion, courts in this Circuit analyze the eight factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961)*: (1) the strength of the trademark; (2) the similarity of the marks; (3) the proximity of the products; (4) the likelihood that the senior user will enter the same market as the junior user (i.e., bridge the gap); (5) actual confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) the quality of the defendant's product; and (8) consumer sophistication. *Id. at 495*.

The analysis is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus., Inc. v. Bacardi & Co, Ltd., 412 F.3d 373, 384 (2d Cir. 2005)*. The Court reviews the factors below.

*i. Strength of the Trademark*

"The strength of a trademark encompasses two different concepts, both of which relate significantly to likelihood of consumer confusion. The first is inherent strength, also called 'inherent distinctiveness.'" *Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 147 (2d Cir. 2003)*. This category of marks tends to uniquely identify a product's source, as opposed to simply describing what is for sale. *Id.* The second concept of a mark's strength is "'acquired distinctiveness,' *i.e.*, fame, or [*15] the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition." *Id.*

While the "BURGERS BAR" trademark may have low inherent strength, the Complaint adequately alleges the acquired distinctiveness of all three of the trademarks. Plaintiff alleges that "[b]ased on th[e] long use of the BURGERS BAR, CHIPAYO MAYO and MUSTAENGO marks, these names have become well-known in the local Jewish community as well as the broader Jewish communities throughout the United States, and have come to be associated with Kosher restaurants, and hamburgers and unique sauces in particular." Compl. ¶ 23. "As a result of Krevat's continuous and exclusive use of the Krevat trademarks with kosher hamburgers and unique sauces, the purchasing public has come to associate Krevat as the source and sponsor of BURGERS BAR, CHIPAYO MAYO and MUSTAENGO products sold under the Krevat trademarks." *Id.* ¶ 25. Based on these uncontested facts as well as Plaintiff's continual use of the brands since at least 2007, *id.* ¶ 12, this factor weighs in favor of the Plaintiff for all three trademarks.

*ii. Similarity of the Mark*

In assessing similarity, courts examine the overall impression created [*16] by the marks and whether such similarity is more likely than not to cause consumer confusion. *Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 133 (2d Cir. 2004)*. Plaintiff alleges that Defendant Burgers To Go is in the business of selling hamburgers and sauces under the Krevat trademarks, Compl. ¶ 28, and that Defendants' use of the

trademarks is identical to Plaintiff's use of the trademarks, *id.* ¶ 29. Consequently, Defendant's continuing use of the CHIPAYO MAYO and MUSTAENGO trademarks are not just similar, they are identical. Moreover, Burgers To Go's restaurant "Burgers," which operates out of the former space of Plaintiff's "Burger Bar," is similar to Plaintiff's mark "BURGERS BAR" in that they both share the word "Burgers." More importantly, given the identical products and services provided, the similarity of the marks is more likely than not to cause consumer confusion. Again, the Court is required for purposes of a motion for default to accept the factual allegations in the Complaint as true. *Joe Hand Promotions, Inc., 2007 U.S. Dist. LEXIS 99935, 2007 WL 2891016, at \*2*. Thus, the Court finds that this factor favors Plaintiff.

### iii. Proximity of the Products and Likelihood of Bridging the Gap

The proximity of the products and the likelihood of bridging the gap have "an obvious bearing on the likelihood of confusion." [\*17]  *Virgin Enters., 335 F.3d at 149-50*. "The closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source." *Id. at 150* (citing *Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480-81 (2d Cir. 1996)*).

Here, Plaintiff and Defendant are not only both engaged in the hamburger restaurant business, but they are also both engaged in the niche business of selling kosher hamburgers and sauces. Compl. ¶¶ 2, 10, 28. Additionally, both have owned and operated stores in the exact same location and Defendant did not make any changes to the interior with regard to "décor, layout, menu, food preparation and delivery systems." *Id.* ¶ 18. Thus, consumers are very likely to assume a common source. Moreover, "'[b]ecause the parties in this case are already competitively proximate, there is no gap to bridge and so this factor is irrelevant.'" *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., No. 13-CV-2548, 2014 U.S. Dist. LEXIS 45625, 2014 WL 1303434, at \*4 (S.D.N.Y. Apr. 1, 2014)* (quoting *U.S. Polo Ass' n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011)*, *aff'd*, *511 F. App'x 81 (2d Cir. 2013))*. Accordingly, this factor weighs strongly in favor of the Plaintiff for all three trademarks.

