Neutral
As of: February 14, 2023 2:56 PM Z

# *SEC v. Boock*

United States District Court for the Southern District of New York

May 10, 2011, Decided; May 10, 2011, Filed

09 Civ. 08261 (DLC) (DF)

**Reporter**
2011 U.S. Dist. LEXIS 158797 *

SECURITIES AND EXCHANGE COMMISSION, Plaintiff, -against- IRWIN BOOCK, STANTON B.J. DEFREITAS, NICOLETTE D. LOISEL, ROGER L. SHOSS and JASON C. WONG, Defendants, -and- BIRTE BOOCK and 1621566 ONTARIO, INC., Relief Defendants.

**Prior History:** *SEC v. Boock, 2010 U.S. Dist. LEXIS 59481 (S.D.N.Y., June 15, 2010)*

## Core Terms

default, disgorgement, deposition, transfers, civil penalty, recommend, hijacked, pro se, ill-gotten, violations, Exchange Act, Affirmation, proceeds, damages, shares, funds, Securities Act, records, prejudgment interest, default judgment, entry of default, trading account, Willfulness, allegations, meritorious defense, alleged scheme, appearing, factors, inquest

**Counsel:** [*1] For Securities And Exchange Commission, Plaintiff: Justin Chretien, LEAD ATTORNEY, PRO HAC VICE, Securities and Exchange Commission (DC), Washington, DC USA; Paul W. Kisslinger, LEAD ATTORNEY, U.S. Securities and Exchange Commission (DC), Washington, DC, USA.

For Irwin Boock, Defendant: Eduardo Javier Diaz, LEAD ATTORNEY, The Law offices if Eduardo Diaz, New York, NY USA.

Nicolette D. Loisel, Defendant, Pro se, Houston, TX USA.

For Jason C. Wong, Defendant: Russell Cornelius Weigel, III, LEAD ATTORNEY, Law Office of Russell C. Weigel, III, P.A., Miami, FL USA; Edward Robert Averbuch, Russell C. Weigel, III, P.A., Miami, FL USA.

For Birte Boock, Relief Defendant: Eduardo Javier Diaz, LEAD ATTORNEY, The Law offices if Eduardo Diaz, New York, NY USA.

**Judges:** DEBRA FREEMAN, United States Magistrate Judge. HONORABLE DENISE L. COTE, U.S.D.J.

**Opinion by:** DEBRA FREEMAN

## Opinion

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE DENISE L. COTE, U.S.D.J.**:

In this case, plaintiff Securities and Exchange Commission ("SEC") has asserted claims for securities violations against defendants Irwin Boock, Stanton B.J. DeFreitas ("DeFreitas"), Nicolette D. Loisel ("Loisel"), Roger L. Shoss ("Shoss"), and Jason C. Wong ("Wong") (collectively, "Defendants"), [*2] and relief defendants Birte Boock and 1621566 Ontario, Inc. ("1621566 Ontario") (together, "Relief Defendants"). After Irwin Boock, DeFreitas, Birte Boock, and 1621566 Ontario failed to answer or otherwise respond to the Complaint, the Court granted a default against these parties and referred the matter to me to conduct an inquest and to report and recommend concerning the amount of any disgorgement and/or civil penalties. (Dkt. 33.) Irwin Boock and Birte Boock, however, separately moved to set aside the entries of default against them.

For the reasons that follow, I recommend that Birte Boock's motion to set aside the default against her (Dkt. 64) be granted; but that Irwin Boock's motion to set aside the default against him (Dkt. 63) be denied.

As to the amounts that should be awarded on default judgments against defendants Defreitas and Irwin Boock, I recommend that the Court grant the SEC's request that Defreitas be ordered to disgorge his ill-gotten gains in the amount of $2,480,072.40, plus pre-judgment interest. As to Irwin Boock, however, I

recommend that the SEC's request for an order of disgorgement be denied, without prejudice to the SEC's supplementing the record to demonstrate [*3] adequate evidentiary support for the amount of disgorgement it seeks. As to both of these defaulting defendants, I further recommend that the SEC's request for civil penalties be denied without prejudice.

## BACKGROUND

### A. Factual Background

In this case, the SEC claims that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, Section 17(a) of the Securities Act of 1933 ("Securities Act"), and Section 5(a) and (c) of the Securities Act. (*See* Complaint, dated Sept. 29, 2009 (Dkt. 1) ("Compl.").) The SEC also claims that Irwin Boock violated an existing penny stock bar under Section 15(b)(6) of the Exchange Act, which was imposed against him in 2002 in an earlier administrative proceeding instituted by the SEC. (*See id.*)

The SEC alleges that, between 2003 and 2007, Defendants "hijacked" dozens of defunct, publicly-traded corporations, through a scheme conceived by Irwin Boock. (*Id.*, ¶¶ 4, 5.) According to the SEC, Defendants brought void or inactive corporations back into existence through a series of maneuvers, such as changing the corporate names and obtaining new Committee on Uniform Security Identification Procedures ("CUSIP") numbers and ticker symbols for the corporations. (*Id.*, [*4] ¶¶ 61-69.) The SEC alleges that, during the course of the scheme, Defendants made fraudulent statements to Nasdaq Corporate Data Operations (commonly known as "Nasdaq Reorganization") and the CUSIP Bureau, and improperly took advantage of an exception to securities rules regarding disclosures. (*See id.*) Defendants then allegedly offered and sold unrestricted and unregistered shares of these corporations into the market. (*See id.*)

### B. Procedural History

The SEC filed this action on September 29, 2009 (*see* Compl.), and appears to have served the Defendants and Relief Defendants shortly thereafter (*see* Dkts. 2-6). Defendants Loisel, Shoss, and Wong responded, and have defended the claims against them, although, on June 15, 2010, Judge Cote stayed the case as to Loisel and Shoss, pending the outcome of a criminal prosecution, in the Middle District of Florida, in which they are indicted defendants. (Dkt. 49.)

