UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| True Return Systems LLC, | : |
| Plaintiff, | : |
| v. | : Case No. 1:22-cv-08478-VSB |
| MakerDAO, | : |
| Defendant. | : |

## MEMORANDUM OF LAW IN SUPPORT OF CRYPTO COUNCIL FOR INNOVATION'S MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*

Plaintiff sued a decentralized protocol (MakerDAO), which cannot defend itself, instead of an entity that developed or used that protocol, which could have mounted a defense and shown U.S. Patent No. 10,025,797 (the "'797 Patent") is facially invalid.  By suing a defenseless protocol, Plaintiff intended to obtain a default judgment, a tactic that Plaintiff already has repeated by asserting the '797 Patent against another protocol (Compound Protocol) in a second litigation.  *See True Return Sys., LLC* v. *Compound Protocol*, Case No. 1:22-cv-08483-JPC (S.D.N.Y. Oct. 5, 2022).  Left unchecked, Plaintiff will continue seeking default judgments against decentralized protocols—along with injunctions and damages—using a patent so clearly invalid that it would be disposed on a Rule 12(b)(6) motion if Plaintiff sued an adversary who could fight back.

Proposed *amicus curiae*, the Crypto Council for Innovation ("CCI"), respectfully submits that an obviously invalid patent should not hinder legitimate innovation or shut down active protocols, as Plaintiff requests.  As an *amicus*, CCI would not advocate the defense of any individual member or group of members, although—in response to the Court's order (ECF No. 36)—CCI understands some of its members hold MakerDAO tokens and thus might benefit

from CCI's participation in this case.[1]  That is not, however, the purpose of CCI's request.  If allowed to participate, CCI would address patent claims that stand to harm innovation in the cryptocurrency field generally, which is a matter of public interest that extends beyond this specific case and defendant.  CCI thus respectfully requests leave to participate as an *amicus*.

A court's leave to participate as an *amicus* "should normally be allowed when a party is not represented competently or is not represented at all." *C&A Carbone, Inc.* v. *Cnty. of Rockland*, 2014 WL 1202699, at *4 (S.D.N.Y. March 24, 2014) (quoting *Ryan* v. *Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)).  This is especially true when an *amicus* can help ensure "a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *C&A Carbone, Inc.*, 2014 WL 1202699, at *4 (quoting *United States* v. *Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. January 9, 1991)).  Courts in this district frequently permit *amici* to participate in proceedings.  *See, e.g.*, *C&A Carbone, Inc.*, 2014 WL 1202699, at *14; *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 2829691 (S.D.N.Y. Apr. 27, 2022); *Sec. & Exch. Comm'n* v. *Ripple Labs, Inc.*, 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021); *United States* v. *Apple, Inc.*, 2012 WL 3195653, at *2 (S.D.N.Y. Aug. 6, 2012).

No counsel has represented MakerDAO in these proceedings,[2] and CCI's participation as an *amicus* would ensure that complex patent law issues are properly presented to the Court.  If allowed to participate, CCI anticipates that it will address two matters of general public interest, as briefly outlined below, in addition to any other issue the Court would like CCI to address.

---

[1] CCI's knowledge of each member's token holdings is limited to the information that each member makes publicly available.

[2] Three letters have been submitted to the Court, purportedly from @MakerDAOdai, (ECF Nos. 15, 20, 37), but those submissions do not purport to be made on behalf of the Defendant, MakerDAO, and CCI was not involved with and did not have advanced knowledge of those filings.  CCI does not know who or what made those filings.

*First*, the '797 Patent is facially invalid because it claims an abstract idea: the idea of linking data stored on a computerized ledger with supplemental data stored on a separate computer database. The '797 Patent does not disclose a new tool to link data (*e.g.*, a new cryptographic identifier), nor does it teach a new method for linking data (*e.g.*, a non-conventional way to associate one data set with another). The '797 Patent explains a problem—supplemental data could not be stored on the transaction ledger, so it needed to be stored separately and linked to the ledger—and then broadly claims the *idea* of linking the ledger to the separate database (*i.e.*, simply rephrasing the problem as the solution). That is not a patentable invention; it is an abstract idea squarely within the U.S. Supreme Court's exceptions to patentable subject matter under 35 U.S.C. § 101. *See Alice Corp. Pty.* v. *CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Moreover, this abstract idea plainly was known in the prior art, before the purported February 23, 2018 priority date of the '797 Patent. *See* Declaration of Dustin F. Guzior (hereinafter "Guzior Decl."), Ex. I, at Example 4.3 "Content-Addressable Storage Pattern" ("**Context**: A large amount of data is associated with a smart contract. On-chain storage is too expensive. **Solution**: Store the data off-chain in a content addressable storage system and store the reference in the smart contract. Clients using the smart contract can retrieve the reference and based on that retrieve the data.")

