# Exhibit D

IP Law

# The Trendy, Hot NFT Market Has a New Entrant: Patents

By Matthew Bultman

May 10, 2021, 5:51 AM

- Test case underway to represent patents as NFTs
- Some see value in automated contracts, transparency

Jack Fonss may be making digital history with his blockchain patent.

Fonss and his consulting company, True Return Systems LLC, are auctioning U.S. Patent No. 10,025,797 on the NFT marketplace OpenSea. Bidding for the patent, believed to be the first to be auctioned as a non-fungible token, starts at around $7.5 million.

NFTs are a trendy new digital sensation, but Fonss and others see real benefits for the digital token technology in the patent space.

Built into the NFT representing Fonss' patent is a self-executing contract. When someone buys the NFT, they get all rights in the patent, including the right to sue for infringement.

Fonss said the automated contract simplifies what otherwise would have been a "lengthy and cumbersome process" that can involve a clunky exchange of documents and a series of back-and-forths.

"We built a very simple contract to be able to transfer those rights over," said Matthew Frankle, a Haynes and Boone LLP attorney helping True Return with the sale.

"We're thinking that's probably the way things are moving in the future," Frankle added, "so we wanted to get ahead of it."

Others are trying to nudge the market in that direction.

The startup IPWe, working with IBM Corp., recently announced plans to represent patents as NFTs and store the digital records on a blockchain network. It believes the "tokenization" of patents will allow them to be more easily sold.

Some are skeptical of the technology's value for patents, and note the potential for thorny legal questions, including issues with securities laws. There is also a concern about more lawsuits from entities that hold a patent but don't intend to develop it.



Illustration: Jonathan Hurtarte/Bloomberg Law

**Real Business Allocation**

NFTs have made a splash in the sports, music, and the arts industries in recent months. Christie's sold an NFT artwork for $69 million. The Golden State Warriors launched an NFT collection, while musicians are selling songs and albums as NFTs.

NFTs are digital assets stored on a blockchain. They can be digital representations of real-world objects, like a sports highlight video, and often come with few, if any, substantive rights in the underlying object. Buying a video NFT of Steph Curry shooting a basketball, for example, doesn't necessarily mean the buyer owns the clip.

With True Return and IPWe's approach, the NFT is more than a digital collectible—it comes with rights to the patent. Jeffrey Neuburger, head of the Blockchain Group at Proskauer Rose LLP, said the concept represents an example of a "real business allocation for NFTs."

It's cause for excitement among some who believe NFTs and blockchain can make buying and selling patents easier, offering new opportunities for companies, universities, and inventors to make money off of their technology.

Connecting blockchain to patents can also create more transparency in patent transactions, which are often an opaque process, said Ian McClure, the associate vice president for Research, Innovation and Economic Impact at the University of Kentucky.

"Blockchain is a key element in helping IP transactions and management happen more efficiently," McClure said.

That's what IPWe and IBM are banking on.

The companies already created a patent marketplace on blockchain, as well as a registry that collects patent records. They believe representing patents as NFTs is a critical next step to making transactions simpler and more cost-effective.

IPWe said it expects tokenized patents will be on the platform this year.

An IP-focused NFT marketplace could be particularly attractive to companies that have large patent portfolios, like IBM, and want to license their inventions, said Mark Stallion, the leader of the intellectual property and patent teams at Greensfelder Hemker & Gale PC.

Automated contracts can cut transaction times and costs, attorneys say. And the marketplace provides another platform for owners to market their patents to potential licensees, potentially drawing in more of them.

"Unless you are savvy enough to know, and are following, a particular technology space you may not even be aware that a particular technology is available for license," Stallion said.

**Immutable Data Bank**

The idea of an improved IP marketplace isn't new.

Before joining the University of Kentucky, McClure started IPXI, a financial exchange for buying and selling IP rights. A key premise of the idea was the inclusion of openly accessible and transparent data that purported to validate the value of the IP.

A big problem that IPXI ran into before it disbanded, McClure said, was there was a lack of predictability around the information from both sides of the transaction. Had blockchain been available, he thinks it would have solved that problem.

Blockchain serves as a public ledger, where different users can verify information about the asset and, in effect, hold others accountable. Blockchain is also an immutable record, meaning that it generally can't be altered or changed.

A blockchain-based patent data ledger could provide "a public, crowd-sourced database of information that helps us better understand and rely on the probabilities related to that patent," McClure said. That, in turn, could create "better predictability and better, or more, transactions."

Consideration is also being given to private networks that governments, companies, and universities could use to track their IP portfolios internally. That could have some value to a school like Kentucky, which has several hundred patent assets, McClure said.

"For us to manage every piece of relevant information that would either increase or decrease the value of those assets is tough," McClure said. It would be easier with "a ledger, an immutable piece of information that helps track all of that stuff."

Duplication of Effort?

Not everyone is convinced. Some attorneys question the value of representing patents as NFTs, and say it appears to be duplicating some things that are already being done. The patent office, for example, keeps public records with patent assignment and other information.

Some also wonder how many companies will be willing to pay to represent patents as NFTs and add them to a public marketplace.

"It doesn't seem that compelling from a business perspective," said Mauricio Uribe, a lawyer at Knobbe Martens Olson & Bear LLP. He noted many companies "don't transfer patents, they don't publicly identify who they're licensed to, and there isn't a huge assignment chain."

There is also a concern public marketplaces could spur additional lawsuits from non-practicing entities—companies that don't make products but make money licensing or litigating patents.

IPWe is run by Erich Spangenberg, who earned a reputation suing companies over tech patents. The marketplaces could create new libraries of patent assets for entities, like the ones Spangenberg once operated, to shop from, some attorneys say.

They also note that NFTs can provide opportunities for fractional ownership, where smaller investors purchase fractional pieces of the NFTs.

"It's another way to raise capital for litigation funds to assert these patents," said Cindy Yang, an attorney in the IP division at Duane Morris LLP and leader of the firm's FinTech Industry Practice Group.

Confidentiality, Securities Concerns

Other uncertainties about NFT patents in public marketplaces exist. It's unclear, for example, how public platforms will handle confidentiality of transactions and royalty streams, something that is often prized in patent transactions, attorneys say.

There are also questions about whether fractional sales of NFTs could risk violating securities laws. At the Security Token Summit last month, SEC Commissioner Hester Peirce suggested fractionalized NFTs could run the risk of being unregistered securities.

"You better be careful that you're not creating something that's an investment product because that is a security," Peirce said.

Yang noted anti-money laundering regulations may also arise when patents are represented as NFTs in a marketplace. The Financial Action Task Force, a Paris-based watchdog group, released guidance last month expanding how those rules are applied to virtual assets.

"Depending on how these things are built and how they are presented, you start to deal with other issues that we don't normally see in the patent space," Yang said.

To contact the reporter on this story: Matthew Bultman in New York at mbultman@correspondent.bloomberglaw.com

To contact the editors responsible for this story: Keith Perine at kperine@bloomberglaw.com; Cheryl Saenz at csaenz@bloombergindustry.com

## Law Firms

Haynes and Boone
Knobbe Martens
Duane Morris
Proskauer Rose
Greensfelder Hemker & Gale

## Topics

patent holding companies
patent licensing
blockchain
electronic records
software patents
patent infringement

## Companies

International Business Machines Corp

© 2023 Bloomberg Industry Group, Inc.   All Rights Reserved