UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| True Return Systems LLC, | Case No. 22-cv-8478-LTS |
| Plaintiff, | |
| -against- | **DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| MakerDAO, | |
| Defendant. | |

**Request for Oral Argument**: Defendant previously requested oral argument regarding Defendant's Motion to Dismiss consistent with Judge Broderick's Individual Rules and Practices in Civil Cases. (ECF No. 77.) Defendant now respectfully renews its request for oral argument consistent with the rules of this Court.

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ..................................................................................................... 2

I.     The Court should exclude all allegations and evidence not contained in the Complaint.......................................................................................... 2

II.    The Complaint does not allege facts showing that MakerDAO has the capacity to be sued. ...................................................................... 3

     A.    Plaintiff does not assert that MakerDAO is an unincorporated association with capacity to be sued. ......................................... 3

     B.    Plaintiff is bound by its admission that MakerDAO is not a partnership........................................................................... 4

     C.    The Complaint contains no allegations to support a finding that MakerDAO is a general partnership. ........................................ 5

     D.    The other DAO cases cited by Plaintiff do not show that MakerDAO is a general partnership under New York law.................. 13

III.    Because MakerDAO does not exist as a general partnership, Rule 17(b) is no help to Plaintiff. ......................................................................... 14

IV.    Public policy concerns do not permit this Court to ignore MakerDAO's capacity defense. ........................................................................... 15

V.    Plaintiff has failed to state a claim of patent infringement. ............................ 15

     A.    The allegations in the Complaint necessarily implicate extraterritorial activity and do not support a claim of patent infringement in the United States. ...................................... 16

     B.    The new information presented by Plaintiff's Opposition should not be considered and in any event does not provide a basis for a plausible claim of patent infringement in the United States. ................ 19

VI.    Conclusion. ...................................................................................... 20

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*,
    50 A.D.3d 219 (1st Dep't 2008) ...................................................................8, 11

*Ashlock v. Slone*,
    No. 10-cv-453, 2012 WL 3055775 (S.D.N.Y. July 26, 2012) ...............................11

*Babaev v. Grossman*,
    312 F. Supp. 2d 407 (E.D.N.Y. 2004) .................................................................4

*Beckerman v. Sands*,
    364 F. Supp. 1197 (S.D.N.Y. 1973) ...........................................................5, 6, 11

*Brodsky v. Stadlen*,
    138 A.D.2d 662 (2d Dep't 1988) .........................................................3, 8, 10, 13

*CFTC v. Ooki DAO*,
    No. 22-CV-05416, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022) ......................13

*CFTC v. Ooki DAO*,
    No. 22-CV-05416, 2023 WL 5321527 (N.D. Cal. June 8, 2023) ..........................13

*Chanler v. Roberts*,
    200 A.D.2d 489 (1st Dep't 1994) ........................................................................7

*DeCristofaro v. Nest Seekers E. End, LLC*,
    2017 N.Y. Slip Op. 50074(U) (Sup. Ct. Suffolk Cty. Jan. 11, 2017) .................9, 12

*Fasolo v. Scarafile*,
    120 A.D.3d 929 (4th Dep't 2014) ....................................................................5, 6

*Four Star Cap. Corp. v. Nynex Corp.*,
    183 F.R.D. 91 (S.D.N.Y. 1997) ...........................................................................9

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
    991 F.3d 370 (2d Cir. 2021) ..............................................................................14

*Gardiner Int'l, Inc. v. J.W. Townsend & Assocs., Inc.*
    13 A.D.3d 246 (1st Dep't 2004) .........................................................................6

*Growblox Sci., Inc. v. GCM Admin. Servs., LLC*,
    No. 14-cv-2280, 2015 WL 3504208 (S.D.N.Y. June 2, 2015) .............................10

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*In re Pae,*
2017 N.Y. Slip Op. 50078(U) (Surr. Ct. Queens Cty. Jan. 12, 2017) ....................................10

*Kant v. Columbia Univ.,*
No. 08-cv-7476, 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010)....................................................4

*Kennedy v. Covidien, LP,*
No. 18-cv-1907, 2019 WL 1429979 (S.D.N.Y. Mar. 29, 2019)................................................3

*Kramer v. Time Warner Inc.,*
937 F.2d 767 (2d Cir. 1991)....................................................................................................2

*Kristoffersson on behalf of R.R. v. Port Jefferson Union Free Sch. Dist.,*
No. 22-cv-01741, 2023 WL 6119710 (E.D.N.Y. Sept. 18, 2023) ............................................2

*Levine v. Lawrence,*
No. 03-cv-1694, 2005 WL 1412143 (E.D.N.Y. June 15, 2005)................................................3

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,*
265 F.R.D. 106 (S.D.N.Y. 2010) ............................................................................................2

*Mashihi v. 166-25 Hillside Partners,*
51 A.D.3d 738 (2d Dep't 2008)..............................................................................................6

*Matter of Wells,*
36 A.D.2d 471 (4th Dep't 1971) ............................................................................................7

*Missan v. Schoenfeld,*
111 Misc. 2d 1022 (Sup. Ct. 1981)...................................................................................8, 11

*Napoli v. Nat'l Surety Corp.,*
No. 21-cv-9279, 2022 WL 1943776 (S.D.N.Y. May 19, 2022) ...............................................3

*NTP, Inc. v. Research In Motion, Ltd.,*
418 F.3d 1282 (Fed. Cir. 2005)........................................................................................16, 19

*Nynex Corp. v. Shared Res. Exch., Inc.,*
No. 14577/89, 1990 WL 605347 (N.Y. Sup. Ct. Sept. 10, 1990).............................................8

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
322 F.3d 147 (2d Cir. 2003)....................................................................................................4