### iv. Evidence of Actual Confusion

"If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, [\*18] that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 228 (2d Cir. 1999)*, *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 123 S. Ct. 1115, 155 L. Ed. 2d 1 (2003)*. Thus, "evidence of actual consumer confusion is particularly relevant to a trademark infringement action." *Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 745 (2d Cir. 1998)*.

Plaintiff has not provided the Court with any evidence of actual consumer confusion. The absence of specific information regarding customer confusion therefore weighs in Defendant's favor.

### v. Evidence That the Imitative Mark was Adopted in Bad Faith

The bad faith factor looks at whether defendant "adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between [its] and the senior user's product" or services. *Lang v. Retirement Living Pub. Co., Inc., 949 F.2d 576, 583 (2d Cir. 1991)*. Courts have recognized that in the absence of evidence that a defendant adopted an imitative mark to deceive, "deliberate copying may indicate that the defendant acted in bad faith." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 118 (2d Cir. 2009)* (citing to *Paddington Corp., 996 F.2d at 587*). However, a court is not required to draw that inference if there is evidence to the contrary. *Id.*

In the instant case, Plaintiff alleges that Burgers To Go acted knowingly, willfully and maliciously, with intent to "reap the benefit of Krevat's goodwill." Compl. ¶ 47. The Complaint [\*19] also alleges that Burgers To Go used Plaintiff's marks in the exact same location as Plaintiff's restaurant previously occupied and operated. Taking the allegations as true, the Court finds that Plaintiff has adequately pled that Burgers To Go acted with the intent to capitalize on the Plaintiff's reputation and goodwill. This factor therefore favors Plaintiff.

### vi. Respective Quality of the Products

This factor "is primarily concerned with whether the

senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 961 (2d Cir. 1996)*. Here, there are no allegations that Burgers To Go's products are of inferior quality. Therefore, this factor lends no support to Plaintiffs claim.

### vii. Sophistication of Consumers in the Relevant Market

An analysis of consumer sophistication considers "the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Id. at 965*. Buyer sophistication is generally low "where inexpensive products are involved." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 219 (2d Cir. 2003)* (citing *Harold F. Ritchie, Inc. v. Chesebrough—Pond's, Inc., 281 F.2d 755, 762 n. 19 (2d Cir. 1960))*; *see also id.* (affirming district court's [*20] finding that purchasers of pasta at the supermarket were "ordinary consumers of inexpensive retail products").

Here, Plaintiff and Defendant are in the kosher hamburger business. Although specialty items like kosher hamburger products provided with special sauces may be sold at a higher price than non-kosher burger products, the Court nonetheless finds that buyer sophistication is somewhat low when considering the fact that the product is still relatively inexpensive. Therefore, this factor weighs in favor of the Plaintiff.

### viii. Aggregate Assessment

The Court finds that on balance, the *Polaroid* factors, as applied to the circumstances in this case, weigh in favor of a finding of a likelihood of confusion. Accordingly, Plaintiff has sufficiently alleged claims of false designation of origin and trademark infringement in violation of the Lanham Act.

### b. Common Law Unfair Competition Claim

Under New York law, unfair competition claims are governed generally by the same standards as the Lanham Act claims except that New York common law requires a showing of bad faith or intent. *See Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137,* *149 (2d Cir.1997)*; *Sub-Zero, 2014 U.S. Dist. LEXIS 45625, 2014 WL 1303434, at * 5*. Thus, a party asserting a claim for unfair competition predicated upon trademark infringement under New York [*21] common law must show that the defendant's use of the trademark is likely to cause confusion about the source of the allegedly infringing product and that the defendant acted in bad faith. *Sub-Zero, 2014 U.S. Dist. LEXIS 45625, 2014 WL 1303434, at *5*.

As set forth above, the Court has already found that Plaintiff's allegations have sufficiently established likelihood of consumer confusion and Burgers To Go's bad faith. Plaintiff has therefore established a claim for unfair competition under New York law. *See, e.g., id.* (finding that because plaintiff had established a Lanham Act trademark infringement claim and because defendant acted in bad faith, plaintiff had also established a common law claim for unfair competition under New York law).