Irwin Boock, DeFreitas, and the Relief Defendants did not respond to the Complaint. In a letter to the Court dated December 2, 2009, Jay Nastor ("Nastor"), a Canadian attorney representing the Boocks in a civil and administrative proceeding in Canada brought by the Ontario Securities [*5] Commission ("OSC"), stated that the Boocks did not intend to participate in this case.[1] (Dkt. 14.) According to Nastor, the Boocks' decision to default was largely for financial reasons. (*See id.*) Nastor explained that the SEC had rejected his request that the SEC consent to a stay pending resolution of the OSC case. (*Id.*)

On March 1, 2010, Judge Cote issued an order to show cause why a default judgment should not be entered pursuant Rule 55 of the Federal Rules of Civil Procedure against Irwin Boock, DeFreitas, and the Relief Defendants. (Dkt. 29.) Having received no response by March 26, Judge Cote entered a default against those parties. (Default as to Defendants Irwin Boock, Stanton B. J. DeFreitas, and Relief Defendants Birte Boock and 1621566 Ontario, Inc., dated Mar. 26, 2010 (Dkt. 35).) That Order: (1) permanently enjoins Irwin Boock and DeFreitas from violating, directly or indirectly, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5; (2) finds that Irwin Boock violated the SEC's Administrative Order of December 6, 2002,[2] and Section 15(b)(6)(B)(i) of the Exchange Act; (3) permanently enjoins Irwin Boock from violating, directly or indirectly, the [*6] SEC's Administrative Order of December 6, 2002, and orders him to comply in the future with SEC orders; (4) permanently enjoins Irwin Boock and DeFreitas from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act; (5) permanently enjoins Irwin Boock and DeFreitas from directly or indirectly participating in an offering of penny stock, as defined by Rule 3a51-1 under the Exchange

---

[1] It does not appear, however, that Nastor was admitted to appear before this Court.

[2] *In Re the Matter of Birte Boock and Irwin Boock*, SEC Release No. 46952, Administrative Proceeding File No. 3-10960, "Corrected Order Instituting Administrative Proceedings, Making Findings, and Imposing Remedial Sanctions Pursuant to Section 15(b) of the Securities [*7] Exchange Act of 1934," dated Dec. 6, 2002.

Act; (6) permanently enjoys Irwin Boock from acting as an officer or director of any issuer pursuant to *Section 21(d)(2)* of the Exhange Act; and (7) finds that Irwin Boock and DeFreitas shall pay disgorgement of ill-gotten gains, prejudgment interest thereon calculated from August 16, 2006, and civil money penalties pursuant to *Section 20(d)* of the Securities Act and *Section 21(d)(3)* of the Exchange Act, and that the Relief Defendants shall pay disgorgement of any ill-gotten gains. (*Id.*) Judge Cote then referred the matter to me for an inquest to determine the amount of disgorgement and civil penalties. (*Id.* at 4.)

On April 21, 2010, I issued a Scheduling Order requiring the SEC to serve and file Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") no later than May 21, 2010. (*See* Dkt. 40.) In that Order, I cautioned Irwin Boock, DeFreitas, and the Relief Defendants that if, by June 21, 2010, they did not respond to the SEC's submissions or contact my chambers in writing to request an in-court hearing, it would be my intention to issue a report and recommendation on the basis of the SEC's written submissions alone. (*See id.*) Following a one-month extension (Dkt. 44), the SEC submitted Proposed Findings seeking disgorgement and civil penalties against Irwin Boock, DeFreitas and Birte Boock. (*See* Proposed Findings, dated June 21, 2010 (Dkt. 51).) In particular, as to Irwin Boock and DeFreitas, the SEC seeks (1) disgorgement of $2,188,712.30 and $2,480,072.40, respectively, in ill-gotten gains, plus prejudgment interest, and (2) civil penalties of "$100,000 per violation." (*Id.* at 19.) With respect to relief defendant Birte Boock, the SEC seeks disgorgement of $441,200.00 in illicit proceeds that were allegedly transferred by Shoss to an account [*8] for 1621566 Ontario, of which Birte Boock is allegedly the president, secretary, and director.[3] (*See id.* at 19; Compl., ¶ 14-15.)

On July 21, 2010, the Court received an affirmation from Irwin Boock, purportedly submitted on behalf of himself and Birte Boock, responding to the Proposed Findings. The SEC submitted an opposition, arguing that the affirmation had not been filed properly, and, in any event, should be rejected on the merits. On September 30, 2010, the Court directed Irwin Boock and Birte Boock to clarify whether they sought to set aside the default, or only to object to the Proposed Findings, and instructed the Boocks to make their submissions separately. (Order, Sept. 23, 2010 (Dkt. 57).) The Court also explained:

> If defendants wish to move to set aside the default against them, their further submissions should include specific factual showings to support their position that they have meritorious defenses to this action. Any such showing should be made through evidence in admissible form, meaning that any statements by defendants should be presented in either sworn affidavits or declarations expressly made under penalty [*9] of perjury. Copies of any documentary evidence that defendants wish to submit to support their position should be attached as exhibits to such affidavits or declarations. Defendants should also present any other facts that may be pertinent to the question of whether the defaults against them should be set aside, including, for example, facts regarding the circumstances of their initial decisions not to defend this action.