When the examiner at the U.S. Patent and Trademark Office ("U.S. PTO") allowed the claims of the '797 Patent in 2018, she applied older guidelines regarding patentable subject matter (which the examiner was required to follow), while expressing doubts about whether the claims actually were allowable. For example, in 2018, the examiner stated: "[c]laims 1-20 *appear to be statutory at this time*," and claim 19 "*appears* to meet the 35 USC § 101 requirements *at this time per Kappos 2010 Memo*." (ECF No. 30-06 (emphasis added).) The examiner's doubts were well founded. Five months after allowance, in January 2019, the U.S. PTO issued significantly revised

guidelines regarding the lack of patentability of abstract ideas, and the examiner could not have allowed the '797 Patent under those new guidelines.[3] The revised guidelines incorporated controlling Federal Circuit precedents from the 2010-2019 period, and those precedents—along with other precedents issued by the Federal Circuit, District Courts, and the Patent Trial and Appeal Board ("PTAB") after January 2019—repeatedly found (i) patent claims directed to data organization—like the claims of the '797 Patent—are invalid,[4] and (ii) blockchain-related claims directed to data management—like the claims of the '797 Patent—are invalid.[5] Those precedents include a recent case from this district in which blockchain-related claims, like those in the '797 Patent, were held to be unpatentable on a Rule 12(b)(6) motion,[6] and a recent PTAB decision in

---

[3] For example, the examiner's reliance on generic computer hardware ("memory" and "processor") to find patentability had been rejected by the Federal Circuit. *See Hawk Tech. Sys., LLC* v. *Castle Retail, LLC*, 2023 WL 2054379, at *6 (Fed. Cir. Feb. 17, 2023) (affirming Rule 12(b)(6) dismissal of patent claims because "merely reciting an abstract idea performed on a set of generic computer components, as the claims do here, would not contain an inventive concept" (cleaned up)); *see also Two-Way Media Ltd.* v. *Comcast Cable Commc'n, LLC*, 874 F.3d 1329, 1336 (Fed. Cir. 2017) ("Merely reciting the use of a generic computer . . . cannot convert a patent-ineligible abstract idea into an patent-eligible invention").

[4] *See WhitServe LLC* v. *Dropbox*, 854 F. App'x 367, 368 (Fed. Cir. Apr. 26, 2021) (unpublished), *cert. denied*, 142 S. Ct. 778 (2022); *RecogniCorp, LLC* v. *Nintendo Co. Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017); *Intell. Ventures I LLC* v. *Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016); *Content Extraction & Transmission LLC* v. *Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014); *Cyberfone Sys., LLC* v. *CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014).

[5] *See Rady* v. *Bos. Consulting Grp., LLC*, 2022 WL 976877 (S.D.N.Y. Mar. 31, 2022); *Ex Parte Praveen Jayachandran*, Appeal No. 2019-007020, Appl. No. 15/294,272 (P.T.A.B. May 13, 2020) at 12 (rejecting argument that claims' "implement[ation] [of] a new process for tracking assets . . . in blockchain satisfies *Alice*") (attached as Guzior Decl., Ex. G); *Ex Parte Steven Charles Davis*, Appeal No. 2019-002664, Application No. 14/718,930 (P.T.A.B. Sept. 1, 2020) at 11 ("No matter how much of an advance in the field of processing blockchain transactions claim 1 recites, the advance lies entirely in the realm of abstract ideas, with no plausibly alleged innovation in the non-abstract application realm.") (attached as Guzior Decl., Ex. H).