*Rivkin v. Coleman,*
978 F. Supp. 539 (S.D.N.Y. 1997)...................................................................................10, 12

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*Roby v. Corp. of Lloyd's*,
   796 F. Supp. 103 (S.D.N.Y. 1992) .......................................................................... 14

*Ruzicka's v. Rager*,
   277 A.D. 359 (1st Dep't 1950) ........................................................................... 6, 7

*Scott v. JPMorgan Chase & Co.*,
   No. 13-cv-646, 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) .................................... 3

*SEC v. Balina*,
   No. 22-cv-950 (W.D. Tex., filed Sep. 19, 2022) ..................................................... 18

*Underwood v. Maloney*,
   256 F.2d 334 (3d Cir. 1958) ................................................................................... 15

*Velez v. Mitchell*,
   211 A.D.3d 415 (1st Dep't 2022) ........................................................................ 5, 7

*Wade Park Land Holdings, LLC v. Kalikow*,
   No. 21-cv-1657, 2023 WL 2614243 (S.D.N.Y. Mar. 23, 2023) ............................... 2

*Weg v. Kaufman*,
   159 A.D.3d 774 (2d Dep't 2018) ............................................................................ 12

## STATUTES

35 U.S.C. § 271(a) ......................................................................................................... 16

N.Y. Not-for-Profit Corp. L. § 508 ................................................................................ 8

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 2

Fed. R. Civ. P. 17(b) ................................................................................................ 14, 15

15A N.Y. Jur. 2d Business Relationships § 1547 .......................................................... 12

Note, *Unions as Juridical Persons*, 66 Yale L.J. 712, 749 (1957) ............................... 15

Defendant MakerDAO submits this Reply in further support of its Motion to Dismiss the Complaint for Failure to State a Claim ("Motion"; ECF No. 75, 76).[1] MakerDAO's Motion presents two separate and independent grounds for dismissing the Complaint with prejudice. Either ground is dispositive of this case.

## PRELIMINARY STATEMENT

Plaintiff rests its Opposition on declarations with 27 new exhibits and citations to previously filed exhibits and memoranda of law that are all outside the four corners of the Complaint. In fact, an astonishing 89 of the 121 citations in the Opposition (nearly 75 percent) are to documents outside of the Complaint and its exhibits. The Court should take this for what it is—an admission that Plaintiff has not alleged facts showing that MakerDAO is an entity with capacity to sue or be sued and has failed to state a claim for patent infringement.

On capacity, Plaintiff does not dispute—and therefore concedes—that MakerDAO is not an unincorporated association. Plaintiff also has admitted that MakerDAO is not a corporation, LLC, or partnership. It belatedly tries to argue that the tens of thousands of anonymous holders of MKR governance tokens are all general partners, which cannot be squared with the allegations in the Complaint or pertinent caselaw. Plaintiff has not alleged facts demonstrating that MakerDAO has the capacity to be sued.

Regarding alleged patent infringement, the accused MakerDAO system and activities are necessarily global—that is, both inside and outside the U.S. For example, the Complaint alleges that the DCL of the asserted patent claims corresponds to the global Ethereum network—not to a single Ethereum node in the U.S. Furthermore, Plaintiff's infringement claim is based on the

---

[1] During the telephonic status conference with Judge Broderick on October 2, 2023, the Court enlarged the page limit for the briefing of MakerDAO's Motion to Dismiss to two times the regular page limits. This Reply brief is 20 pages in length and is within two times the regular page limit of ten pages for reply briefs under Judge Broderick's individual rules.

operation of MakerDAO's Oracles and OSMs, but the Complaint does not allege that any

Oracles or OSMs exist in the U.S.

## ARGUMENT

**I.      The Court should exclude all allegations and evidence not contained in the Complaint.**

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ.

P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents

attached to the complaint as exhibits or incorporated in the complaint by reference. Of course, it

may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201."

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Plaintiff's Opposition

impermissibly relies on hundreds of pages of new exhibits that are not attached to the Complaint

or incorporated by reference therein. The information in these new exhibits is subject to

question—much of it comes from third parties and Plaintiff has neither requested judicial notice

nor explained why it should be considered. Plaintiff also makes no effort to justify the extraneous

submissions. *See Kristoffersson on behalf of R.R. v. Port Jefferson Union Free Sch. Dist.*,

No. 22-cv-01741, 2023 WL 6119710, at *3 (E.D.N.Y. Sept. 18, 2023) (granting motion to

dismiss where plaintiff submitted a 25-page affidavit, along with 21 exhibits, in response to a

motion to dismiss and stating: "[n]one of the documents submitted by Plaintiff were attached to

the complaint, and Plaintiff has made no attempt to demonstrate that the Court may properly

consider them in ruling on Defendants' Rule 12(b)(6) motion."). "[A] plaintiff may not shore up

a deficient complaint through extrinsic documents submitted in opposition to a defendant's

motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106,

122 (S.D.N.Y. 2010). This "litigation by ambush" is impermissible. *Wade Park Land Holdings,

LLC v. Kalikow*, No. 21-cv-1657, 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023).

Plaintiff's reliance on extrinsic documents is an admission that the Complaint cannot survive

MakerDAO's motion; Plaintiff "may not amend [its] pleadings in an opposition brief."

*Kennedy v. Covidien, LP*, No. 18-cv-1907, 2019 WL 1429979, at *6 n.13 (S.D.N.Y. Mar. 29,

2019). The Court should exclude all of the exhibits to the Boag and Fonss Declarations and all

references thereto in the Opposition.