### c. Common Law Trademark Infringement Claim

In New York, common law trademark infringement claims largely mirror the Lanham Act claims. *Lyons P'ship, L.P. v. D&L Amusement & Entm't, 702 F. Supp. 2d 104, 116 (E.D.N.Y. 2010)*; *see also Nike, Inc. v. Top Brand Co. Ltd., No. 00 Civ.8179, 2005 U.S. Dist. LEXIS 42374, 2005 WL 1654859, at *7 (S.D.N.Y. Jul. 13, 2005)* ("Plaintiffs' claim of common law trademark infringement requires them to meet the same elements as their Lanham Act claims, with a similar emphasis on the likelihood of confusion") (citation omitted). To prevail under either claim, a plaintiff must first show that it "has a valid mark that is entitled to protection, and [second that] the defendant's use of the mark [*22] is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Audi AG v. Shokan Coachworks, Inc., 592 F. Supp. 2d 246, 271 (N.D.N.Y. 2008)* (citing *Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993))*. Because the Court has already found that Plaintiff has adequately alleged a claim of trademark infringement under the Lanham Act, Plaintiff has also alleged a common law claim for trademark infringement under New York law. *See, e.g., Sub-Zero, 2014 U.S. Dist. LEXIS 45625, 2014 WL 1303434, at *5*; *Lyons P'ship, 702 F. Supp. 2d at 116*.

### d. Injunctive Relief

Plaintiff seeks a preliminary and a permanent injunction preventing Burgers To Go from engaging or participating in any infringing activity. Compl. at 10C. Under the Lanham Act, an owner of a distinctive mark may obtain a permanent injunction when another person uses the mark or a trade name in commerce that is likely to dilute the famous mark. *15 U.S.C. § 1125(c)(1)*; *Hilton v. International Perfume Palace, Inc., No. 12-CV-5074, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *12 (E.D.N.Y. Oct. 17, 2013)*.

In order for the Court to grant an injunction, a plaintiff must first demonstrate "'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]' s favor.'" *Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010)* (quoting *NXIVM Corp. v. Ross Inst., 364 F.3d 471, 476 (2d Cir. 2004)*). Second, the court may issue the injunction only if the plaintiff demonstrates that: (i) he suffered an irreparable injury; (ii) remedies available at law, [*23] such as monetary damages, are inadequate to compensate for that injury; (iii) considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (iv) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)*; *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *12*; *U.S. Polo Ass'n v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011)*.

Here, Plaintiff has demonstrated success on the merits by establishing his entitlement to a default judgment. *See Sexy Hair Concepts, LLC v. Sexy Hair Inc., No. 12-CV-3937, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013)*; *United Air Lines, 2013 U.S. Dist. LEXIS 47100, 2013 WL 1290930, at *9*. The Court therefore turns to an examination of the remaining four elements to determine whether Plaintiff is entitled to injunctive relief.

### i. Irreparable Injury and Inadequacy of Monetary Damages

"After eBay . . . courts must not simply presume irreparable harm. Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting, 607 F.3d 68, 82 (2d Cir. 2010)*. "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied [otherwise]." *Id*. "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Id*. In assessing irreparable injury, 'the court must . . . pay[ ] particular attention [*24] to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger, 607 F.3d at 80* (quoting *eBay, 547 U.S. at 391*). "In the intellectual property context, where confusion about the origin of goods . . . leads to damage to reputation or loss of a potential relationship with a client that 'would produce an indeterminate amount of business in years to come[,]' monetary damages are difficult to establish and are unlikely to present an adequate remedy at law." *Mamiya Am. Corp., No. 09-CV-5501, 2011 U.S. Dist. LEXIS 34991, 2011 WL 1322383, at *26 (E.D.N.Y. Mar. 11, 2011)* (quoting *Register.com v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004)*).

Given the circumstances in this case, monetary remedies are unlikely to present an adequate remedy. As the court noted in *Hilton*,

> [a]bsent a Court directive to cease the infringing activities, plaintiffs would be forced to remedy each new infringement through a separate, fullblown lawsuit for monetary damages. Against such a backdrop, defendant may well presume that plaintiffs cannot afford to effectively police the distribution of the infringing product. This would encourage continued infringement. Plaintiffs require a more expedient remedy for defending their mark.

*2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *12*. The Court finds that the same reasoning in *Hilton* applies in this case, and that monetary damages are therefore insufficient as a sole remedy here. [*25]

Moreover, Plaintiff will likely suffer irreparable injury absent an injunction. The Complaint alleges that Plaintiff has been developing the goodwill of its three marks since at least 1997, Compl. ¶¶ 12-13, and that its marks have become well-known in the local Jewish community as well as the broader Jewish communities throughout the United States, *id*. ¶ 23. The fact that the damage to Plaintiff's goodwill is "difficult to measure" weighs in favor of a showing of irreparable injury. *Salinger, 607 F.3d at 81* ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. In the context of

copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion.").