(*Id.*) Irwin Boock and Birte Boock then separately moved to set aside the defaults entered against them (Dkts. 63, 64), and the SEC opposed those motions (Dkts. 65, 66).

On January 10, 2011, the SEC also moved to supplement its Proposed Findings as to Irwin Boock, based on testimony by DeFreitas at his deposition, which was taken on December 16, 2010.[4] (Dkt. 75.)

On January 25, 2011, the SEC then moved to "dismiss" Irwin Boock's motion to set aside the default, arguing that, at his deposition on January 13, 2011, Irwin Boock had admitted to all of the allegations in the Complaint.[5] (Dkt. 78.) On February 1, 2011, Irwin Boock filed an opposition to that motion, arguing, [*10] *inter alia*, that his deposition testimony was coerced. (Dkt. 79.) On

---

[3] The SEC does not appear to seek disgorgement from 1621566 Ontario.

[4] By separate Order of this date, this Court has granted the SEC's motion to supplement its Proposed Findings.

[5] Although styled as a "motion to dismiss" Irwin Boock's motion to set aside the entry of default against him, the Court assumes that the SEC's submission of January 25, 2011, was intended as a sur-reply in further opposition to Irwin Boock's motion to set aside the default. Accordingly, this Court will treat the SEC's so-called "motion" as a sur-reply submission and the parties' subsequent briefing as additional sur-reply submissions on Irwin Boock's earlier motion. So that the Court's Docket is also clear in this regard, this Court is also issuing an Order (*see* n.4, *supra*), directing that the Clerk of the Court retitle these submissions (Dkts. 78, 79, 80 and 94) on the Docket.

February 8, 2011, the SEC filed further papers styled as a "reply" (Dkt. 80), and, on February 14, 2011, Irwin Boock filed an "Affirmation in Opposition to Motion" (Dkt. 94).

To date, DeFreitas has not filed a response to any of the SEC's submissions, nor has he contacted my chambers to request a hearing.

## DISCUSSION

### I. MOTIONS BY DEFENDANTS BIRTE AND IRWIN BOOCK TO SET ASIDE DEFAULTS

Before the Court can determine the appropriate amount of any damages [*11] award, the Court must first turn to the motions of Birte and Irwin Boock to set aside the default judgments entered against them.

#### A. Applicable Legal Standards

Where, as here, a case has been referred for an inquest as to damages following a default, the standard set forth in Rule 55(c) of the Federal Rules of Civil Procedure ("Setting Aside a Default or Default Judgment"), rather than the more rigorous standard set forth in Rule 60(b) ("Grounds for Relief from a Final Judgment, Order or Proceeding") should be applied on a motion to set aside the default. See Roberts v. Keith, No. 04 Civ. 10079 (CSH), 2007 U.S. Dist. LEXIS 68811, 2007 WL 2712853, at *2 (S.D.N.Y. Sept. 18, 2007). Under Rule 55(c), a party may move to set aside an entry of default for "good cause." See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). Although the Rule does not define the term "good cause," the Second Circuit has identified three factors that must be assessed: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Cody v. Mello, 59 F.3d 13 (2d Cir. 1995); Enron, 10 F.3d at 96. Other relevant factors may also be considered, such as whether substantial rights are implicated or substantial sums of money are sought. Enron, 10 F.3d at 96. "The disposition of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district [*12] court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Id. at 95-96.

It is well established that defaults are disfavored, and that the factors relevant to a motion to set aside a default should be evaluated in light of the strong preference for resolving disputes on the merits. See Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Enron, 10 F.3d at 96. Moreover, the district court should "grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*." Id.

#### B. Defendants' Motions

Based on the parties' submissions, the default entered against relief defendant Birte Boock should be set aside, but the default entered against defendant Irwin Boock should remain. The Court addresses each of these defendants in turn.

#### 1. Birte Boock

In the case of Birte Boock, the relevant factors either weigh in favor of setting aside the default or are neutral, as follows:

#### a. Willfulness

"Willfulness," in the context of a default, refers to "conduct [*13] that is more than merely negligent or careless." SEC v. McNulty, 137 F.3d 732, 738 (2d Cir.1998); United States v. Manhattan Central Capital Corp., No. 94 Civ. 5573 (WK), 2001 U.S. Dist. LEXIS 11562, 2001 WL 902573, at *4 (S.D.N.Y. Aug. 09, 2001) (plaintiff must demonstrate "deliberately evasive conduct" that amounts to "more than mere negligence"). A plaintiff need not, however, show bad faith on the part of its adversary. Am. Stevedoring, Inc. v. Banana Distributors, Inc., No. 98 Civ. 5782 (BSJ), 1999 U.S. Dist. LEXIS 14391, 1999 WL 731425, at *2 (S.D.N.Y. Sep. 20, 1999)). Thus, as to Birte Boock, the Court should consider whether her failure to respond to the SEC's Complaint in a timely manner was innocent or merely negligent, or if it represented an attempt to engage in "obstructionist tactics." In re Men's Sportswear, Inc., 834 F.2d 1134, 1139 (2d Cir. 1987).