[6] *See Rady*, 2022 WL 976877 at *3. A Rule 12(b)(6) motion is a common vehicle for resolving patent subject matter eligibility challenges, and another very recent decision in this district also held, on a Rule 12(b)(6) motion, that patent claims were invalid because they were directed to an abstract idea. *See Escapex IP LLC* v. *Block, Inc.*, 2023 WL 373180, at *2, 8–9 (S.D.N.Y. Jan. 24,

which patent claims directed to linking data in connection with blockchain were rejected as being directed to unpatentable subject matter.[7] These decisions lead to the conclusion that the '797 Patent is facially invalid.

Patent invalidity is a matter of public interest. *See Rates Tech. Inc.* v. *Speakeasy, Inc.*, 685 F.3d 163, 172 (2d Cir. 2012) (there is a "public interest in discovering invalid patents"); *Bilski* v. *Kappos*, 561 U.S. 593, 609 (2010) ("granting patents when not justified by the statutory design" "imped[es] progress").[8] If allowed to participate as an *amicus*, CCI would brief this matter of public interest and provide "unique information or perspective that can help the court beyond the help that the lawyers for the parties [were] able to provide." *Lehman*, 2014 WL 265784, at *1-2; *see also C&A Carbone, Inc.*, 2014 WL 1202699, at *3-4. In short, CCI would explain why the '797 Patent is invalid—applying the Rule 12(b)(6) standard—and thus show why the Court should not enter default judgment and instead should dismiss the claims with prejudice. Respectfully, the

---

2023). The *Escapex IP* decision contains a thorough explanation of the legal analysis that applies to a subject matter eligibility challenge on a Rule 12(b)(6) motion. *Id.*, at *2–4; *see also Content Extraction*, 776 F.3d at 1344 (affirming district court opinion on patent eligibility in appeal from grant of a motion to dismiss under Rule 12(b)(6)); *see also OIP Techs., Inc.* v. *Amazon.com, Inc.*, 788 F.3d 1359, 1364–65 (Fed. Cir. 2015) (Mayer, J., concurring) ("Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings."); *Mira Adv. Tech. Sys., Inc.* v. *Google LLC*, 2022 WL 3925235 at *3 (S.D.N.Y. Aug. 31, 2022) (same).

[7] *Ex Parte Praveen Jayachandran*, Appeal No. 2019-007020, Appl. No. 15/294,272 (P.T.A.B. May 13, 2020) at 12 (attached as Guzior Decl., Ex. G).

[8] *See also Warner-Jenkinson Co.* v. *Allied Chem. Corp.*, 567 F. 2d 184, 188 (2d Cir. 1977) (finding a "public interest in having invalid patents cleared away through litigation"); *Lear, Inc.* v. *Adkins*, 395 U.S. 653, 670 (1969) (recognizing the "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain"); *Blonder-Tongue Labs., Inc.* v. *Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971) ("A patent by its very nature is affected with a public interest."); *see also Constant* v. *Adv. Micro-Devices, Inc.*, 848 F.2d 1560, 1564 (Fed. Cir. 1988) (finding the best way to ensure that patents issue only for inventions in full compliance with the statutory standards is to allow "the validity of a patent, which was originally obtained in ex parte proceedings in the PTO, [to] be challenged in court").

Court should consider this complex issue when deciding whether to enter default judgment, and CCI respectfully submits that its briefing would assist the Court in that analysis.  *See Danial* v. *Langenbach*, 2014 WL 516389, at *8 (S.D.N.Y. Oct. 14, 2014) (On a motion for default judgment, "it remains for the court to consider whether the unchallenged facts constitute legitimate causes of action, since a party in default does not admit mere conclusions of law.")

*Second*, Plaintiff's requested remedies—including a permanent injunction and $17,808,531 of damages ($5,133,745 of which is *punitive* damages)—are not justified under the law and not in the public interest.  Following the U.S. Supreme Court's decision in *eBay Inc*. v. *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), injunctions rarely issue in patent infringement cases, especially when—as here—the injunction is against the public interest.  Similarly, following the U.S. Supreme Court's decision in *Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016), punitive damages under 35 U.S.C. § 284 are reserved for the most egregious infringement behavior, which Plaintiff did not plead or show here.  Plaintiff's request for compensatory damages also violates controlling Federal Circuit law because the requested royalty (more than $12 million) is divorced from the actual value of the purported invention, if any.  *See Pavo Sols. LLC* v. *Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022).  That inflated and unjustified royalty ultimately could fall on members of the public who use cryptocurrency protocols.  If allowed to participate as an *amicus*, and if the Court first finds liability, CCI would address these public interest matters related to the requested remedies.