**II.     The Complaint does not allege facts showing that MakerDAO has the
          capacity to be sued.**

Plaintiff fails to base its capacity arguments on the allegations in the Complaint and

statements in the MakerDAO Whitepaper, which is incorporated therein. Plaintiff does not

attempt to argue that MakerDAO is an unincorporated association. Consistent with Plaintiff's

concession that MakerDAO "is not formally organized as a … partnership," (Compl. ¶ 9) the

allegations in the Complaint do not demonstrate the factors necessary to prove the existence of a

partnership as set forth in *Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (2d Dep't 1988).

**A.     Plaintiff does not assert that MakerDAO is an unincorporated
          association with capacity to be sued.**

MakerDAO has explained that it is not an unincorporated association under New York or

federal law. ECF No. 76 at 21–31. Plaintiff does not dispute nor address any of MakerDAO's

factual or legal assertions, and thus concedes the point. *Napoli v. Nat'l Surety Corp.*, No. 21-cv-

9279, 2022 WL 1943776, at *6 (S.D.N.Y. May 19, 2022) ("Plaintiffs did not address that

argument in their opposition, and, on that basis alone, may be deemed to have conceded the

point"), *R. & R. adopted*, 2022 WL 211606 (June 10, 2022), *aff'd*, No. 22-1516, 2023 WL

2320332 (2d Cir. Mar. 2, 2023); *see also, e.g.*, *Scott v. JPMorgan Chase & Co.*, No. 13-cv-646,

2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (holding that plaintiff "effectively conced[ed]

the validity of the Arbitration Agreement" by failing to respond to defendant's arguments), *aff'd*,

603 F. App'x 33 (2d Cir. 2015); *Levine v. Lawrence*, No. 03-cv-1694, 2005 WL 1412143, at *5

(E.D.N.Y. June 15, 2005) ("failure to adequately brief an argument constitutes waiver of that argument" on a motion to dismiss).

### B.  Plaintiff is bound by its admission that MakerDAO is not a partnership.

Plaintiff's Complaint alleges MakerDAO "is not formally organized as a corporation, LLC, partnership, or other recognized organization type" with the capacity to be sued under New York law." Compl. ¶ 9. Plaintiff's concession that MakerDAO is not a partnership prevents it from now asserting that MakerDAO can be sued as a general partnership. Allegations in a complaint are judicial admissions by which a party is "bound throughout the course of the proceeding." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Plaintiff neither withdrew the admission nor sought leave to amend.[2] *Cf. Babaev v. Grossman*, 312 F. Supp. 2d 407, 409 (E.D.N.Y. 2004) (statements in properly withdrawn complaint no longer judicial admissions).

Plaintiff attempts to limit its admission by stating MakerDAO "***is not formally* organized** as a … partnership" (Opp. at 11 n.4 (emphasis in original); *see also id.* at 2). But that qualification is meaningless because there is no such thing as an informal partnership. Unlike corporations or LLCs, partnerships do not require formalities to exist—a partnership either exists or not as a function of whether it meets requirements of partnership under the applicable law. Among other things, a general partnership under New York law requires a written or oral agreement among putative partners to carry out business as a partnership. The Complaint does not allege the existence of any such agreement, making Plaintiff's attempt to limit its admission ineffective.

---

[2] In any case leave to amend should be denied where the proposed amendment directly contradicts the factual allegations of the earlier pleading. *Kant v. Columbia Univ.*, No. 08-cv-7476, 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010).

### C. The Complaint contains no allegations to support a finding that MakerDAO is a general partnership.

Neither Plaintiff's Complaint nor the voluminous extrinsic exhibits provide any basis to find that MakerDAO is a general partnership under New York law. Even setting aside Plaintiff's binding admission that MakerDAO is not a partnership, Plaintiff does not allege and cannot show that MakerDAO has any members or partners, a partnership agreement, or any proportional sharing of profits and losses.

### 1. Plaintiff does not allege the existence of a partnership agreement as required by New York law.

A partnership does not exist without a partnership *agreement* between the putative partners. *Velez v. Mitchell*, 211 A.D.3d 415, 415–16 (1st Dep't 2022). The Complaint does not allege the existence of a written or oral partnership agreement. Plaintiff's baseless speculation that "some agreement may exist" (Opp. at 11 n.5) is no substitute for a properly pleaded allegation of a written or oral partnership agreement. In any case, Plaintiff could not plausibly allege that the more than 98,000 MKR tokenholders are each party to an oral agreement with one another to carry on as co-owners of a business for profit together.[3] "[A] partnership agreement is a contract, which cannot come into being without the understanding and consent of all the contracting parties." *Beckerman v. Sands*, 364 F. Supp. 1197, 1199 (S.D.N.Y. 1973). "When there is no written partnership agreement between the parties, the court must determine whether a partnership in fact existed from the conduct, intention, and relationship between the parties." *Fasolo v. Scarafile*, 120 A.D.3d 929, 929 (4th Dep't 2014).

---

[3] In its Brief in Support of its Motion, MakerDAO pointed out that publicly available information showed that the MKR token is held by more than 94,000 unique addresses and some number of MKR tokens is transferred between blockchain-based addresses many thousands of times a day. As of December 20, 2023, that number has grown to more than 98,000. Plaintiff's theory that four thousand net new "partners" joined the general partnership during the pendency of this motion is untenable. https://etherscan.io/token/0x9f8f72aa9304c8b593d555f12ef6589cc3a579a2

MKR tokens are held anonymously by tens of thousands of strangers all over the world.
No MKR tokenholder knows or has any way to identify all of the other tokenholders. ECF.
No. 76 p. 28. The absence of an identifiable membership is fatal to any attempt to prove an
implied partnership based on the "relationship between the" supposed partners. *Fasolo*, 120
A.D.3d at 929. Plaintiff has cited no case finding an implied oral partnership among a large
group of strangers. Plaintiff cannot credibly allege the existence of mutual consent of anonymous
MKR tokenholders to act as mutual agents for one another and for the partnership. *Beckerman*,
364 F. Supp. at 1199.