### ii. Balance of Hardships

"The balance of hardships clearly tips in plaintiff's favor . . . where it has established irreparable harm[,] . . . [distribution of] the infringing conduct is likely to continue absent injunctive relief . . . [and] plaintiff has already incurred substantial legal costs in protecting its trademark rights . . [*26] . ." *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *13* (alterations in original) (citing *AW Indus. v. Sleepingwell Mattress, Inc., No. 10-CV-04439, 2011 U.S. Dist. LEXIS 111889, 2011 WL 4404029, at *11 (E.D.N.Y. Aug. 31, 2011))*. Here, Plaintiffs have established irreparable harm. According to the Complaint, it appears likely that, without a permanent injunction, Burgers To Go will continue to sell the infringing products. Moreover, Burgers To Go's failure to respond to the Complaint or otherwise participate in this action, even after the entry of default, further demonstrates that it is unlikely to cease its infringing activity. *See Sexy Hair Concepts, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4*. Finally, although Plaintiff had been proceeding *pro se* and has therefore not incurred considerable legal costs, Plaintiff has devoted much time and effort in prosecuting this case.[2] Thus, the Court concludes that the balance of hardships weighs in Plaintiff's favor.

### iii. Public Interest Would be Served by an Injunction

"[T]he public has an interest in not being deceived--in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *13* (citing *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010))*. There has been no evidence submitted that the food and sauces sold at Burgers [*27] To Go is inferior to those sold by Plaintiff. However, given the likelihood of confusion established by Defendant's default, the public has an interest in the issuance of the injunction.

Based on the foregoing analysis, the Court concludes that Plaintiff has established his entitlement to an injunction.

### iv. Destruction of Infringing Merchandise

As part of his request for a permanent injunction, Plaintiff also requests that Burgers To Go deliver any remaining infringing products to Plaintiff for destruction. Compl. at 11D. Section 36 of the Lanham Act permits courts to order the delivery and destruction of infringing articles upon a violation of *15 U.S.C. § 1125(a)* or a willful violation of *§ 1125(c)*. *15 U.S.C. § 1118*; *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *14*. "The decision whether to order Defendant to 'deliver up and destroy' all [packaging and goods] bearing Plaintiff's trademark is committed to the Court's discretion." *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582* (alterations in original) (quoting *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc., 589 F. Supp. 2d 25, 33 (D.D.C. 2008))*. However, "[w]here a permanent injunction against any further infringement is ordered, courts are sometimes reluctant to take the additional step of ordering existing infringing merchandise destroyed. *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *14* (citing *Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 392 (S.D.N.Y. 2010)* (denying *§ 1118* destruction of infringing merchandise when a permanent injunction against future infringement was awarded) and [*28] *Breaking the Chain Found., 589 F. Supp. 2d at 33* ("[W]here an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted, may be unnecessary.")).

In the circumstances here, however, Burgers To Go "may possess a vast store of infringing goods." *Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *14*. Moreover, in light of Defendant's default, the Court is unable to obtain representations from Defendant that it will comply with the injunction. Accordingly, this Court respectfully recommends to Judge Seybert that Burgers To Go be ordered to deliver the infringing products to Plaintiff for destruction. *See Hilton, 2013 U.S. Dist. LEXIS 150278, 2013 WL 5676582, at *14* (recommending that defendants deliver the infringing products for destruction even where defendant represented that it contemplated winding up its business).

Accordingly, the Court respectfully recommends that Burgers To Go's officers agents, servants, employees,

---

[2] Subsequent to the filing of this motion, Plaintiff retained counsel. On July 25, 2014, Attorney Robert David Katz filed a Notice of Appearance on Plaintiff's behalf. DE 52.

and representatives be prohibited from engaging in any activities that infringe any of Plaintiff's rights, including, but not limited to, infringing on Plaintiff's marks and offering for sale, selling, distributing, or marketing merchandise in any way that tends to deceive, [*29] mislead, or confuse the public into believing that Burgers To Go's products in any way originate with, are sanctioned by, or are affiliated with Plaintiff's marks. The Court further recommends that Burgers To Go be directed to turn over to Plaintiff for destruction any infringing merchandise in its possession, custody or control.

## B. Damages

As noted above, while a party's default is deemed to constitute concession of all well-pleaded allegations of liability, it is not considered an admission of damages. *See* *Greyhound, 973 F.2d at 158*. Therefore, Plaintiff must still establish that he is entitled to the damages he seeks. *Cement and Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234*; *Greyhound, 973 F.2d at 158*. The burden is on the movant to establish its entitlement to recovery, but the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id. at 159*.