Birte Boock argues that, as she was not aware that she

could appear in this case *pro se*, she mistakenly believed that she lacked the financial resources to defend the claims against her. (Affirmation of Birte Boock, dated Oct. 15, 2010 (Dkt. 64) ("10/15/10 Birte Boock Aff."), at 1.) In response, the SEC contends that her decision to default was merely a delay tactic, submitting evidence suggesting that the Boocks would have had the financial resources to afford an attorney to defend this case. (Plaintiff's Opposition to Relief Defendant Birte Boock's Unfiled Motion to Set Aside the Entry of Default ("SEC's Opp. to Birte Boock's Mot."), dated Nov. 8, 2010 (Dkt. 66), at 9-10.) The SEC also points out that Birte Boock's decision [*14] to default was deliberate, in that it was apparently made with the advice of Canadian counsel. (*Id.* at 9.)

The Court is somewhat skeptical of Birte Boock's explanation for her initial default. She does not explain when or how she supposedly became aware that she could proceed in this case *pro se*. Further, as explained above, Nastor, the Boock's Canadian attorney, stated that the Boocks decided to default only after the SEC refused to agree to a stay in this case pending resolution of the OSC litigation. Thus, it appears that the decision to default, rather than to seek a stay from the Court, was strategic.[6]

Nevertheless, in deciding whether to set aside a default, doubts should be resolved in favor of the defaulting party and, when that defaulting party is appearing *pro se*, the courts should "make some effort to protect [the] party so appearing from waiving a right to be heard because of his or her lack of legal knowledge." *Enron, 10 F.3d at 96*. It is at least plausible that Birte Boock's decision to default was based on her mistaken belief that she could not defend herself [*15] *pro se*, leading to an incorrect assessment as to the cost of defending the action. In this light, it is difficult for the Court to conclude that Birte Boock should be barred from defending this action based on "willfulness"; rather, this factor at least slightly favors setting aside the default. *See, e.g., Roberts, 2007 U.S. Dist. LEXIS 68811, 2007 WL 2712853, at *4* (finding that *pro se* defendant's default, resulting from his mistaken belief that any success by his co-defendant would extend to him as well, was not willful).

**b. Prejudice**

Potential "prejudice" to a plaintiff in setting aside a default would mean the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion — circumstances that would make it more difficult for the plaintiff to prosecute its case. *See Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)*. Delay "alone is not a sufficient basis for establishing prejudice." *Id.*

Here, the SEC argues that, if the default against Birte Boock were set aside, it would need to re-depose witnesses in Uruguay, Toronto, California, and New York, resulting in "great expense and delay." (SEC's Opp. to Birte Boock's Mot., at 10-11.) The SEC claims that at least two of these witnesses may no longer be available — Mark Moline, who resides in Uruguay at an [*16] undisclosed address, and Marat Shteyn, who allegedly was "infuriated" by counsel for Wong at his deposition. (*Id.*) Additionally, according to the SEC, many other witnesses appeared for deposition reluctantly, expressed fear of retribution for their testimony, and may be unwilling to sit again for deposition. (*Id.*)

The prejudice that might arise if the SEC is unable to reopen certain depositions is, however, mitigated by the fact that, in the depositions already taken, the SEC likely explored issues relevant to its claim against Birte Boock as a relief defendant, as that claim is based entirely on the alleged transfers of funds to her company from co-defendant Shoss, who has appeared in this case.[7] As it seems likely that the SEC would have already explored the facts regarding Shoss's involvement in the alleged scheme, this factor is fairly neutral.

**c. Meritorious Defense**

Finally, the Court must consider whether the defaulting defendant may have a meritorious [*17] defense:

> [A] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would

---

[6] In fact, Loisel and Shoss successfully obtained a stay in this case pending resolution of a criminal case, over an objection by the SEC. (Dkt. 49.)

[7] "Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *SEC v. Cavanagh, 155 F.3d 129, 136 (2d Cir. 1998)*.

constitute a complete defense.

Enron, 10 F.3d at 98 (citations omitted); *accord* State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 167 (2d Cir.2004) (citing *Enron*).

The SEC seeks to recover over $440,000 that was allegedly transferred from Shoss to Birte Boock. Although Birte Booke does not submit any evidence rebutting the SEC's allegations that she received those funds, a relief defendant can avoid disgorgement where he or she gave consideration for any ill-gotten gains she received, *see* Cavanagh, 155 F.3d at 137. Both of the Boocks have testified that the funds in question were understood by them to be an equity investment in Birte Boock's art business. (10/15/10 Birte Boock Aff.; Declaration of Justin Chretien, dated June 21, 2010 (Dkt. 51-2) ("Chretien Decl."), Ex. 15, at 314-317, 421-422.) Birte Boock also submits a copy of a document, entitled "Resolution of the Sole Officer & Director of 1621566 Ontario Inc," dated October 18, 2004, which is signed by Birte Boock in her capacity as director, [*18] and which purports to issue 28,000 Class D "Special" Common Shares at a stated value of one dollar each to Roger Shoss. (10/15/10 Birte Boock Aff., Ex. 3.) If proven at trial, Birte Boock's assertion that the transfers from Shoss were equity investments — an assertion supported by the Boocks' testimony and corroborated, at least in part, by the purported stock issuance — would be a defense to disgorgement. Accordingly, this factor weighs in favor of setting aside the default.