CCI's participation as an *amicus* with respect to the requested remedies is particularly important to ensure the Court has complete and accurate facts before it regarding the matter.  For example, although Plaintiff requested total damages of $17,808,531, Plaintiff did not inform the Court that it *presently* has listed for sale the '797 Patent (under the auction title "US Patent No.

10,025,797 with Unlockable Prospective Licensee and Litigation Candidate Content") for approximately $2,134,387.50.[9]  *See* Guzior Decl., Exs. A & B.[10]  Plaintiff widely publicized its sale of the '797 Patent.  *See* Guzior Decl., Exs. C, D, & E.  Despite being on the market for two years—and publicizing the auction—Plaintiff has received *zero* offers, likely because it is readily apparent that the '797 Patent is invalid, as explained above and as would be explained more fully in the proposed *amicus* brief.  *See* Guzior Decl., Ex. A.  To be clear, Plaintiff asks this Court for $17,808,531 in damages—and an injunction shutting down an active cryptocurrency protocol purportedly because of irreparable harm—when Plaintiff currently is selling the '797 Patent in its entirety (and this lawsuit) for only $2,134,387.50, with zero bidders.  If allowed to participate as an *amicus*, CCI would further address this issue should damages ever become relevant.

Finally, as the Court stated in its Memo Endorsement (ECF 36), "[a] potential *amicus*'s partiality is a factor to be considered," but *amici* need not be completely disinterested in the outcome of the litigation.  *See Auto. Club of N.Y.*, 2011 WL 5865296, at *2 (quoting *Onondaga Indian Nation* v. *New York*, 1997 WL 369389, at *3 (N.D.N.Y. June 24, 1997)).  As noted above, CCI understands that at least some of its members hold MakerDAO tokens, and thus those members could have an interest in this proceeding.  CCI's knowledge of each member's holdings is limited to what each member makes publicly available, and importantly, CCI's members hold tokens of numerous different protocols and MakerDAO is not unique.

---

[9] Plaintiff expressed its current list price of 1,250 WETH in units of wrapped Ethereum, which is a cryptocurrency that today has an exchange rate of approximately $1,707.51 USD for each unit of WETH.  Thus, Plaintiff's current list offer equates to $2,134,387.50.  This list price of 1,250 WETH has been available for one year—although the patent has been listed at various other prices for two years—and during that one-year period, 1,250 WETH equaled $1,245,612.50 at its lowest and $4,410,687.50 at its highest.  *See* Guzior Decl., Ex. B.

[10] Plaintiff also listed for sale a second patent, but has canceled the listing.  *See* Guzior Decl., Ex. F.  Plaintiff's listing of the '797 Patent remains active.  *See* Guzior Decl., Ex. A.

Moreover, CCI itself has no direct financial interest in the outcome of this case. But courts in this district have allowed *amicus* participation even by interested parties when the issues "could prove dispositive in future disputes." *C&A Carbone, Inc.*, 2014 WL 1202699, at *4 ("A full airing of the issues at stake is therefore particularly desirable in this instance, even taking into account the *Amici*'s partiality."). As noted, Plaintiff already has sued another protocol—and Plaintiff appears poised to continue that campaign because numerous protocols use the abstract idea of linking databases—and CCI would like to ensure that Plaintiff's repeated assertion of a facially invalid patent does not hinder or unjustifiably tax innovation.

*     *     *

CCI respectfully submits that what it has to offer—through briefing and participation in hearings the Court might order—will assist the Court as it decides whether Plaintiff's Complaint states a legally valid claim, which will require consideration of complex issues such as patent subject matter eligibility. For that reason, and the reasons provided above, CCI respectfully requests leave to participate as an *amicus*. Should the Court grant leave, CCI requests 30 days to file its substantive brief on patent invalidity. Of course, if the Court decides that a different deadline is appropriate, CCI will comply with any deadline ordered by the Court.

Dated:  February 20, 2023                          Respectfully submitted,

/s/ *Dustin F. Guzior*

James M. McDonald
Jacob M. Croke
Dustin F. Guzior
Stephen J. Elliott
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
mcdonaldj@sullcrom.com
crokej@sullcrom.com
guziord@sullcrom.com
elliotts@sullcrom.com

*Counsel for Crypto Council for Innovation*