### 2.  MakerDAO cannot be a general partnership because of statutory dissolution.

A fundamental flaw in Plaintiff's unpleaded partnership theory is that, absent a
partnership agreement that provides otherwise, the MakerDAO "partnership" would dissolve as a
matter of law with every transfer of "freely tradable" MKR tokens. (Compl. ¶ 8.) Under New
York law, a "[p]artnership dissolves when there is a change in the relationship between the
partners caused by one partner who no longer associates with the purposes of the partnership."
*Gardiner Int'l, Inc. v. J.W. Townsend & Assocs., Inc.* 13 A.D.3d 246, 247 (1st Dep't 2004)
(citing N.Y. P'ship Law § 60). The law is clear that the removal or addition of even one partner
forces a dissolution of the partnership:

> A partnership is a contractual relation dependent upon the personality of its
> members. The admission or withdrawal of a member so radically changes the
> contractual rights … as to produce essentially a new relation even though the parties
> contemplate [sic] no actual dissolution of the firm and continue to carry on business
> under the same name, under the original articles and with the same account books.

*Ruzicka's v. Rager*, 277 A.D. 359, 360 (1st Dep't 1950). Here, any supposed "partnership"
would be dissolved by each transfer of MKR, which occurs thousands of times per day. *See, e.g.,*
*Mashihi v. 166-25 Hillside Partners*, 51 A.D.3d 738, 738–39 (2d Dep't 2008) (holding that court

order dissolving partnership was not needed because partnership was dissolved by operation of law when some partners stopped working toward their prior common goal and ceased all communications with the other partners); *see also* supra n.3. If, following a withdrawal, the remaining partners reconstitute themselves as a new partnership, that is a new legal entity without the rights or obligations of the dissolved partnership. *Ruzicka's*, 277 A.D. 359, 370 (new partnership could not maintain action that accrued prior to dissolution of old partnership).

**3. Plaintiff has not alleged and cannot show that MKR holders agreed to share profits and losses of MakerDAO.**

It is black letter law that a "mutual promise to share profits and losses is an 'indispensable' element" of a partnership. *Velez*, 211 A.D.3d at 415; *see also Matter of Wells*, 36 A.D.2d 471, 475 (4th Dep't 1971), *aff'd*, 29 N.Y.2d 931 (1972). "Furthermore, an undertaking to share in profits without submitting to the burden of making good the losses renders such an agreement a nullity under partnership law." *Chanler v. Roberts*, 200 A.D.2d 489, 491 (1st Dep't 1994). The Complaint does not allege that MKR tokenholders have a right to MakerDAO profits or an obligation to make good MakerDAO losses.[4]

The MakerDAO Whitepaper attached to the Complaint addresses the role and rights of MKR tokenholders *extensively*, but states nothing about MKR tokenholders having a right to a share of MakerDAO profits or an obligation to satisfy the liabilities of MakerDAO. (*See generally* Compl. Ex. 2.) Neither do any of the extraneous documents cited by MakerDAO in its Opposition. The bare allegation that "MakerDAO" purportedly calculates income and expenses

---

[4] Paragraph 10 of the Complaint alleges that "holders of governance tokens" in a generic DAO "have a *potential* claim on profits, and they share responsibility for its liabilities" but it says nothing about MakerDAO specifically; nor is it consistent with the exhibits attached to the Complaint, including the MakerDAO Whitepaper.

-7-

does not mean that profits are distributed to MKR tokenholders.[5] (Opp. at 14.) Nor does the

unpleaded "fact" that MKR tokenholders might also receive compensation for work performed

for MakerDAO. *See Brodsky*, 138 A.D.2d at 663 (holding that plaintiff's receipt of salary was

evidence that he was *not* a partner). The market value of MKR, which rises and falls over time as

a freely tradable asset, is no more a distribution of "profits" to tokenholders than the fair market

value of a public company's stock. And while surplus MakerDAO treasury assets (Dai) can be

purchased by MKR holders in an auction, MKR holders do not have a right to a distribution of

such assets.[6] *Cf. Missan v. Schoenfeld*, 111 Misc. 2d 1022, 1024 (Sup. Ct. 1981) (finding regular

monthly partnership draws evidence of a partnership). To the contrary, MKR holders can only

acquire those assets by tendering their MKR tokens and reducing their governance stake.

(Compl. Ex. 2 at 10.) In a general partnership, profits are distributed to the partners in agreed-

upon shares upon an agreed-upon schedule without the partners having to tender anything back

to the partnership. *Missan*, 111 Misc. 2d at 1025; *Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*, 50

A.D.3d 219, 225 (1st Dep't 2008) (finding no partnership where there was no agreement as to

"pertinent and necessary details, such as how profits, losses, and expenses would be shared."). A

MKR surplus auction is not a distribution of partnership profits.

Plaintiff similarly fails to show any obligation by MKR holders to cover the losses or

---

[5] And, the extraneous documents cited by Plaintiff refers to such values as "net income," not
profits. (Opp. at 14 (citing ECF No. 30, Ex. 11).) If considered, it would not tend to show that
MakerDAO has "profits," which are not the same as "net income" or "net revenues." Nonprofit
corporations still receive and report net income, for example. *See* N.Y. Not-for-Profit Corp. L.
§ 508. *See also Nynex Corp. v. Shared Res. Exch., Inc.*, No. 14577/89, 1990 WL 605347, at *5
(N.Y. Sup. Ct. Sept. 10, 1990) ("The sharing of gross revenues or gross earnings, as opposed to
profits (which encompasses a sharing of losses) does not create a partnership or joint venture.")
[6] "During a Surplus Auction, bidders compete by bidding decreasing amounts of MKR to receive
a fixed amount of Dai. Once the Surplus Auction has ended, the Maker Protocol autonomously
destroys the MKR collected, thereby reducing the total MKR supply." (Compl. Ex. 2 at 10.)