Where there are multiple defendants who may be held jointly and severally liable and "some but not all defendants have defaulted, 'the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party . . . .'" *Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992* (quoting *Friedman v. Lawrence, No. 90-CV-5584, 1991 U.S. Dist. LEXIS 13959, 1991 WL 206308, at *4 (S.D.N.Y. Oct. 2, 1991)*). This approach avoids the problem of dealing with inconsistent [*30] damages inquests. *Harvey v. Home Savers Consulting Corp., No. 07-CV-2645, 2008 U.S. Dist. LEXIS 20770, 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008)* (collecting cases); *see also* *Long Island Hous. Servs. v. Greenview Properties, Inc., No. 07 CV 0352, 2007 U.S. Dist. LEXIS 95976, 2008 WL 150222, at *2 (E.D.N.Y. Jan. 11, 2008)* ("When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved."); *Lawrence v. Vaman Trading Co., Inc., 1993 U.S. Dist. LEXIS 7161, 1993 WL 190266, at *2 (S.D.N.Y. May 28, 1993* (same).

Since trademark infringement and unfair competition are torts, the doctrine of joint tortfeasors is applicable. *Hard Rock Café Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC, 808 F. Supp. 2d 552, 566 (S.D.N.Y. 2011)* (citing *Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 385 (S.D.N.Y. 2010)*; McCarthy on Trademarks and Unfair Competition, § 25:23 at 25-67). Thus, "[e]mployees who direct, control, ratify, participate in, or are the moving force behind a Lanham Act violation can be held personally liable for those violations." *Merck Eprova AG v. Brookstone Pharms., LLC, 920 F. Supp. 2d 404, 426 (S.D.N.Y. 2013)*; *see also* *Sub-Zero, 2014 U.S. Dist. LEXIS 45625, 2014 WL 1303434, at *5*; *Hard Rock Café, 808 F. Supp. 2d at 560*.

Here, the Complaint alleges that the Defendants "acted in active concert or participation." Compl. at 10C. Thus, the Court finds it prudent to defer a ruling on damages until Plaintiff's claims against the individual Defendant Sammy Sultan have been adjudicated. For these reasons, I respectfully recommend to Judge Seybert that the calculation of damages against Defendant Burgers To Go be deferred until the case is resolved [*31] as to the non-defaulting Defendant Sammy Sultan. Once those claims are resolved, the Court may request additional evidence from the Plaintiff in support of his damages claims against both Sammy Sultan and Burgers To Go.

## VI. CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Seybert that (1) a default judgment is warranted and should be entered against Defendant Burgers To Go; (2) Burgers To Go's officers agents, servants, employees, and representatives be prohibited from engaging in any activities that infringe any of Plaintiff's rights, including, but not limited to, infringing on Plaintiff's marks and offering for sale, selling, distributing, or marketing merchandise in any way that tends to deceive, mislead, or confuse the public into believing that Burgers To Go's products in any way originate with, is sanctioned by, or is affiliated with Plaintiff's marks; (3) Burgers To Go be directed to turn over to Plaintiff for destruction any infringing merchandise in its possession, custody or control; (4) the calculation of damages against Defendant Burgers To Go be deferred until the case is resolved as to the non-defaulting Defendant Sammy Sultan; and (5)

that [*32] in view of his *pro se* status at the time the instant motion was filed, Plaintiff be given the opportunity, in light of the information set forth in this Report and Recommendation, to supplement his motion within 30 days of Judge Seybert's ruling on this Report and Recommendation, with the appropriate documentation to support his calculations regarding damages.

Pursuant to *28 U.S.C. § 636(b)(1)(C)* and *Rule 72 of the Federal Rules of Civil Procedure*, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also Fed. R. Civ. P. 6(a)* and *(e)*. Such objections shall be filed with the Clerk of the Court via ECF, **except in the case of a party proceeding *pro se*. Parties appearing *pro se* must file objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*; *Beverly v. Walker, 118 F.3d 900, 901 (2d Cir. 1997)*, cert. denied, 522 U.S. 883, 118 S. Ct. 211, 139 L. Ed. 2d 147 (1997)**; *Savoie v. Merchants Bank, 84 F.3d 52, 60 (2d Cir. 1996)*.

**This** [*33] **Court is sending copies of this Report and Recommendation by e-mail and first-class mail to Defendant *pro se*, Sammy Sultan, and Defendant Burgers To Go**.

**SO ORDERED**.

Dated: Central Islip, New York

August 5, 2014

/s/ A. Kathleen Tomlinson

A. KATHLEEN TOMLINSON

U.S. Magistrate Judge

---