Taken as a whole, and in light of Birte Boock's *pro se* status, the three most relevant factors are thus either neutral or weigh in favor of setting aside the default. The Court also notes that substantial sums of money are sought by the SEC, which weighs in favor of the same result. Enron, 10 F.3d at 96. For these reasons, I recommend that the default against Birte Boock be set aside.

**2. Irwin Boock**

**a. Willfulness**

Like his wife, Irwin Boock contends that he failed to appear based on his mistaken belief that he could not appear in the case *pro se*. As explained above, this explanation is not the type willful behavior that, in itself, should preclude the Court from setting aside a default judgment against a *pro se* defendant.

**b. Prejudice** [*19]

With respect to prejudice, the SEC raises similar concerns about its ability to reopen depositions of certain witnesses. This is perhaps more of a concern with respect to Irwin Boock, who, as explained above, is alleged to have masterminded this complex scheme. Any such prejudice, however, is again mitigated by the fact that, in pursuing discovery against Irwin Boock's alleged co-conspirators, it seems likely that the SEC would have explored, at least to some extent, facts that would be relevant to its claims against Irwin Boock. Indeed, the SEC concedes that at least one of the witnesses provided "critical information" regarding Irwin Boock's involvement in the scheme. (Plaintiff's Opposition to Defendant Irwin Boock's Unfiled Motion to Set Aside the Entry of Default, dated Nov. 8, 2010 (Dkt. 65) ("SEC's Opp. to Irwin Boock's Mot."), at 11-12.) Thus, the factor of "prejudice" weighs slightly against setting aside the default.

**c. Meritorious Defense**

More importantly, although the Court directed Irwin Boock to submit "specific factual showings to support [his] position that [he has] a meritorious defense to this action," (Dkt. 57), he has failed to do so. As set forth above, the SEC alleges [*20] that, through a complex scheme involving hijacking publicly-traded defunct companies and then trading shares of those companies, Irwin Boock violated various provisions of the Securities Act and the Exchange Act, and an existing penny stock bar.[8] Irwin Boock admits that he bought and sold shares

---

[8] "To state a claim under [Section] 10(b) and the corresponding Rule 10b-5[b], a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000). The same elements required to establish a section 10(b) and a Rule 10b-5 violation suffice to establish a violation under sections 17(a)(1)-(3), with the exception that scienter is not required for the SEC to enjoin violations under subsections (a)(2) or (a)(3). SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999).

Section 5 of the Securities Act requires that all non-exempt securities offered for sale to the public be registered with the Commission prior to the offer or sale of such securities. See

of at least some of the allegedly hijacked companies. (Affirmation of Irwin Boock, dated Oct. 15, 2010 (Dkt. 63), at 2; Affirmation of Irwin Boock, dated Nov. 8, 2010 (Dkt. 69) ("11/8/10 Irwin Boock Aff."), at 1.) While he suggests that there was nothing wrong in his having done so, he does not directly deny (let alone submit any evidence) that the alleged hijackings occurred or that he was involved in them. For example, he asks, "Where under any rules was it wrong at the time for me to buy and sell shares in any of the companies mentioned in the complaint?" (11/8/10 Irwin Boock Aff., at 1.) In a similar vein, he states — without providing any actual, substantive denial of the allegations against him: "Perhaps one of the more serious misrepresentations to the court is the continued use of the phrase 'hijacked company. This has yet to be proven in the courts. But the Plaintiff continues to use [*21] that phrase as if it assumes that whatever it puts in writing before the courts will be accepted as gospel, regardless of whether it is true or not." (*Id.*) Even if read liberally as a denial of any knowledge of the securities laws or intent to commit securities fraud, the SEC has stated claims that do not require scienter.

This Court is mindful of the Second Circuit's directive that *pro se* submissions should be read liberally, as well as the strong preference for resolving cases on the merits. Yet where a defaulting party has failed to make even a bare denial of the alleged misconduct, the default should not be set aside. See McNulty, 137 F.3d at 740-41 (affirming denial of motion to vacate default judgment where defendant's asserted lack of scienter did not establish a legal defense to the plaintiff's claims); Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320-21 (2d Cir. 1986) (affirming denial of motion to set aside entry of default where defendant offered general denials without any underlying facts in support). For this reason, I recommend that Irwin Boock's motion to set aside the default be denied.

## II. DISGORGEMENT AND PENALTY AWARDS AGAINST DEFENDANTS DEFREITAS AND IRWIN BOOCK

The Court now turns to the amounts that should be awarded, upon default, against [*23] defendants DeFreitas and Irwin Boock. As to each of these defendants, the SEC seeks disgorgement of ill-gotten gains, with prejudgment interest, and civil penalties.

### A. Applicable Legal Standards

In conducting an inquest, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. See Trehan v. Von Tarkanyi, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages. See Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps to establish damages with reasonable certainty").