liabilities of MakerDAO. The mere fact that MakerDAO allegedly has operating expenses does not mean that they are losses or that MKR tokenholders have agreed to cover such hypothetical losses. (Opp. at 14.) Operating expenses of a business are not "losses" for purposes of establishing the existence of a partnership. *Four Star Cap. Corp. v. Nynex Corp.*, 183 F.R.D. 91, 102 n.19 (S.D.N.Y. 1997). And a Maker Debt Auction, like the Maker Surplus Auction, is not an allocation of losses to MKR holders. To the contrary, it is a voluntary mechanism for raising treasury funds by which new MKR tokens are created and sold to *anyone*—including people who do not currently hold MKR tokens—rather than a mandatory partnership capital call.[7] (Compl. Ex. 2 at 10.) The mere fact that the issuance of MKR will depress the market price for freely tradeable MKR is not the allocation of losses either—if it were, every publicly traded company would be a "partnership" of all of its shareholders. *See DeCristofaro v. Nest Seekers E. End, LLC*, 2017 N.Y. Slip Op. 50074(U), at *6 (Sup. Ct. Suffolk Cty. Jan. 11, 2017) (profit-sharing compensation agreement that deducted losses in computing profits did not require employee to "make good on negative amounts" and was not evidence of partnership).

Plaintiff will be unable to amend the Complaint to add facts demonstrating that MKR holders share in MakerDAO profits and losses. The MakerDAO Whitepaper (ECF No. 1-2) and associated MakerDAO documents (ECF Nos. 1-4 through 1-8) provide an extensive overview of the protocol and MKR token and make no reference to a tokenholder's rights to profits and shared responsibility for MakerDAO's obligations. These documents provide no basis for believing that such rights and obligations exist within the MakerDAO smart contract or elsewhere. Upon review of these incorporated materials, Plaintiff cannot plausibly or in good

---

[7] "If there is not enough Dai in the Buffer, the Protocol triggers a Debt Auction. During a Debt Auction, MKR is minted by the system (increasing the amount of MKR in circulation), and then sold to bidders for Dai." (Compl. Ex. 2 at 10.)

faith allege that such rights and obligations, which are necessary to demonstrate the existence of a partnership, exist with respect to MakerDAO.

### 4. The other *Brodsky* factors are not met either.

Although the lack of shared profits and losses is dispositive, the other *Brodsky* factors cited by Plaintiff further confirm that MakerDAO is not a partnership of MKR tokenholders.[8] (Opp. at 12–17.)

**Joint management and control**. The Complaint alleges that control over MakerDAO is "highly concentrated among a small number of blockchain identities." (Compl. ¶ 34.) This precludes a finding of "joint management and control" because, according to Plaintiff, the overwhelming majority of MKR holders—the supposed "general partners"—do not exercise any management or control over MakerDAO. *Brodsky*, 138 A.D.2d at 663 (finding no partnership where putative partner "made no management decisions"); *see also, e.g.*, *Growblox Sci., Inc. v. GCM Admin. Servs., LLC*, No. 14-cv-2280, 2015 WL 3504208, at *8 (S.D.N.Y. June 2, 2015) (dismissing partnership claim where there was no allegation that the putative partners "exercised joint control over … day-to-day operations"); *Rivkin v. Coleman*, 978 F. Supp. 539, 543 (S.D.N.Y. 1997) (putative partner did not exercise control over the business because she had no "authority to write checks or issue invoices"); *In re Pae*, 2017 N.Y. Slip Op. 50078(U), at *3 (Surr. Ct. Queens Cty. Jan. 12, 2017) (no partnership where "all major decisions were made by" one putative partner). Plaintiff's concession that most MKR holders do not engage in any control over day-to-day operations of MakerDAO further weighs against the existence of a partnership.

---

[8] "Case law reveals a series of factors to be considered in determining whether or not there is a partnership: (1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint management and control, (5) joint liability to creditors, (6) intention of the parties, (7) compensation, (8) contribution of capital, and (9) loans to the organization." *Brodsky*, 138 A.D.2d at 663.

**Joint liability to creditors.** Establishing a partnership requires that the partners mutually consent to share in the profits and losses of the partnership. *Missan*, 111 Misc. 2d at 1025; *Am. Bus. Training Inc.,* 50 A.D.3d at 225. The Complaint does not allege that the acquisition of one MKR token renders the tokenholder personally liable for any of MakerDAO's debts. Plaintiff's only support (although excludable as not in the Complaint) is an anonymous comment on an anonymous forum post speculating that MakerDAO should establish a single jurisdiction to shield members from tax claims asserted by multiple jurisdictions. (Opp. at 14-15 (citing ECF No. 30 Ex. J).) That is far from a factual allegation that MKR holders are jointly liable to MakerDAO's creditors. *See Ashlock v. Slone*, No. 10-cv-453, 2012 WL 3055775, at *8 (S.D.N.Y. July 26, 2012) (use of term "partnership" in informal email by non-lawyer did not show that plaintiff had any liability for debts of putative partnership).