In this case, the SEC does not seek money damages, but rather disgorgement, which is an equitable remedy for violations of the federal securities laws, aimed at "forcing a defendant to give up the amount by which he was unjustly enriched." SEC v. Tome, 833 F.2d 1086, 1096 (2d Cir. 1987). The Court has broad discretion in calculating the amount to be disgorged. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996). Although [*24] the disgorged amount must be "causally connected to the violation," id. at 1475, the SEC "is not required to trace every dollar of proceeds" or "to identify misappropriated monies which have been commingled." SEC v. Anticevic, No. 05 Civ. 6991(KMW), 2010 U.S. Dist. LEXIS 83538, 2010 WL 3239421, at *5 (S.D.N.Y. Aug. 16, 2010) (internal quotation omitted). After the SEC makes a showing of the disgorgement figure, the burden shifts to the defendant to demonstrate that the disgorgement figure

---

15 U.S.C. § 77e; *see also* SEC v. Cavanagh, 445 F.3d 105, 111 (2d Cir.2006). To state a claim under Section 5, the SEC must show "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate [*22] transportation or communication and the mails in connection with the offer or sale." Id. at 111 n. 13 (internal quotation marks omitted) (citation omitted). Scienter is not an element of a section 5 violation. See SEC v. Universal Exp., Inc., 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007); SEC v. Softpoint, Inc., 958 F. Supp. 846, 859-60 (S.D.N.Y. 1997), aff'd, *159 F.3d 1348 (2d Cir.1998)*. A defendant may rebut the SEC's *prima facie* case for a Section 5 violation by proving the applicability of an exemption from registration. See Cavanagh, 445 F.3d at 111 n. 13; Universal Exp., 475 F. Supp. 2d at 422.

is not a reasonable approximation. *Id*. A court can award prejudgment interest on the amount awarded as disgorgement, in order to deprive the defendant of the time-value of the money. *SEC v. Warde, 151 F.3d 42, 50 (2d Cir.1998)*. In SEC injunctive actions, prejudgment interest should be calculated by applying the Internal Revenue Service tax underpayment rate ("IRS rate"), as set forth in *26 U.S.C. § 6621(a)(2)*. *See First Jersey Sec., 101 F.3d at 1476-77*.

Although the Court may hold a hearing to assess the amount of damages (or disgorgement) that should be awarded on a default, *see Fed. R. Civ. P. 55(b)(2)* (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, *[Rule] 55(b)(2)* leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)*; *accord Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)* (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991)* (*Fed. R. Civ. P. 55(b)(2)*) "allows but does not require [*25] . . . a hearing"). Here, a hearing is unnecessary with respect to disgorgement from DeFreitas, as the documents before the Court provide a "sufficient basis from which to evaluate the fairness" of the disgorgement sought by the SEC, *Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989)*; *see also Marc Rich & Co., 951 F.2d at 508*, and as DeFreitas has submitted nothing in response, nor requested a hearing. With respect to disgorgement from Irwin Boock and civil penalties against Irwin Boock and DeFreitas, a hearing is also not warranted, at least at this time, given the facial insufficiency of the SEC's submissions on these points, as discussed below. *See SEC. v. One or More Unknown Traders in the Common Stock of Certain Issuers, No. 08 Civ. 1402 (KAM), 2009 U.S. Dist. LEXIS 92128, 2009 WL 3233110, at *6 (E.D.N.Y. Oct. 2, 2009)* (denying the SEC's motion for disgorgement without holding a hearing, but without prejudice "to [the SEC] supplementing the record before the court with evidence that [the SEC's] disgorgement calculation is correct").

**B. Appropriate Disgorgement Awards**

**1. DeFreitas**

The SEC seeks disgorgement from DeFreitas of $2,480,072.40 in ill-gotten funds. In addition to the Complaint, the SEC relies on deposition testimony, affidavits from non-parties, and bank records to show that DeFreitas, during the relevant time period, was a foreign affiliate broker with Franklin Ross, Inc., a now-defunct broker dealer. (*See* Gallacher Aff., [*26] at 31-34; Chretien Decl., Ex. 11, 226-37, 340-41, 343-44.) In that capacity, DeFreitas opened numerous off-shore trading accounts on behalf of off-shore entities that he controlled. (*See* Chretien Decl., Ex. 12; Gallacher Aff., at 31-34.) Records from those accounts suggest complete liquidations of shares of allegedly hijacked companies, and transfers that, according to the SEC's tabulation, totaled $2,360,072.40. (*See* Gallacher Aff., at 31-34; Chretien Decl., Ex. 13; Proposed Findings, ¶ 25.)

Further, according to Chraig Gallacher ("Gallacher"), a Senior Investigator for the Enforcement Branch of the OSC, at least $120,000 in proceeds from liquidations of hijacked companies in a Scottrade Account were transferred to a corporation controlled by DeFreitas. (Affirmation of Craig Gallacher, dated May 14, 2008 (Dkt. 52-15) ("Gallacher Aff."), at 26-28.) Additionally, in a sworn letter, J.F. Amyot ("Amyot"), a resident of Montreal, states that he purchased a number of shell companies, which had allegedly been hijacked and, shortly thereafter, were suspended from trading. (Letter from J.F. Amyot to Justin Chretien, Esq., dated June 18, 2010 (Dkt. 52-16), Ex. 16.) Attached to the letter are [*27] records indicating that Amyot paid at least $193,320 for the shell companies by wire transfer to DeFreitas's off-shore trust company in St. Vincent. (*Id.*)

Having reviewed the SEC's submitted records, this Court finds that, taken together, they are sufficient to support the disgorgement award sought by the SEC, which would deprive DeFreitas of his ill-gotten gains. Accordingly, I recommend that the SEC be awarded disgorgement from DeFreitas of $2,480,072.40, plus prejudgment interest from August 16, 2006 based on the IRS rate.