**Intention of the parties.** As explained above, Plaintiff does not and cannot plead that tens of thousands of anonymous strangers mutually agreed to join a general partnership simply by acquiring MKR tokens. Plaintiff asserts that because extrinsic documents state that the MakerDAO project intends to grow and develop, it means that each MKR tokenholder intends to join a general partnership. (Opp. at 16.) That does not follow. To the contrary, Plaintiff's admission that MKR tokens are "freely tradable," (Compl. ¶ 8) shows that MKR holders are not general partners. In *Beckerman v. Sands*, this Court held that investors in general partnership whose interests were devisable and transferrable could not have intended to enter into a partnership. 364 F. Supp. at 1199–1200. "[T]hat the participants could transfer their interests with the consent of only one of the partners is inimical to the concept of a partnership, which requires the consent of all the partners to the admission of a new partner, since in a partnership each partner is the agent of the other partners." *Id.* at 1200. Here, any person holding MKR

tokens can transfer them at will without the need for anyone else's consent—MKR tokens are not partnership interests.

**Compensation.** Plaintiff's arguments notwithstanding, "[s]alary payments and compensation" are not a "hallmark of a general partnership". (Opp. at 17.) Rather the receipt of salary payments tends to show that a person is <u>not</u> a partner. *Weg v. Kaufman*, 159 A.D.3d 774, 776 (2d Dep't 2018) (no partnership where plaintiff "received 'nonemployee compensation,' not partnership income"); *see also Rivkin*, 978 F. Supp. at 543. To the extent any MKR holders receive salary income, this weighs against finding a partnership.

**Contributions of capital.** Debt auctions as described in the MakerDAO Whitepaper are only one method for obtaining MKR. (Opp. at 17.) The Complaint alleges that MKR tokens are "freely tradable in the U.S. on the largest cryptocurrency exchanges." (Compl. ¶ 8.) This means that MKR can be acquired outside of a debt auction and without making any capital contribution to MakerDAO by trading directly with MKR token-holders on an exchange. "The failure of a party to contribute capital … is strongly indicative that no partnership exists." *DeCristofaro*, 2017 N.Y. Slip Op. 50074(U) at *7. Plaintiff does not allege and does not cite any extrinsic documents purporting to show that capital contributions are required of MKR tokenholders, which further weighs against finding a partnership.

**Loans to the organization.** Plaintiff argues that MKR holders can make loans, in the form of a savings account that earns a return, by holding Dai tokens. First, "[l]oans of personal property and of money by one person to another for business purposes during the period of the claimed relationship usually negates the existence of a partnership." 15A N.Y. Jur. 2d Business Relationships § 1547. If MKR holders made loans to MakerDAO, that would weigh *against* a determination that MakerDAO is a partnership. Second, the lending referenced by Plaintiff

involves Dai, not MKR tokens. (Opp. at 17.)

* * *

In sum, none of the *Brodsky* factors relied upon by Plaintiff weighs in favor of finding an implied partnership between tens of thousands of ever-changing anonymous strangers.

> **D.     The other DAO cases cited by Plaintiff do not show that MakerDAO is a general partnership under New York law.**

Plaintiff argues that because other entities called DAOs have been held by other courts to have the capacity to be sued, MakerDAO must too. (Opp. at 9–11.) But those other cases are distinguishable. The question before this Court is whether Plaintiff, having admitted that MakerDAO is not a "corporation, LLC, partnership, or other recognized organization type" and having conceded that MakerDAO is not an unincorporated association, can maintain an action against MakerDAO. MakerDAO has already demonstrated conclusively that it is not an unincorporated association or a general partnership and Plaintiff asserts no other basis to find that MakerDAO has the capacity to be sued. That is the end of the inquiry.

In *CFTC v. Ooki DAO,* No. 22-CV-05416, 2022 WL 17822445, at *5 (N.D. Cal. Dec. 20, 2022), the court found that defendant Ooki DAO had the capacity to be sued as an unincorporated association under California law—not a general partnership under New York law. Indeed, the *Ooki DAO* decision undermines rather than supports Plaintiff's argument that MakerDAO is a partnership because the CFTC did not see fit to argue that Ooki DAO was a partnership, nor did the court raise or consider the issue. In contrast, the present case involves no allegation that MakerDAO is an unincorporated association. Furthermore, *Ooki DAO* was decided on default; the ruling on capacity was not litigated by Ooki DAO. *CFTC v. Ooki DAO*, No. 22-CV-05416, 2023 WL 5321527, at *1 (N.D. Cal. June 8, 2023).

The other cases cited by Plaintiff are no more helpful to Plaintiff. The Court in *Sarcuni v.*

-13-

*bZx DAO* applied California partnership law, which, unlike New York law, does not require
mutual intent to form a partnership. No. 22-CV-618, 2023 WL 2657633, at *6 (S.D. Cal.
Mar. 27, 2023). In *Houghton v. Leshner*, the court expressly declined to consider whether a DAO
was a general partnership. No. 22-CV-07781, 2023 WL 6826814, at *6 (N.D. Cal. Sept. 20,
2023). And *Van Loon v. Dep't of Treasury* is less relevant still because the court there was
construing the definition of "persons" under the International Emergency Economic Powers Act.
No. 23-CV-312, 2023 WL 5313091, at *7 (W.D. Tex. Aug. 17, 2023).

The SEC, on the other hand, has recognized the difficulty of showing that a DAO is a
general partnership because of the lack of control and mutual agency in a DAO structure:

> [T]he pseudonymity and dispersion of the DAO Token holders made it difficult for
> them to join together to effect change or to exercise meaningful control.
> Investments in The DAO were made pseudonymously (such that the real-world
> identities of investors are not apparent), and there was great dispersion among those
> individuals and/or entities who were invested in The DAO and thousands of
> individuals and/or entities that traded DAO Tokens in the secondary market—an
> arrangement that bears little resemblance to that of a genuine general partnership.

Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The
DAO," July 25, 2017, https://www.sec.gov/litigation/investreport/34-81207.pdf.