**2. Irwin Boock**

The SEC also claims that Irwin Boock made millions of dollars through the hijacking scheme described above. The SEC seeks disgorgement of $2,188,712.30, which is the amount the SEC claims was deposited into Irwin Boock's Toronto, Ontario, checking account with President's Choice Financial (the "PCF Account") between 2003 and 2007. (Proposed Findings, ¶ 8.) Irwin Boock testified that, during the relevant time period, he could not recall any sources of income and that the PCF

Account was the only checking account that he used. (Chretien Decl., Ex. 1, at 13, 24, 435-36, 441-42). The SEC breaks down the deposits into the PCF Account as follows: (1) $286,500, [*28] which it claims were transfers from co-defendant Wong; (2) $933,893.67, which it claims originated in an unspecified E*Trade account; and (3) the remainder, some unspecified portion of which allegedly came from Birte Boock. (Proposed Findings, ¶¶ 9-12.) The SEC has not attempted to identify the source of the PCF Account deposits that originated anywhere other than Wong, the E*Trade account, or Birte Boock.[9]

First, with respect to the deposits into the PCF Account that purportedly originated with Wong (or, more precisely, companies allegedly owned by Wong and used in the alleged scheme), the SEC has submitted copies of the deposited checks, bearing the names "JWV Consulting" and "1606884 Ontario, Inc." (*See* Chretien Decl., Ex. 3.) These checks do appear to total $286,500, as claimed. Further, in the memo section of one check (for $2,400), the trading symbol for an allegedly hijacked company appears. (*Id.*) Aside from this single notation, [*29] however, the SEC has submitted no evidence, either in documentary or testimonial form, that links the deposited checks with the alleged scheme. Indeed, the SEC has not submitted any evidence that the checks were drawn on the accounts of companies that were, in fact, owned by Wong, much less that these companies were used for unlawful purposes. Although the SEC need not trace every single dollar, the SEC must submit sufficient evidence to enable the Court reasonably to approximate the amount of funds that are causally connected to the securities violations alleged in this case. *See First Jersey Sec., 101 F.3d at 1474-75*. Under the circumstances, the SEC has not, at this juncture, adequately demonstrated that Irwin Boock should be required to disgorge the requested $286,500.

Second, while the SEC claims that over $900,000 of the deposits into the PCF Account came from an E*Trade account (*see* Proposed Findings, ¶¶ 12-13; 11/8/10 Irwin Boock Aff., at 2), the SEC's support for seeking disgorgement of all of these funds is also lacking. In this regard, the SEC cites generally to one exhibit, which contains voluminous records of deposits and withdrawals from the PCF Account between 2003 and 2007. The Court has reviewed these records, [*30] but, despite the number of records presented, the Court has not been able to identify any deposits that are identified as having originated in any E*Trade account, let alone the particular E*Trade account through which Irwin Boock traded shares of the allegedly hijacked companies.

Finally, as to transfers from Birte Boock, while there may be a basis for believing that such funds are subject to disgorgement, the SEC has made absolutely no effort to tabulate those transfers, and it should not be left to the Court to do so on the SEC's behalf.

The SEC also urges the Court to conclude that *all* of the transfers into the PCF Account represent Irwin Boock's illicit proceeds from the alleged scheme, based on the general evidence that Irwin Boock derived substantial profits from that scheme and on his own testimony that he had no sources of income during the relevant time frame. Irwin Boock does concede that he traded shares of certain allegedly hijacked companies in an E*Trade Account and a Scottrade Account. Further, according to Gallacher, the proceeds from liquidations in the Scottrade Account for the period of February 26 through March 19, 2007 totaled $280,500. (Gallacher Aff., at 26-28.) [*31] The SEC, however, admits that at least $120,000 of these proceeds were transferred to a corporation controlled by DeFreitas, and has not provided any documentation that the remainder of the proceeds were transferred to Irwin Boock.[10] (*See* Proposed Findings, ¶ 17; 11/8/10 Irwin Boock Aff., at 2.) Additionally, while the SEC has submitted portions of the transcript of DeFreitas's deposition, in which DeFreitas corroborated many of the SEC's substantive allegations (and in which he testified that he gave Irwin Boock cash on occasion), DeFreitas also conceded that his testimony that Irwin Boock made "millions" from the types of securities violations alleged in the Complaint was based on the number in the SEC's Complaint, not his personal knowledge. (*See* Dkt. 75, Ex. 2, at 126, 128-29, 290.)

Thus, while the record as a whole suggests that Irwin Boock obtained profits from the scheme described in the Complaint, the record is not sufficient for the Court to approximate his ill-gotten gains with reasonable

---

[9] Irwin Boock disputes the SEC's characterization of various wire transfers out of the PCF Account. As the SEC seeks disgorgement of funds that were transferred *into* the PCF Account — not out of the PCF Account — the Court need not address this dispute.

[10] The SEC concedes that the valuation of the trades in the Scottrade Account does not provide an independent basis for disgorgement.

certainty. Cf. *SEC v. Kelly, 765 F. Supp. 2d 301, 2011 WL 135845, at \*22-23 (S.D.N.Y. 2011)* (granting summary judgment dismissing the [*32] SEC's disgorgement claim where the Court had "no way to determine the portion of [a defendant's] compensation that is causally connected to the alleged wrongdoing and therefore [could not] reasonably approximate the ill-gotten gains the SEC seeks to disgorge"). In attempting to demonstrate the appropriate amount of disgorgement, the SEC has not even attempted to value the actual profits from the alleged scheme. Rather, the SEC has elected to focus only on transfers into Irwin Boock's checking account. Evidence that Irwin Boock traded shares of allegedly hijacked companies in other accounts and that DeFreitas gave Irwin Boock cash on occasion does not provide a basis for the Court to conclude that the $2,188,712.30 in transfers into the PCF Account were causally connected to the alleged wrongdoing.