### III. Because MakerDAO does not exist as a general partnership, Rule 17(b) is no help to Plaintiff.

Federal Rule 17(b)(3)(A) provides that a partnership or unincorporated association that
does not have capacity to sue under state law may still sue or be sued to enforce a substantive
federal right. "Rule 17(b)(3)(A) permits courts to imbue unincorporated associations and
partnerships with the capacity to sue. But this power does not extend to entities that lack legal
existence." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir.
2021); *see also Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 110–11 (S.D.N.Y. 1992), *aff'd*, 996
F.2d 1353 (2d Cir. 1993). Because MakerDAO is not a general partnership under New York law,

-14-

it cannot be imbued with capacity to be sue by Rule 17.

**IV.    Public policy concerns do not permit this Court to ignore MakerDAO's capacity defense.**

Plaintiff argues that the very fact that some entities lack the capacity to sue and be sued is an affront to federal public policy and implores the Court to ignore the Federal Rules of Civil Procedure and the state substantive law incorporated therein. The Court should not do so.

"The concept of juridical personality is a legal tool employed in determining the relationship of a group to its own members and to third parties. Whether to assign the group various collective rights and responsibilities is initially a legislative question." Note, *Unions as Juridical Persons*, 66 Yale L.J. 712, 749 (1957). Certain recognized forms, such as corporations, have historically been able to sue or be sued in their own name. Others, like unincorporated associations, have not. *Id.* at 713 (at common law, the "rights and duties ordinarily called 'the union's' are in law those of its members"). Where a group does not have the legal capacity to be sued, that is not an absolute immunity; instead, a party can proceed against the individual members. *See, e.g.*, *Underwood v. Maloney*, 256 F.2d 334, 342 (3d Cir. 1958) (holding that because Pennsylvania exclusively permitted unions to be sued as entities, plaintiff could not maintain class action against union members as individuals). There is nothing improper or inequitable about MakerDAO asserting that it lacks capacity to be sued, and it is not MakerDAO's responsibility to advise Plaintiff who it ought to have sued, or in what forum, or asserting what claims.

**V.    Plaintiff has failed to state a claim of patent infringement.**

In sum and substance, Plaintiff responds to MakerDAO's Motion that the Complaint fails to state a claim of infringement in view of MakerDAO's acknowledged extraterritorial activities by arguing that MakerDAO operates in the U.S. (Opp. at 5–6, 19–22.) Plaintiff's response is

unavailing, and Plaintiff's arguments in that regard do not meet MakerDAO's showing that Plaintiff has failed to state a plausible claim of patent infringement.

To state a viable patent infringement claim, Plaintiff must plead sufficient facts demonstrating that MakerDAO, "without authority makes, uses, offers to sell, or sells any patented invention, **within the United States or imports into the United States** any patented invention during the term of the patent therefor…." 35 U.S.C. § 271(a) (emphasis added); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005). The Federal Circuit has addressed infringement in situations where accused activities or products occur or exist partially inside and partially outside the U.S.: "[A] process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country." *Id.* at 1318. "The use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." *Id.* at 1317

Plaintiff's Opposition does not dispute that it fails to state a claim of infringement based on the activities of making, selling, offering for sale, or importing, and accordingly, Plaintiff concedes that its claim of infringement is limited to alleged "use" of MakerDAO. And the Complaint fails to allege that MakerDAO is used in the U.S. in a manner that states a plausible claim of infringement.

### A.   The allegations in the Complaint necessarily implicate extraterritorial activity and do not support a claim of patent infringement in the United States.

Plaintiff's Opposition cites allegations from the Complaint to the effect that "[i]nvestment and ownership tokens in MakerDAO are freely tradeable in the U.S. on the largest cryptocurrency exchanges …" and "access to MakerDAO's Dai-based services is available throughout the U.S." (Opp. at 19 (citing Compl. ¶ 8).) Plaintiff also cites allegations in the

Complaint that purport to connect MakerDAO, the "Multi-Collateral Dai (MCD) System, the Oracle Security Module, and related system components" to the Ethereum blockchain. (*Id*. at 19–20 (citing Compl. ¶¶ 4–7, 32, 61).) None of those allegations state a plausible claim for infringement in the U.S.; instead, they are general allegations that are divorced from the asserted '797 patent and the "Exemplary '797 Patent Claims" identified in the Complaint. The information in paragraphs 4–7, 8, 32, 61 of the Complaint, cited by Plaintiff, do not aver that any of the allegedly infringing activities of MakerDAO or the system that carries out those activities occur or exist in the U.S.

Plaintiff's arguments in its Opposition are contradicted by its admission in the Complaint that "***MakerDAO operates, by design, without a U.S. address or location***" (Compl. ¶ 6 (emphasis added)) and the specific allegations that relate to Plaintiff's infringement claim. The Complaint purports to describe "the MakerDAO system" and its operation in paragraphs 41–88 and to set forth infringement allegations in paragraphs 90–99 and the supporting claim chart at Exhibit 11. Exhibit 11 of the Complaint purports to map the elements of the "Exemplary '797 Patent Claims"—claims 1 and 7—to the accused "Exemplary Defendant Products." None of that content alleges that the accused activities of MakerDAO or the system that carries out those activities occur or exist in the U.S.