Finally, the SEC argues that, as there is evidence that at least *some* of the transfers into the account were illicit proceeds from the alleged scheme, "the burden of production shifts to defendant to establish the extent to which the account contains unclean funds." (SEC's Opp. to Irwin Boock's Mot., at 14 (quoting *U.S. v. Payment Processing Center, 439 F. Supp. 2d 435, 441 (E.D. Pa. 2006))*.) As the court in *Payment Processing Center* explained, however, the burden-shifting [*33] rule cited by the SEC applies in the context of defendants seeking to overcome an asset restraint. *439 F. Supp. 2d at 441*. The SEC has not cited any authority for its theory that, where there is evidence that illicit proceeds were transferred into an account, the burden shifts to the defendant to demonstrate that other transfers into that account, which the records show come from different sources, are not also illicit proceeds.

Based on the foregoing, I recommend that the SEC be denied an award of disgorgement from Irwin Boock at this time, but that it be permitted to renew its application for such an award, based on a showing that the funds at issue were actually derived from the scheme alleged in the Complaint.

## C. Civil Penalties

*Section 20(d)* of the Securities Act and *Section 21(d)(3)* of the Exchange Act permit a court to impose, upon a proper showing, a civil penalty that falls under one of three "tiers," the third tier being for the most serious violations. The assessed penalty is determined by the Court "in light of the facts and circumstances" of each case. *SEC v. Bocchino, 2002 U.S. Dist. LEXIS 22047, 2002 WL 31528472, at \*4 (S.D.N.Y. Nov. 8, 2002)*. To determine whether to impose a civil penalty and the amount of any penalty under *Section 78u(d)(3)*, the Court looks to a number of factors, including: "(1) the egregiousness of the defendant's [*34] conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. Aragon Capital Mgmt., LLC, 672 F. Supp. 2d 421, 447 (S.D.N.Y.2009)* (quoting *SEC v. Haligiannis, 470 F.Supp.2d 373, 386 (S.D.N.Y.2007)* (citation omitted)).

In this case, the SEC requests the imposition of third-tier penalties on both Irwin Boock and DeFreitas, but fails to specify either the amount sought per violation or how many violations were committed. (*See* Proposed Findings, at 21 (noting that third-tier penalties allow a maximum of $100,000 per violation, but failing to propose a specific amount of civil penalties for either Irwin Boock or DeFreitas).) As the SEC has failed to identify even the number of violations at issue, or the amount of civil penalties sought, I recommend that the Court deny SEC's request for civil penalties against DeFreitas and Irwin Boock at this time, without prejudice to renew its request with greater specificity and upon a more complete record.

## CONCLUSION

Based on the foregoing, I respectfully recommend that:

> (1) Birte Boock's motion (Dkt. 64) to set [*35] aside the default be granted;
> (2) Irwin Boock's motion (Dkt. 63) to set aside the default be denied;
> (3) the SEC be awarded disgorgement from DeFreitas in the amount of $2,480,072.40, plus prejudgment interest from August 16, 2006, based on the IRS rate;
> (4) the SEC's request for disgorgement from Irwin Boock be denied without prejudice; and
> (5) the SEC's request for civil penalties to be imposed against DeFreitas and Irwin Boock be denied without prejudice.

Pursuant to *28 U.S.C. § 636(b)(1)* and *Rule 72(b) of the*

*Federal Rules of Civil Procedure*, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Denise L. Cote, United States Courthouse, 500 Pearl Street, Room 650, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Cote. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*; *IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993)*; *Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)*; *Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cif. 1988)*; *McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cif. 1983)*.

Dated: New [*36] York, New York

May 10, 2011

Respectfully submitted,

/s/ Debra Freeman

DEBRA FREEMAN

United States Magistrate Judge

**ORDER**

DEBRA FREEMAN, United States Magistrate Judge:

It is hereby ORDERED that:

1. Plaintiff's motion, dated January 10, 2011, to supplement its Proposed Findings of Fact and Conclusions of Law with respect to Invin Boock (Dkt. 75) is granted.

2. For the reasons set forth in this Court's Report and Recommendation of today's date (*see* n.5 therein), the Clerk of the Court is directed to retitle, on the Court's Docket, the submissions docketed as Nos. 78, 79, 80, and 94, as follows:

Dkt 78: "Plaintiff's Sur-Reply in Further Opposition to Defendant Invin Boock's Motion To Set Aside Default."

Dkt 79: "Defendant Invin Boock's Sur-Reply in Further Support of Motion To Set Aside Default."

Dkt. 80: "Plaintiff's Second Sur-Reply in Further Opposition to Motion To Set Aside Default."

Dkt. 94: "Defendant Irwin Boock's Second Sur-Reply in Further Support of Motion To Set Aside Default."

Dated: New York, New York

May 10, 2011

SO ORDERED

/s/ Debra Freeman

DEBRA FREEMAN

United States Magistrate Judge

---

**End of Document**

Alanna Brallier