Rather, the Complaint and its supporting exhibits state that MakerDAO exists and operates globally—that is, both inside and outside the U.S. (*E.g.*, ECF No. 76 at 7–8, 26, 30–35.) MakerDAO's Motion shows that Plaintiff's infringement claim as set forth in the Complaint necessarily implicates extraterritorial activity. The Complaint maps the "distributed computer ledger (DCL)" of exemplary asserted claims 1 and 7 to the global Ethereum blockchain on which MakerDAO operates (*id.* at 31–33)—not to a single Ethereum node in the U.S., as Plaintiff's

Opposition now maintains.[9]

Plaintiff's Opposition asserts that the Ethereum blockchain on which MakerDAO operates is a data structure that comprises a collection of duplicate nodes with multiple identical copies of the blockchain where all nodes perform duplicate operations. (*E.g.*, Opp. at 5–6, 20.) This assertion does not appear in the Complaint, and MakerDAO disputes it. However, even if the assertion is considered and accepted as true, the Complaint still fails to allege a plausible claim of patent infringement in the U.S. Indeed, the Complaint alleges that the DCL is a ledger collectively stored on multiple nodes of the computer network that hosts the global Ethereum blockchain. The Complaint sets forth a color-coded version of Figure 18 of the '797 patent. (Compl. at 7.) The Complaint alleges that the DCL is shown by a network of multiple computer nodes colored cyan by Plaintiff ("a base distributed computer ledger ('DCL,' 181 in cyan)"). (*Id.* ¶ 26.) The related passage of the '797 patent describes the DCL as follows: "Continuing with FIG. 18, an example of a base DCL is indicated at 181 ***where the separate computing nodes of a network are interconnected through the internet or a network, and where a ledger of transactions is distributed across the network***." (Compl. Ex. 1 at 16:58–62 (emphasis added).) The language of asserted claim 1 is to the same effect and refers to actions taken with respect to the network of computers on which the DCL is stored:

> storing the DCL containing an electronic transactions record on at least one of [i] ***a distributed network of connected independent computers*** or [ii] ***a decentralized network of computers*** wherein the electronic transaction record is time sequenced, and a writing or an appending of the electronic transaction records is performed on [i] ***the distributed network of connected independent computers*** or [ii] ***the decentralized network of computers***

(*Id.* at 18:20-28 (emphasis added).) Thus, the allegations in the Complaint and the '797 patent

---

[9] Oddly, Plaintiff incorrectly asserts that MakerDAO cites *SEC v. Balina*, No. 22-cv-950 (W.D. Tex., filed Sep. 19, 2022), in support of MakerDAO's "technical argument" and attempts to distinguish that case. Opp. at 20–21. However, MakerDAO did not cite *Balina*.

itself refer to the DCL as existing in multiple nodes of a computer network—that is, the global Ethereum blockchain on which MakerDAO's distributed ledger exists, not to a single Ethereum node in the U.S.

In addition, the Complaint maps the "electronic parallel storage of a differences layer linked to [the DCL]" of claims 1 and 7 to MakerDAO's Oracles and OSMs. (ECF No. 76 at 31–33.) Critically, the Complaint does not allege that *any* Oracles or OSMs exist in the U.S.

The Complaint fails to state a plausible claim of infringement for exemplary asserted claims 1 and 7 because the Complaint alleges that the DCL corresponds to the global Ethereum blockchain on which MakerDAO operates and does not allege that MakerDAO's Oracles and OSMs exist and operate in the U.S. Therefore, for method claim 1, the Complaint does not and cannot allege that all steps of the claimed method occur in the U.S., as required by *NTP*, 418 F.3d at 1317-18. For system claim 7, the Complaint does not and cannot allege that the MakerDAO system as a whole is put into service in the U.S. such that control and beneficial use of the system occur in the U.S., as required by *NTP*, 418 F.3d at 1317.

> **B.    The new information presented by Plaintiff's Opposition should not be considered and in any event does not provide a basis for a plausible claim of patent infringement in the United States.**

As discussed above, the Court should not consider such extrinsic information or Plaintiff's related arguments. However, even if considered, Plaintiff's extrinsic information contradicts the basic premise of Plaintiff's Opposition—that the Ethereum blockchain on which MakerDAO operates comprises a collection of duplicate nodes with multiple identical copies of the blockchain where all nodes perform duplicate operations. Exhibit I of the Declaration of David Boag is third-party information that states that the nodes of Ethereum are *not* duplicates with multiple identical copies of the blockchain. According to Exhibit I, Ethereum has "full nodes" and "archive nodes," and "both can process the chain (validate transactions and secure

the chain), but only the latter stores Etheruem's full transaction **and state** history." (ECF No. 86-9 at 9 of 19 (emphasis in original).) And as explained above, MakerDAO's Motion shows that Plaintiff's infringement allegations necessarily implicate extraterritorial activity. Plaintiff's extrinsic information merely purports to show that some accused activity occurs in the U.S. and some outside the U.S. For example, Plaintiff cites third-party information to the effect that 26.2% to 45.1% of all Ethereum nodes were in the U.S. during the period of February 2020 to October 2023. But that shows that the majority of Ethereum nodes—and presumably the majority of the DCL of the asserted patent claims—are outside the U.S. Furthermore, Plaintiff does not assert that the extrinsic evidence shows that any MakerDAO Oracles or OSMs exist in the U.S.

## VI.    Conclusion.

For the reasons stated above, MakerDAO respectfully requests that Plaintiff's Complaint be dismissed with prejudice.

Dated: New York, New York.
          December 20, 2023

Respectfully submitted,

PERKINS COIE LLP

By: */s/ Gene W. Lee*
          Gene W. Lee
          James Q. Walker
          Emily B. Cooper
          Jacob J. Taber
          1155 Avenue of the Americas, 22nd Floor
          New York, New York 10036-2711
          Tel: +1.212.262.6900
          Fax: +1.212.977.1649
          GLee@perkinscoie.com
          JWalker@perkinscoie.com
          ECooper@perkinscoie.com
          JTaber@perkinscoie.com

Will Conley (pro hac vice)
33 East Main Street, Suite 201
Madison, WI 53703-3095
Tel: +1.608.294.4013
Fax: +1.608.663.7499
WConley@perkinscoie.com

Roderick O'Dorisio (pro hac vice)
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Tel: +1.303.291.2303
Fax: +1.303.291.2403
RODorisio@perkinscoie.com